NO.  16-1325

---

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

---

### ARLENE A. SMITH-SCOTT

Appellant

vs.

### GEORGE LIEBMANN
### HOWARD BANK
### U. S. BANK, NA

Appellees

---

## JOINT APPENDIX OF APPELLANT ARLENE A. SMITH-SCOTT

---

Prepared By:

Arlene A. Smith-Scott, Esq.
Strategic Law Group, LLC
367 Main Street
Laurel, Maryland 20707
Ph:   240.280.2370
Fax:  240.280.2381
StrategicLaw1@Gmail.com

i

**TABLE OF CONTENTS**

Pages

1.   DISCLOSURE OF CORPORATE AFFILIATIONS     JA1 - JA2

2.   DOCKETING STATEMENT     JA3 - JA8

3.   NOTICE OF APPEAL     JA9 - JA10

4.   ATTACHED ORDER     JA11 - JA12

5.   MEMORANDUM OPINION     JA14- JA23

6.   CIVIL DOCKET FOR CASE 15cv03423 RDB     JA24 -JA29

7.   DEED OF APPOINTMENT BY CAPITAL ONE     JA31- JA35
     BANK AS SUCCESSOR BY MERGER

8.   CERTIFICATION REGARDING DEBT     JA36
     INSTRUMENT

9.   ORDER GRANTING INJUNCTION TO THE     JA37
     APPELLANT IN THE CIRCUIT COURT

10.  PROOF OF CLAIM #6     JA38 – JA39

11.  ASSIGNMENT OF DEED OF TRUST FROM     JA40 – JA41
     GREENPOINT MORTGAGE TO WATERFALL
     VICTORIA MASTER FUND, LTD.

12.    ASSIGNMENT OF ASSIGNMENT OF LEASES          JA42- JA43
       AND RENT FROM GREENPOINT MORTGAGE TO
       WATERFALL VICTORIA MASTER FUND, LTD

13.    BACK-DATED ASSIGNMENT OF DEED OF            JA44- JA45
       TRUST AND SECURITY AGREEMENT FROM
       WATERFALL VICTORIA MASTER FUND, LTD
       TO WATERFALL VICTORIA MORTGAGE TRUST,
       2011 SBC3

14.    BACK-DATED ENDORSEMENT OF DEED OF           JA46- JA47
       TRUST NOTE FROM WATERFALL VICOTORIA
       MASTER FUND, LTD AND WATERFALL
       VICTORIA MORTGAGE TRUST, 2011 SBC3

15.    BACK-DATED ASSIGNMENT OF LEASES AND         JA48- JA49
       RENTS FROM WATERFALL VICTORIA MASTER
       FUND, LTD AND WATERFALL VICTORIA
       MORTGAGE TRUST, 2011 SBC3

16.    LISTING OF SUBSIDIARIES FROM                JA 50-JA51
       SUTHERLAND ASSET MANAGEMENT CO.

17.    SEC FILING BY SUTHERLAND ASSET MGMT         JA52-JA54
       WHICH INCLUDES WATERFALL VICTORIA

MORTGAGE TRUST 2011 SBC3

18.  SEC - NO MARYLAND INVESTMENTS FOR          JA55-JA57

     WATERFALL VICTORIA MORTGAGE TRUST

     2011 SBC3

19.  SEC - PAGE THAT STATES COMPLETED TRUST     JA58- JA60

     FOR WATERFALL VICTORIA MORTGAGE

     TRUST, 2011 SBC3 IN 2011 – PRIOR TO

     TRANSFER

20.  NEW YORK STATE DIVISION OF CORPORATION     JA61- JA62

     REFLECTS NAME REGISTRATION AFTER

     TRANSFER OR SALE OF NOTE

21.  NOTICE OF APPEARANCE OF CAPITAL ONE        JA63-JA64

     BANK

22.  1098 STATEMENT FROM LEHMAN BROTHERS        JA65

     TO APPELLANT IN 2007

23.  DEED OF TRUST NOTE WITHOUT                 JA66 –JA74

     ENDORSEMENTS

24.  AFFIDAVIT OF WITNESS, PAULA RUSH           JA75 – JA96

25.  RESUME OF WITNESS, PAULA RUSH              JA98- JA113

iv

| | | |
|---|---|---|
| 26. | U. S. BANK, NA SUES GREENPOINT MORTGAGE FOR FRUAD | JA115-JA140 |
| 27. | SCHEDULE D IN BANKRUPTCY FILING | JA142 -JA143 |
| 28. | AMENDED SCHEDULE D | JA144- JA145 |
| 29. | OPPOSITION TO PROOF OF CLAIM # 6 | JA146- JA170 |
| 30. | CONSENT ORDER CONFIRMING PLAN OF REORGANIZATION | JA171 – JA178 |
| 31. | NOTE MODIFICATION AGREEMENT FOR 511 MAIN STREET | JA179 – JA184 |
| 32. | NOTE MODIFICATION AGREEMENT FOR 367 MAIN STREET | JA185-JA190 |
| 32. | EMAIL DATED SEP 23, 2010 | JA191 |
| 33. | EMAIL DATED NOV. 2, 2010 | JA192 |
| 34. | EMAIL DATED NOV. 2, 2010 | JA193 |
| 35. | EMAIL DATED NOV. 2, 2010 | JA194 |
| 36. | EMAIL DATED NOV. 5, 2010 | JA 195-JA196 |
| 37. | EMAIL DATED DEC. 2, 2010 | JA197-JA198 |
| 38. | EMAIL DATED FEB 2, 2011 | JA199 |

39.  FIRST AMENDED DISCLOSURE STATEMENT     JA200- JA233

40.  MONTHLY OPERATING REPORT FOR OCTOBER,   JA234-JA270
     2014

41.  MONTHLY OPERATING REPORT FOR            JA271-JA290
     NOVEMBER, 2014

42.  MONTHLY OPERATING REPORT FOR            JA291 –JA308
     DECEMBER, 2014

43.  MONTHLY OPERATING REPORT FOR            JA309-JA326
     JANUARY, 2015

43.  ORDER APPROVING SALE                    JA327 – JA329

44.  TRANSCRIPT FROM HEARING DATED           JA330 – JA340
     NOVEMBER 5, 2015

45.  MOTION TO ALTER AND/OR AMEND            JA341 – JA358

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 16-1325    Caption: ARLENE A. SMITH-SCOTT V. GEORGE LIEBMANN

Pursuant to FRAP 26.1 and Local Rule 26.1,

ARLENE A. SMITH-SCOTT
(name of party/amicus)

who is      APPELLANT      , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity? ☐YES ☑NO

2.    Does party/amicus have any parent corporations? ☐YES ☑NO
      If yes, identify all parent corporations, including all generations of parent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐YES ☑NO
      If yes, identify all such owners:

08/05/2015 SCC                          - 1 -

J. A. 1

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)  ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?  ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:
CHAPTER 7 TRUSTEE
GEORGE WILLIAM LIEBMANN
9 WEST HAMILTON STREET
BALTIMORE, MD 21201

Signature: /S/ ARLENE A. SMITH-SCOTT            Date:  APRIL 18, 2016

Counsel for:  APPELLANT

## CERTIFICATE OF SERVICE
****************************

I certify that on   APRIL 18, 2016   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

MR. GEORGE WILLIAM LIEBMANN
9 WEST HAMILTON STREET
BALTIMORE, MD 21201

MR. CRAIG BURTON LEAVERS
HOFMEISTER, BREZA & LEAVERS
EXECUTIVE PLAZA III
11350 MCCORMICK ROAD, SUITE 1300
HUNT VALLEY, MARYLAND 21031

/S/ ARLENE A. SMITH-SCOTT
(signature)

APRIL 18, 2016
(date)

J.A. 2

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DOCKETING STATEMENT—CIVIL/AGENCY CASES

**Directions:**  Counsel must make a **docketing statement (civil/agency) filed** entry in CM/ECF within 14 days of docketing of the appeal, or within the due date set by the clerk's docketing notice, whichever is later.  File with the entry the (1) docketing statement form with any extended answers and (2) any transcript order form.  Parties proceeding pro se are not required to file a docketing statement.  Opposing counsel who finds a docketing statement inaccurate or incomplete may file any objections within 10 days of service of the docketing statement using the ECF event-**docketing statement objection/correction filed**.

| | |
|---|---|
| **Appeal No. & Caption** | 16-1325  ARLENE A. SMITHSCOTT v. GEORGE LIEBMANN |
| **Originating No. & Caption** | 15-3423 ARLENE A. SMITH0SCOTT v. HOWARD BANK |
| **Originating Court/Agency** | UNITED STATES BANKRUPTCY COURT |

| **Jurisdiction** (answer any that apply) | | |
|---|---|---|
| Statute establishing jurisdiction in Court of Appeals | 4TH CIRCUIT, RULE 4 | |
| Time allowed for filing in Court of Appeals | 30 DAYS | |
| Date of entry of order or judgment appealed | March 18, 2016 | |
| Date notice of appeal or petition for review filed | March 22, 2016 | |
| If cross appeal, date first appeal filed | n/a | |
| Date of filing any post-judgment motion | n/a | |
| Date order entered disposing of any post-judgment motion | n/a | |
| Date of filing any motion to extend appeal period | n/a | |
| Time for filing appeal extended to | n/a | |
| Is appeal from final judgment or order? | ○ Yes | ⊙ No |
| If appeal is not from final judgment, why is order appealable? | | |

| **Settlement** (The docketing statement is used by the circuit mediator in pre-briefing review and mediation conducted under Local Rule 33.  Counsel may make a confidential request for mediation by calling the Office of the Circuit Mediator at 843-521-4022.) | | |
|---|---|---|
| Is settlement being discussed? | ○ Yes | ⊙ No |

01/27/2015
SCC

J.A. 3

| Transcript (transcript order must be attached if transcript is needed and not yet on file) | | |
|---|---|---|
| Is transcript needed for this appeal? | ◉ Yes | ○ No |
| Has transcript been filed in district court? | ○ Yes | ◉ No |
| Is transcript order attached? | ○ Yes | ◉ No |

| Case Handling Requirements (answer any that apply) | |
|---|---|
| Case number of any prior appeal in same case | NOT APPLICABLE - NOT 4TH CIRCUIT |
| Case number of any pending appeal in same case | NOT APPLICABLE |
| Identification of any case pending in this Court or Supreme Court raising similar issue | NOT APPLICALBE |
| | If abeyance or consolidation is warranted, counsel must file an appropriate motion. |
| Is expedited disposition necessary? | ○ Yes    ◉ No |
| | If yes, motion to expedite must be filed. |
| Is oral argument necessary? | ◉ Yes    ○ No |
| Does case involve question of first impression? | ○ Yes    ◉ No |
| Does appeal challenge constitutionality of federal or state statute in case to which federal or state government is not a party | ○ Yes    ○ No |
| | If yes, notice re: challenge to constitutionality of law must be filed. |

**Nature of Case** (Nature of case and disposition below. Attach additional page if necessary.)

WHETHER THE DEBTOR'S CHAPTER 11 BANKRUPTCY SHOULD HAVE BEEN CONVERTED WHEN BOTH SECURED CREDITORS COMMITED FRAUD AND MISREPRESENTATION:

A.  U. S. BANK, NA FOR WATERFALL VICTORIA MORTGAGE TRUST - 2011 SBC3 SUBMITTED AND RELIED UPON THE FOLLOWING:

i.   BACKDATED ASSIGNMENT OF DEED OF TRUST AND SECURITY AGREEMENT
ii .BACKDATED ASSIGNMENT OF ENDORSEMENT OF DEED OF TRUST NOTE
iii.  BACKDATED ASSIGNMENT OF LEASES AND RENTS
iv.  LISTING OF SUBSIDIARIES BY SUTHERLAND ASSET MGNT WHICH INCLUDES WATERFALL VICTORIA MORTGAGE TRUST 2011 SBC3
v.   SEC FILING BY SUTHERLAND ASSET MGNT WHICH REFLECTS "0.00"  VALUE
vi.  SEC FILING BY SUTHERLAND ASSET MGNT WHICH STATES TRUST WAS COMPLETED BEFORE PURCHASE BY ENTITY, WATEFALL VICTORIA MASTER FUND, LTD
vi.  SEC FILING BY SUTHERLAND ASSET MGNT, WHICH STATES NO LOANS IN MD.

J. A. 4

| **Transcript** (transcript order must be attached if transcript is needed and not yet on file) | | |
|---|---|---|
| Is transcript needed for this appeal? | ◉ Yes | ○ No |
| Has transcript been filed in district court? | ○ Yes | ◉ No |
| Is transcript order attached? | ○ Yes | ◉ No |

| **Case Handling Requirements** (answer any that apply) | |
|---|---|
| Case number of any prior appeal in same case | NOT APPLICABLE - NOT 4TH CIRCUIT |
| Case number of any pending appeal in same case | NOT APPLICABLE |
| Identification of any case pending in this Court or Supreme Court raising similar issue | NOT APPLICALBE |
| | If abeyance or consolidation is warranted, counsel must file an appropriate motion. |
| Is expedited disposition necessary? | ○ Yes    ◉ No |
| | If yes, motion to expedite must be filed. |
| Is oral argument necessary? | ◉ Yes    ○ No |
| Does case involve question of first impression? | ○ Yes    ◉ No |
| Does appeal challenge constitutionality of federal or state statute in case to which federal or state government is not a party | ○ Yes    ○ No |
| | If yes, notice re: challenge to constitutionality of law must be filed. |

| **Nature of Case** (Nature of case and disposition below. Attach additional page if necessary.) |
|---|
| WHETHER THE DEBTOR'S CHAPTER 11 BANKRUPTCY SHOULD HAVE BEEN CONVERTED WHEN BOTH SECURED CREDITORS COMMITED FRAUD AND MISREPRESENTATION:<br><br>A.  U. S. BANK, NA FOR WATERFALL VICTORIA MORTGAGE TRUST - 2011 SBC3 SUBMITTED AND RELIED UPON THE FOLLOWING:<br><br>i.   BACKDATED ASSIGNMENT OF DEED OF TRUST AND SECURITY AGREEMENT<br>ii .BACKDATED ASSIGNMENT OF ENDORSEMENT OF DEED OF TRUST NOTE<br>iii. BACKDATED ASSIGNMENT OF LEASES AND RENTS<br>iv. LISTING OF SUBSIDIARIES BY SUTHERLAND ASSET MGNT WHICH INCLUDES WATERFALL VICTORIA MORTGAGE TRUST 2011 SBC3<br>v.   SEC FILING BY SUTHERLAND ASSET MGNT WHICH REFLECTS "0.00"  VALUE<br>vi. SEC FILING BY SUTHERLAND ASSET MGNT WHICH STATES TRUST WAS COMPLETED BEFORE PURCHASE BY ENTITY, WATEFALL VICTORIA MASTER FUND, LTD<br>vi.  SEC FILING BY SUTHERLAND ASSET MGNT, WHICH STATES NO LOANS IN MD. |

J. A. 5

**Issues** (Non-binding statement of issues on appeal.  Attach additional page if necessary)

vii.  MISSING LOAN SALE AGREEMENT
viii. NEW YORK STATE DIVISION OF CORPORATIONS - NAME WAS NOT REGISTERED
UNTIL AFTER THE PURPORTED SALE OF MORTGAGE NOTE
ix.   CAPITAL ONE BANK AS SUCCESSOR BY MERGER, YET SALE BY DIFFERENT
ENTITY
x.    NO ASSIGNMENT BY ENTITY THAT HELD NOTE - LEHMAN BROTHERS
xi.   MISSING POOLING AND SERVICING AGREEMENT
xii.  HISTORY OF FRAUD BY GREENPOINT, LEHMAN BROTHERS, COUNTRYWIDE

B. PATAPSCO BANK ARGUED THAT THEIR LOAN HAD MATURED WHEN IT HAD NOT:

i.   THE APPELLANT RELIED UPON EMAILS RECEIVED BETWEEN THE LEGAL
COUNSEL FOR THE PATAPSCO BANK AND HER BANKRUPTCY ATTORNEY, THE
DISCLOSURE STATEMENT FOR HER PREVIOUS BANKRUPTCY AS WELL AS THE
TRANSRCIPT FROM THAT TIME WHICH REFLECTS A GRAMMATICAL ERROR WHICH
AROSE HOWEVER THE INTENT OF THE PARTIES ARE CLEAR.

**Adverse Parties** (List adverse parties to this appeal and their attorneys; provide party's address if the party is not represented by counsel.  Attach additional page if necessary.)

| | |
|---|---|
| Adverse Party: GEORGE W. LIEBMANN | Adverse Party: HOWARD BANK, FORMERLY |
| | KNOWN AS THE PATAPSCO BANK |
| Attorney: ORBIE SHIVELY | Attorney: CRAIG BURTON LEAVERS |
| Address: LAW OFFICES OF SHIVELY AND | Address: HOFMEISTER, BREZA & LEAVERS |
|      LIEBMANN |      EXECUTIVE PLAZA III |
|      9 WEST HAMILTON STREET |      11350 MCCORMICK ROAD, SUITE 1300 |
|      BALTIMORE, MARYLAND 21201 |      HUNT VALLEY, MARYLAND 21031 |
| E-mail: OSHIVELY@ISPA.COMCASTBIZ.NET | E-mail: CRAIGL@HBLLAW.COM |
| Phone: 410-752-5887 | Phone: 410-832-8833 |

**Adverse Parties (continued)**

| | |
|---|---|
| Adverse Party: GARY C. ADLER | Adverse Party: |
| Attorney: CLARK HILL PLC | Attorney: |
| Address: 601 PENNSYLVANIA AVENUE, NW | Address: |
|      SUITE 1000 NORTH BUILDING | |
|      WASHINGTON, DC  20004 | |
| E-mail: GADLER@CLARKHILL.COM | E-mail: |
| Phone: 202-552-2378 | Phone: |

J.A. 6

| **Appellant** (Attach additional page if necessary.) | |
|---|---|
| Name: ARLENE A. SMITH-SCOTT | Name: |
| Attorney: ARLENE A. SMITH-SCOTT<br>Address: STRATEGIC LAW GROUP, LLC<br>367 MAIN STREET<br>LAUREL, MARYLAND 20707 | Attorney:<br>Address: |
| E-mail: STRATEGICLAW1@GMAIL.COM | E-mail: |
| Phone: 240.280.2370 | Phone: |
| **Appellant** (continued) | |
| Name: | Name: |
| Attorney:<br>Address: | Attorney:<br>Address: |
| E-mail: | E-mail: |
| Phone: | Phone: |

| **Signature:** /S/ ARLENE A. SMITH-SCOTT | **Date:** APRIL 18, 2016 |
|---|---|
| **Counsel for:** APPELLANT, ARLENE A. SMITH-SCOTT | |

**Certificate of Service:** I certify that on   APRIL 18, 2016   the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below (Attach additional page if necessary):

| ORBIE SHIVELY<br>LIEBMANN AND SHIVELY, PA<br>8 W. HAMILTON STREET<br>BALTIMORE, MD 21201 | CRAIG BURTON LEAVERS<br>11350 MCCORMICK ROAD, SUITE 1300<br>HUNT VALLEY, MD 21031 |
|---|---|
| Signature: /S/ ARLENE A. SMITH-SCOTT | Date: APRIL 18, 2016 |

J.A. 7

CONTINUATION SHEET:

ii.    WHETHER THE  APPELLANT'S RIGHT OF DUE PROCESS HAS BEEN VIOLATED AS DEFINED UNDER
       THE MARYLAND DECLARATION OF RIGHTS AND THE FOURTH AMENDMENT OF THE UNITED
       STATES CONSTITUTION BY FAILING TO  DETERMINE WHETHER U. S. BANK, NA AS INDENTURE
       TRUSTEE HAS STANDING IN THIS COURT.


III.   WHETHER THE TRIAL COURT ABUSED ITS DISCRETION BY TREATING THIS APPELLANT IN A
       MANNER THAT DEMONSTRATES AN UNJUST BIAS OR PREJUDICE.


IV.    WHETHER THE TRIAL COURT ERRED BY FAILING TO ALLOW THE APPELLANT'S OBJECTIONS TO
       THE CHAPTER 7 TRUSTEE'S MOTION TO SELL REAL PROPERTY PURSUANT OT WILLEMAIN V.
       KIVITZ THAT A PECUNIARY INTEREST IN THE OUTCOME OF THE CLAIMS EXIST AS TO THE
       DEBTOR.


V.     WHETHER THE CHAPTER 7 TRUSTEE ACTIONS CONSPIRE TO FURTHER THE FRAUD BY U. S. BANK,
       NA AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011 SBC3.

J. A. 8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Baltimore Division)

| | | |
|---|---|---|
| ARLENE A. SMITH-SCOTT | * | |
| | * | |
| Appellant | * | |
| | * | |
| v. | * | Civil Action No.: RDB-15-3423 |
| | * | Bankruptcy No. 14-25022 |
| HOWARD BANK | * | |
| | * | |
| Appellee | * | |
| | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## NOTICE OF APPEAL

Notice is hereby given that Arlene A. Smith-Scott, Esq., the Appellant in the above named case hereby appeal to the United States Court of Appeals for the Fourth Circuit from the final order dated and entered on August 18, 2016 which (a) Granted the Chapter 7 Trustee's Motion to Dismiss Appeal, (b) Grant Chapter 7 Trustee's Motion for Sale of 10 Stanley Drive, Catonsville, Free and Clear of Liens and Encumbrances entered this action on November 6, 2015 entered by United States Bankruptcy Judge James F. Schneider. and (c) Denied the Debtor's Motion to Alter or Amend Order Converting Chapter 11 Case to Chapter 7 Bankruptcy Case entered this action on November 6, 2015 entered by United States Bankruptcy Judge James F. Schneider.

J.A.9

Respectfully Submitted,


/s/   Arlene A. Smith-Scott, Esq.
Arlene A. Smith-Scott, Esq.   #011092
Appellant
367 Main Street
Laurel, Maryland 20707
Ph:     240.280.2370
Fax:    240.280.2381
StrategicLawi@gmail.com


J.A.10

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ARLENE A. SMITH-SCOTT, | * | |
| Appellant, | * | |
| v. | * | Civil Action No. RDB-15-3423 |
| | | Bankruptcy No. 14-25022 |
| HOWARD BANK, | * | |
| Appellee. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## ORDER

For the reasons stated in the accompanying Memorandum Opinion, it is this 18th day of March, 2016, ORDERED that:

1.  Appellee George W. Liebmann, Chapter 7 Trustee's Motion to Dismiss Appeal (ECF No. 3) is GRANTED;

2.  Appellant Arlene A. Smith-Scott's Appeal (ECF No. 1) is DISMISSED;

3.  The Order Granting Chapter 7 Trustee's Motion for Sale of 10 Stanley Drive, Catonsville, Free and Clear of Liens and Encumbrances entered by United States Bankruptcy Judge James F. Schneider on November 6, 2015 (Case No. 14-25022, B.R. Doc. 273) is AFFIRMED;

4.  The Order Denying the Debtor's Motion to Alter or Amend Order Converting Chapter 11 Case to Chapter 7 entered by United States Bankruptcy Judge James F. Schneider on November 6, 2015 (Case No. 14-25022, B.R. Doc. 274) is AFFIRMED;

J.A.11

5.    Appellant's Motion For Stay Pending Appeal (ECF No. 11) is MOOT;

6.    Appellee's Motion to Strike (ECF No. 2) is MOOT;

7.    Appellee's Second Motion to Dismiss Appeal (ECF No. 13) is MOOT;

8.    The Clerk of the Court transmit copies of this Order and accompanying

       Memorandum Opinion to the parties and to Bankruptcy Judge Schneider; and

9.    The Clerk of the Court CLOSE this case.


                                                    ___/s/_____
                                                    Richard D. Bennett
                                                    United States District Judge

J.A.12

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ARLENE A. SMITH-SCOTT,                  *

    Appellant,                          *

    v.                                  *        Civil Action No. RDB-15-3423
                                                 Bankruptcy No. 14-25022
HOWARD BANK,                            *

    Appellee.                           *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

Debtor Arlene A. Smith-Scott brings this appeal from two orders of United States Bankruptcy Judge James F. Schneider: (1) the Order Approving Trustee's Motion for Sale of 10 Stanley Drive, Catonsville, Free and Clear of Liens and Encumbrances ("Order Approving Trustee's Motion for Sale") (ECF No. 1-1, B.R. Doc. 273); and (2) the Order Denying the Debtor's Motion to Alter or Amend Order Converting Chapter 11 Case to Chapter 7 ("Order Denying Motion to Alter or Amend") (ECF No. 1-2, B.R. Doc. 274). Both Orders were entered on November 6, 2015. *Id.*

Currently pending before this Court are: (1) Appellee George W. Liebmann, Chapter 7 Trustee's Motion to Strike Notice of Appeal Insofar as It Relates to Order Denying Amended Motion to Alter or Amend Order Converting Case to Chapter 7 ("Motion to Strike") (ECF No. 2); Appellee George W. Liebmann, Chapter 7 Trustee's Motion to Dismiss Appeal ("Motion to Dismiss") (ECF No. 3); Appellant Arlene A. Smith-Scott's Opposition to the Motion to Dismiss Appeal ("Opposition") (ECF No. 5); Appellant's

J.A.14

Motion for Stay Pending Appeal ("Motion to Stay") (ECF No. 11); and Appellee's Second

Motion to Dismiss Appeal ("Second Motion to Dismiss") (ECF No. 13).

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), as Smith-

Scott's appeal arises from final orders entered by the United States Bankruptcy Court for the

District of Maryland and is brought pursuant to Local Rule 404(1)(a) (D. Md. 2014). Oral

argument is deemed unnecessary because the facts and legal arguments are adequately

presented in the briefs and record, and the decisional process would not be significantly

aided by oral argument. *See* Fed. R. Bankr. P. 8019(b)(3); *see also* Local Rule 105.6 (D. Md.

2014). For the reasons stated below, Appellee's Motion to Dismiss (ECF No. 3) is

GRANTED, all other pending motions (ECF Nos. 2, 11, and 13) are MOOT, and the

Orders of Bankruptcy Judge James F. Schneider (ECF No. 1-1, B.R. Doc. 273; ECF No. 1-2,

B.R. Doc. 274) are AFFIRMED.[1]

## BACKGROUND

I.  Appeal of Order Approving Trustee's Motion for Sale

On October 1, 2015, Appellee filed a Motion for Sale of 10 Stanley Drive, Catonsville

Free and Clear of Liens and Encumbrances.[2] (B.R. Doc. 257.) The Motion for Sale was

fully briefed, and on November 6, 2015, Judge Schneider issued the Order Approving

Trustee's Motion for Sale. (B.R. Doc. 273.) The Order stated that buyers were already

under contract to purchase the property, and that they are a "good faith purchaser" within

---

[1] It should be noted that Appellant failed to file a brief in support of her Appeal within 30 days of the transmission of the record to this Court (December 8, 2015) in violation of Fed. R. Bankr. P. 8018(a)(1). (*See* ECF Nos. 7, 8, 9, and 10.) Although this fact alone constitutes sufficient grounds to dismiss the Appeal, it shall be dismissed on substantive grounds as explained herein.

[2] The Stanley Drive property was among the real property listed as part of Appellant's bankruptcy estate. (B.R. Doc. 63 at 12.)

J.A.15

Motion for Stay Pending Appeal ("Motion to Stay") (ECF No. 11); and Appellee's Second

Motion to Dismiss Appeal ("Second Motion to Dismiss") (ECF No. 13).

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 158(a), as Smith-

Scott's appeal arises from final orders entered by the United States Bankruptcy Court for the

District of Maryland and is brought pursuant to Local Rule 404(1)(a) (D. Md. 2014). Oral

argument is deemed unnecessary because the facts and legal arguments are adequately

presented in the briefs and record, and the decisional process would not be significantly

aided by oral argument. *See* Fed. R. Bankr. P. 8019(b)(3); *see also* Local Rule 105.6 (D. Md.

2014). For the reasons stated below, Appellee's Motion to Dismiss (ECF No. 3) is

GRANTED, all other pending motions (ECF Nos. 2, 11, and 13) are MOOT, and the

Orders of Bankruptcy Judge James F. Schneider (ECF No. 1-1, B.R. Doc. 273; ECF No. 1-2,

B.R. Doc. 274) are AFFIRMED.[1]

## BACKGROUND

I.    Appeal of Order Approving Trustee's Motion for Sale

On October 1, 2015, Appellee filed a Motion for Sale of 10 Stanley Drive, Catonsville

Free and Clear of Liens and Encumbrances.[2] (B.R. Doc. 257.) The Motion for Sale was

fully briefed, and on November 6, 2015, Judge Schneider issued the Order Approving

Trustee's Motion for Sale. (B.R. Doc. 273.) The Order stated that buyers were already

under contract to purchase the property, and that they are a "good faith purchaser" within

---

[1] It should be noted that Appellant failed to file a brief in support of her Appeal within 30 days of the transmission of the record to this Court (December 8, 2015) in violation of Fed. R. Bankr. P. 8018(a)(1). (*See* ECF Nos. 7, 8, 9, and 10.) Although this fact alone constitutes sufficient grounds to dismiss the Appeal, it shall be dismissed on substantive grounds as explained herein.

[2] The Stanley Drive property was among the real property listed as part of Appellant's bankruptcy estate. (B.R. Doc. 63 at 12.)

2



the meaning of 11 U.S.C. § 363(m).  (ECF No. 1-1, B.R. Doc. 273 at ¶ A, ¶ E.)  The sale of the property was completed on November 24, 2015.  (ECF No. 13-4, B.R. Doc. 313.) Appellant now challenges the Order Approving Trustee's Motion for Sale.

II.    Appeal of Order Denying Motion to Alter or Amend

The background of the second basis for this Appeal is set forth in this Court's Memorandum Opinion dated October 8, 2015 ("Memorandum Opinion").  *Smith-Scott v. Patapsco Bank*, Civ. No. RDB-15-1013 (ECF No. 10), B.R. No. 14-25022, 2015 WL 5921028 (D. Md. Oct. 8, 2015).  In the Memorandum Opinion and accompanying Order, this Court affirmed the Amended Order Converting Appellant's Case from Chapter 11 to Chapter 7 ("Conversion Order") (B.R. Doc. 141).[3]   On October 8, 2015, the same day that the Memorandum Opinion and Order were issued, however, Appellant filed in the Bankruptcy Court a Motion to Alter or Amend the Conversion Order.  (B.R. Doc. 260.)  With this Court having already affirmed the Bankruptcy Court's Conversion Order, Judge Schneider denied Appellant's Motion to Alter or Amend.  (B.R. Doc. 274.)   It is this Order Denying Appellant's Motion to Alter or Amend the Conversion Order that Appellant now challenges.

## STANDARD OF REVIEW

This appeal is brought pursuant to Rule 8001 of the Federal Rules of Bankruptcy Procedure.  On appeal from the United States Bankruptcy Court, this Court acts as an appellate court and reviews the Bankruptcy Court's findings of fact for clear error and conclusions of law *de novo*. *In re Merry–Go–Round Enterprises, Inc.*, 400 F.3d 219, 224 (4th Cir.

---

[3] Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 1101 et seq., provides an individual or corporate debtor the opportunity to reorganize and pay off creditors over time. The relief provided under Chapter 7, 11 U.S.C. §§ 701 et seq., is liquidation. In a Chapter 7 bankruptcy case, the bankruptcy trustee liquidates the debtor's assets, which involves selling the debtor's nonexempt property and distributing the proceeds from that sale to the creditors.

J.A.17

2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001). A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "Under the clearly erroneous standard, if the bankruptcy court's factual findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if it would have weighed the evidence differently." *In re Frushour*, 433 F.3d 393, 406 (4th Cir. 2005) (citing *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)).

A distinct standard of review applies to Appellant's challenge to the Order Denying Appellant's Motion to Alter or Amend the Conversion Order. "An abuse of discretion standard applies to a bankruptcy court's orders denying either a Rule 60(b) motion, *Nat'l Org. for Women v. Operation Rescue,* 47 F.3d 667, 669 (4th Cir. 1995), or a Rule 59(e) motion, *see EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir. 1997)." *In re Xiaolan Zhang*, Civ. No. DKC 12-1287, 2012 WL 5200072, at *2 (D. Md. Oct. 19, 2012) (citations in original).

"The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities, statutes and parts of the record relied on." *In re Rood*, 482 B.R. 132, 143 (D. Md. 2012) (citing Fed. R. Bankr. P. 8010(a)(1)(E)). "It is not for this court to scour the record in search of potential bases for his arguments." *Id.* The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See Fed. R. Bankr. P.* 8013; *see also In re White,* 128 F. App'x. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D. Md. Dec.4, 2006).

J.A18

2005); *In re Kielisch*, 258 F.3d 315, 319 (4th Cir. 2001).  A factual finding is clearly erroneous "when although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).  "Under the clearly erroneous standard, if the bankruptcy court's factual findings are plausible in light of the record viewed in its entirety, a reviewing court may not reverse even if it would have weighed the evidence differently." *In re Frushour*, 433 F.3d 393, 406 (4th Cir. 2005) (citing *Mungo v. Taylor*, 355 F.3d 969, 974 (7th Cir. 2004)).

A distinct standard of review applies to Appellant's challenge to the Order Denying Appellant's Motion to Alter or Amend the Conversion Order.  "An abuse of discretion standard applies to a bankruptcy court's orders denying either a Rule 60(b) motion, *Nat'l Org. for Women v. Operation Rescue,* 47 F.3d 667, 669 (4th Cir. 1995), or a Rule 59(e) motion, *see EEOC v. Lockheed Martin Corp.,* 116 F.3d 110, 112 (4th Cir. 1997)."  *In re Xiaolan Zhang*, Civ. No. DKC 12-1287, 2012 WL 5200072, at *2 (D. Md. Oct. 19, 2012) (citations in original).

"The brief of the appellant shall contain . . . [a]n argument . . . with citations to the authorities, statutes and parts of the record relied on." *In re Rood*, 482 B.R. 132, 143 (D. Md. 2012) (citing Fed. R. Bankr. P. 8010(a)(1)(E)).  "It is not for this court to scour the record in search of potential bases for his arguments." *Id.*  The district court may affirm, modify, or reverse a bankruptcy judge's order, or remand with instructions for further proceedings. *See Fed. R. Bankr. P.* 8013; *see also In re White*, 128 F. App'x. 994, 999 (4th Cir. 2005); *Suntrust Bank v. Johnson*, 2006 U.S. Dist. LEXIS 87622, at *6, 2006 WL 3498411 (D. Md. Dec.4, 2006).

J. A. 19

## ANALYSIS

I.    Order Approving Trustee's Motion for Sale

Appellee argues that Appellant does not have standing to challenge the Order Approving Trustee's Motion for Sale, and, moreover, that the Appeal is moot.  (ECF No. 3 at ¶ 7.)   Appellant offers no specific argument in opposition, but presents a merely hypothetical assertion that there may be a defect in the chain of title to the Stanley Drive property.  (ECF No. 5 at ¶ 5.III.)

The United States Court of Appeals for the Fourth Circuit has long held that that a debtor who lacks a pecuniary interest in the property to be sold has no standing to bring an appeal.  *Willemain v. Kivitz*, 764 F. 2d 1019, 1022-23 (4th Cir. 1985).  Moreover, in reviewing a bankruptcy sale which has been consummated, this Court is limited to determining whether the sale was made to a "good faith purchaser" under § 363(m) of the Bankruptcy Code.  *Ready v. Rice*, Civ. No. BEL-05-3358, 2006 WL 4550188, at *2 (D. Md. Sept. 26, 2006).  The Fourth Circuit has defined a "good faith purchaser" as "one who purchases the assets for value, in good faith, and without notice of adverse claims."  *Willemain*, 764 F. 2d at 1023.  "If the Court finds that the property was sold to a good faith purchaser, then the Court goes no further than dismissing the appeal as moot."   *Ready*, 2006 WL 4550188, at *2 (citing *Willemain*, 764 F. 2d at 1023).

Here, it is evident that Appellant is insolvent and has no pecuniary interest in the Stanley Drive property.  (ECF No. 13-5 at 10, B.R. Doc. 64 at 10.)  As Appellant has "failed to demonstrate that an alternative sale of the [property] would return solvency to [the] estate," or that an alternative sale might provide her with a surplus, she lacks standing to

5

J.A.20

bring this Appeal. *Willemain*, 764 F.2d at 1023. This fact alone warrants a dismissal of the Appeal.

Moreover, the Stanley Drive property was sold on November 24, 2015 in accordance with Judge Schneider's Order. (ECF No. 13-4, B.R. Doc. 313.) The buyers, as stated in the Order, are a "good faith purchaser" under 11 U.S.C. § 363(m). (ECF No. 1-1 at ¶ E, B.R. Doc. 273 at ¶ E.) Appellant does not challenge whether the buyers were a good faith purchaser. Nor is there reason to do so: the stipulation in the Order that the buyers are good faith purchasers, coupled with the fact that the order was "free and clear of liens and encumbrances" (ECF No. 1-1) and the fact that the buyers purchased the property for value ($655,000.00) (ECF No. 13-4, B.R. Doc. 313) make it clear that the buyers were indeed good faith purchasers. Accordingly, the pending appeal is moot and must be dismissed.[4] *Ready*, 2006 WL 4550188, at *2

## II.    Order Denying Motion to Alter or Amend

Appellee argues that Appellant's challenge to the Judge Schneider's Order Denying Debtor's Motion to Alter or Amend the Conversion Order is barred as *res judicata*. (ECF No. 3 ¶¶ 2-6.) Appellant asserts, however, that principles of *res judicata* do not apply because the Motion to Alter or Amend relied upon new evidence—the Affidavit of Paula Rush—which, under *Levy v. Kindred*, 854 F. 2d 682, 685 (4th Cir. 1988), this Court declined to

---

[4] It bears mention that Appellant's Motion for Stay Pending Appeal was not filed until January 19, 2016, nearly two months after the sale was consummated. (ECF No. 11.) The Motion for Stay is thus immaterial to the validity of the sale. "Where a sale of a bankrupt's assets has not been stayed, an appeal challenging the sale's validity is moot because 'the court has no remedy that it can fashion even if it would have determined the issues differently.'" *In re Minh Vu Hoang*, Civ. No. DKC 13-2637, 2014 WL 1125371, at *2 (D. Md. Mar. 19, 2014) (quoting *In re Rare Earth Minerals*, 445 F.3d 359, 363 (4th Cir.2006)).

J.A 21

consider on the first appeal, but which, Appellant argues, the Court may now properly consider. (ECF No. 5 at ¶¶ 6-8.)

This Court need not determine whether the prior ruling (the Memorandum Opinion) makes the pending appeal *res judicata*. This appeal may be resolved by a determination of whether Judge Schneider abused his discretion in denying Appellant's Motion to Alter or Amend the Conversion Order. *Baltrotsky*, 2004 WL 2937537 at *10. As stated in the Memorandum Opinion, Judge Schneider made ample findings in support of his decision to grant the Conversion Order:

> "[E]ven if this Court did consider the findings of Paula Rush, they would not be grounds for reversing Judge Schneider's order.
>     Appellant seems to offer the affidavit of Paula Rush in order to rebut Judge Schneider's finding that 'this case has no chance of being reorganized' because 'the debtor is at odds with everyone.' If U.S. Bank was removed from the proceedings, Appellant reasons, there would be a greater likelihood of reorganization. **However, the Appellant's apparent inability to broker agreement around a reorganization plan was only one of Judge Schneider's many reasons for converting her case.** Additionally, he lacked confidence in her ability to 'manage the properties or to keep the funds separate or to make the reports that she's required to make to the Court, in an accurate and complete way.' He specifically cited her 'failure to disclose any income from her law firm or to disclose whether in fact the law firm ha[d] been expending time and money in representing [her],' her 'clear comingling of accounts between debtor in possession accounts and accounts of others, including the law firm,' her failure 'to file timely and accurate reports,' her 'lack of knowledge of the Bankruptcy Code,' her 'questionable answers' to the court's questions, her 'contradictory and confused statement of the past events,'' and her 'violation of a court order and the terms of its use of cash collateral.'''

Memorandum Opinion at 9-10 (emphasis added) (footnotes omitted). Even if this Court were to accept as true Appellant's new factual assertions, there still remains substantial evidence supporting the issuance of the Conversion Order and Judge Schneider's decision to uphold it. Thus, Appellant is unable show that Judge Schneider abused his discretion by

J.A.22

denying Appellant's Motion to Alter or Amend the Conversion Order.   Accordingly, Appellant's argument fails and Judge Schneider's Order Denying the Motion to Alter or Amend will be affirmed.

## CONCLUSION

For the reasons set forth above, Appellee George W. Liebmann, Chapter 7 Trustee's Motion to Dismiss Appeal (ECF No. 3) is GRANTED; Bankruptcy Judge James F. Schneider's Order Granting Chapter 7 Trustee's Motion for Sale of 10 Stanley Drive, Catonsville, Free and Clear of Liens and Encumbrances (B.R. Doc. 273) is AFFIRMED; and Judge Schneider's Order Denying the Debtor's Motion to Alter or Amend Order Converting Chapter 11 Case to Chapter 7 (B.R. Doc. 274) is also AFFIRMED.

Appellant's Motion For Stay Pending Appeal (ECF No. 11) is MOOT.   Appellee's Motion to Strike (ECF No. 2) and Appellee's Second Motion to Dismiss Appeal (ECF No. 13) are MOOT.

A separate Order follows.

Dated:        March 18, 2016

         ___/s/_____
         Richard D. Bennett
         United States District Judge

8

J.A. 23

5/3/2016                          District of Maryland (CM/ECF Live 6.1)

APPEAL,CLOSED

# U.S. District Court
## District of Maryland (Baltimore)
## CIVIL DOCKET FOR CASE #: 1:15-cv-03423-RDB

| | |
|---|---|
| Smith-Scott v. Howard Bank et al | Date Filed: 11/09/2015 |
| Assigned to: Judge Richard D Bennett | Date Terminated: 03/18/2016 |
| Related Cases: 1:14-cv-01157-JFM | Jury Demand: None |
| 1:15-cv-01013-RDB | Nature of Suit: 422 Bankruptcy Appeal |
| 1:15-cv-03637-RDB | (801) |
| Case in other court: U.S. Bankruptcy Court, 14-25022 | Jurisdiction: Federal Question |
| Fourth Circuit Court of Appeals, 16-01325 | |
| Cause: 11:101 Bankruptcy (Definitions) | |

**Appellant**

**Arlene A. Smith-Scott**          represented by      **Arlene Adasa Smith Scott**
                                                       Strategic Law Group LLC
                                                       367 Main St
                                                       Laurel, MD 20707
                                                       12402802370
                                                       Fax: 12402802381
                                                       Email: asmithscott@aol.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

V.

**Appellee**

**Howard Bank**                    represented by      **Craig Burton Leavers**
                                                       Hofmeister Breza and Leavers
                                                       Executive Plaza III
                                                       11350 McCormick Rd Ste 1300
                                                       Hunt Valley, MD 21031
                                                       14108328822
                                                       Fax: 14108328833
                                                       Email: craigl@hbllaw.com
                                                       *LEAD ATTORNEY*
                                                       *ATTORNEY TO BE NOTICED*

**Appellee**

**U.S. Bank National Assoc.**      represented by      **Gary C Adler**
*as Indenture Trustee for Waterfall*                   Clark Hill PLC
*Victoria Mortgage Trust 2011-SBC3*                    601 Pennsylvania Avenue, NW
                                                       Suite 1000, North Building
                                                       Washington, DC 20004
                                                       12025522363

5/3/2016                               District of Maryland (CM/ECF Live 6.1)

                                           Fax: 12025522378
                                           Email: gadler@clarkhill.com
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*


V.

**Debtor**

**Arlene A. Smith-Scott**              represented by **Arlene Adasa Smith Scott**
                                           (See above for address)
                                           *ATTORNEY TO BE NOTICED*


**Trustee**

**George W. Liebmann**                 represented by **George W Liebmann**
                                           Liebmann and Shively, P.A.
                                           8 W Hamilton St
                                           Baltimore, MD 21201
                                           14107525887
                                           Fax: 14105393973
                                           Email: gliebmann@lspa.comcastbiz.net
                                           *ATTORNEY TO BE NOTICED*

                                           **Orbie R Shively**
                                           Liebmann and Shively PA
                                           8 W Hamilton St
                                           Baltimore, MD 21201
                                           14107525887
                                           Fax: 14105393973
                                           Email: oshively@lspa.comcastbiz.net
                                           *ATTORNEY TO BE NOTICED*


**Trustee**

**Office of U.S. Trustee**             represented by **Edmund A Goldberg**
                                           Office of the United States Trustee
                                           101 W Lombard St Ste 2625
                                           Baltimore, MD 21201
                                           14109627823
                                           Fax: 14109623537
                                           Email: edmund.a.goldberg@usdoj.gov
                                           *LEAD ATTORNEY*
                                           *ATTORNEY TO BE NOTICED*


| Date Filed | # | Docket Text |
|------------|---|-------------|
| 11/09/2015 | 1 | Notice of APPEAL FROM BANKRUPTCY COURT (Baltimore). Bankruptcy Court case number 14-25022, filed by Arlene A. Smith-Scott. (Attachments: # 1 Order, # 2 Order, # 3 Docket Sheet, # 4 Transmittal)(jnls, Deputy Clerk) (Entered: 11/10/2015) |

JSA25

| 11/10/2015 | 2 | MOTION to Strike 1 Bankruptcy Appeal *Insofar As It Relates to Order Denying Amended Motion to Alter or Amend Order Converting Case to Chapter 7 (Pl. 274* by George W. Liebmann Responses due by 11/27/2015 (Attachments: # 1 Text of Proposed Order Striking Notice of Appeal (Pl. 1) Insofar As It Relates to Order Denying Amended Motion to Alter or Amend Order Converting Case to Chapter 7 (Pl. 274), # 2 Exhibit Pl. 10, # 3 Exhibit Pl. 11)(Shively, Orbie) (Entered: 11/10/2015) |
|---|---|---|
| 11/17/2015 | 3 | MOTION to Dismiss *Appeal (Res Judicata and Lack of Standing)* by George W. Liebmann Responses due by 12/4/2015 (Attachments: # 1 Exhibit Pl. 262, # 2 Exhibit Pl. 263, # 3 Exhibit Pl. 63, # 4 Exhibit Claims Register)(Shively, Orbie) (Entered: 11/17/2015) |
| 11/18/2015 | 4 | NOTICE by Howard Bank *(Notice of Joinder to Trustee's Motion to Dismiss Appeal)* (Leavers, Craig) (Entered: 11/18/2015) |
| 11/30/2015 | 5 | RESPONSE in Opposition re 2 MOTION to Strike 1 Bankruptcy Appeal *Insofar As It Relates to Order Denying Amended Motion to Alter or Amend Order Converting Case to Chapter 7 (Pl. 274*, 3 MOTION to Dismiss *Appeal (Res Judicata and Lack of Standing)* filed by Arlene A. Smith-Scott. Replies due by 12/17/2015. (Attachments: # 1 Exhibit Ex. A, # 2 Exhibit Ex. B, # 3 Exhibit Ex. C, # 4 Exhibit Ex. D, # 5 Exhibit Ex. E, # 6 Exhibit Ex. F, # 7 Exhibit Ex. G, # 8 Exhibit Ex. H, # 9 Exhibit Ex. I, # 10 Exhibit Ex. J, # 11 Exhibit Ex. K, # 12 Exhibit Ex. L, # 13 Exhibit Ex. M, # 14 Exhibit Ex. N, # 15 Exhibit Ex. O, # 16 Exhibit Ex. Q, # 17 Exhibit Ex. R, # 18 Exhibit Ex. S)(Smith Scott, Arlene) (Entered: 11/30/2015) |
| 12/08/2015 | 6 | DESIGNATION of Record on Appeal from U.S. Bankruptcy Court by Howard Bank re 1 Bankruptcy Appeal (Attachments: # 1 Amended Motion for Relief from Automatic Stay, # 2 Notice of Amended Motion for Relief from Automatic Stay, # 3 Exhibit A -Amended Motion for Relief from Automatic Stay, # 4 Exhibit B - Amended Motion for Relief from Automatic Stay, # 5 Exhibit C - Amended Motion for Relief from Automatic Stay, # 6 Exhibit D - Amended Motion for Relief from Automatic Stay, # 7 Redline Amended Motion for Relief from Automatic Stay, # 8 Amended Motion for Relief from Automatic Stay, # 9 Notice of Amended Motion for Relief from Automatic Stay, # 10 Exhibit A - Amended Motion for Relief from Automatic Stay, # 11 Exhibit B - Amended Motion for Relief from Automatic Stay, # 12 Exhibit C - Amended Motion for Relief from Automatic Stay, # 13 Exhibit D - Amended Motion for Relief from Automatic Stay, # 14 Redline Amended Motion for Relief from Automatic Stay, # 15 Memorandum Opinion, # 16 Order denying Patapsco Bank's Motion to Dismiss Appeal, # 17 Order approving Trustee's Motion for Sale of 10 Stanley Drive, # 18 Order denying debtor's motion to alter or amend order converting chapter 11 to chapter 7, # 19 Notice of Appeal of Arlene A Smith-Scott, # 20 Bankruptcy Court Transmittal Sheet)(jnls, Deputy Clerk) (Entered: 12/10/2015) |
| 12/08/2015 | 7 | DESIGNATION of Record on Appeal from U.S. Bankruptcy Court by George W. Liebmann re 1 Bankruptcy Appeal (Attachments: # 1 Memorandum Opinion, # 2 Order denying Motion of Patapsco Bank to Dismiss Appeal, # 3 Order Approving Motion for Sale of 10 Stanley Drive, # 4 Order denying debtor's motion to alter or amend order converting chapter 11 case to chapter 7, # 5 Notice of Appeal by Arlene A. Smith-Scott, # 6 Trustee's Report of Sale, # 7 Settlement Statement, # 8 Bankruptcy Transmittal Sheet)(jnls, Deputy Clerk) (Entered: 12/10/2015) |

J.A.26

| 12/08/2015 | 8 | DESIGNATION of Record on Appeal from U.S. Bankruptcy Court by Arlene A. Smith-Scott re 1 Bankruptcy Appeal (Attachments: # 1 Amended Order converting case from chapter 11 to chapter 7, # 2 Application to Employ Attorney, # 3 Text of Proposed Order Application to Employ Attorney, # 4 U.S. Bank Motion for Protective Order, # 5 Exhibit A - U.S. Bank Motion for Protective Order, # 6 Order granting U.S. Bank Motion for Protective Order, # 7 Order granting AMS Real Estate Motion to Quash and for Protective Order, # 8 Order granting Cohen Financial Motion to Quash and for Protective Order, # 9 Opposition of Patapsco Bank to stay pending appeal, # 10 Text of Proposed Order Opposition of Patapsco Bank to stay pending appeal, # 11 Exhibit A - Opposition of Patapsco Bank to stay pending appeal, # 12 Exhibit B - Opposition of Patapsco Bank to stay pending appeal, # 13 Exhibit C - Opposition of Patapsco Bank to stay pending appeal, # 14 Exhibit D - Opposition of Patapsco Bank to stay pending appeal, # 15 Order terminating automatic stay, # 16 Order terminating automatic stay, # 17 Order allowing first and final application for compensation and reimbursement of expenses of counsel, # 18 Motion of Trustee for approval of settlement and compromise with U.S. Bank, # 19 Attachment - Motion of Trustee for approval of settlement and compromise with U.S. Bank, # 20 Text of Proposed Order Motion of Trustee for approval of settlement and compromise with U.S. Bank, # 21 Notice of filing of Motion of Trustee for approval of settlement and compromise with U.S. Bank, # 22 Label Matrix, # 23 Trustee's application to employ realtor, # 24 Text of Proposed Order Trustee's application to employ realtor)(jnls, Deputy Clerk) (Entered: 12/10/2015) |
| 12/08/2015 | 9 | DESIGNATION of Record on Appeal from U.S. Bankruptcy Court by Arlene A. Smith-Scott re 1 Bankruptcy Appeal (Attachments: # 1 Affidavit Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 2 Background Study - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 3 Exhibit 1 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 4 Exhibit 2 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 5 Exhibit 3 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 6 Exhibit 4 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 7 Exhibit 5 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 8 Exhibit 6 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 9 Exhibit 7 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 10 Exhibit 8 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 11 Exhibit 9 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 12 Exhibit 10 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 13 Exhibit 11 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 14 Exhibit 12 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 15 Exhibit 13 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 16 Exhibit 14 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 17 Exhibit 15 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 18 Exhibit 16 - Opposition to application to compromise controversy with US Bank, Cohen and AMS, # 19 SEC Info Sutherland Asset Management Corp - FILED ]                    RMAT ONLY, # 20 Order approving |

J.A.27

| | | |
|---|---|---|
| | | trustee's application to employ realtor, # 21 Debtor's motion to alter or amend order converting chapter 11 to chapter 7 - FILED IN PAPER FORMAT ONLY, # 22 Order approving trustee's settlement and compromise with U.S. Bank, # 23 Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 24 Exhibit A - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 25 Exhibit B - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 26 Exhibit C - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 27 Exhibit D - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 28 Exhibit E - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7, # 29 Exhibit F - Opposition to debtor's motion to alter or amend amended order converting chapter 11 to chapter 7)(jnls, Deputy Clerk) (Entered: 12/10/2015) |
| 12/08/2015 | 10 | DESIGNATION of Record on Appeal from U.S. Bankruptcy Court by Arlene A. Smith-Scott re 1 Bankruptcy Appeal (Attachments: # 1 Text of Proposed Order Trustee's motion for sale of 10 Stanley Drive, # 2 Notice of Filing Trustee's motion for sale of 10 Stanley Drive, # 3 Label Matrix, # 4 Debtor's motion to alter or amend order converting chapter 11 case to chapter 7, # 5 Text of Proposed Order Debtor's motion to alter or amend order converting chapter 11 case to chapter 7, # 6 Exhibit List - Debtor's motion to alter or amend order converting chapter 11 case to chapter 7, # 7 SEC Info Sutherland Asset Management Corp - FILED IN PAPER FORMAT ONLY, # 8 Opposition of Howard Bank to debtor's amended motion to alter or amend amended order converting from chapter 11 to chapter 7, # 9 Trustee's reply to debtor's opposition to motion for sale of 10 Stanley Drive, # 10 Text of Proposed Order Order overruling debtor's objection to trustee's motion for sale of 10 Stanley Drive, # 11 Text of Proposed Order Order approving trustee's motion for sale of 10 Stanley Drive, # 12 Notice of Joinder of Trustee's reply to debtor's opposition to trustee's motion for sale of 10 Stanley Drive, # 13 Order approving trustee's motion for sale of 10 Stanley Drive, # 14 Order denying debtor's motion to alter or amend order converting from chapter 11 to chapter 7, # 15 Notice of Appeal, # 16 Bankruptcy Transmittal Sheet)(jnls, Deputy Clerk) (Entered: 12/10/2015) |
| 01/19/2016 | 11 | MOTION to Stay by Arlene A. Smith-Scott Responses due by 2/5/2016 (Attachments: # 1 Text of Proposed Order, # 2 Exhibit Exhibits as to Patapsco Bank - Part 1)Associated Cases: 1:15-cv-03637-RDB, 1:15-cv-03423-RDB(Smith Scott, Arlene) (Entered: 01/19/2016) |
| 01/20/2016 | 12 | QC NOTICE: 11 Motion to Stay, filed by Arlene A. Smith-Scott was filed incorrectly. **Exhibits must be attached as separate documents to the main document. Your document has been accepted as filed. No corrective action is required in regard to this filing. (jnls, Deputy Clerk) (Entered: 01/20/2016) |
| 01/21/2016 | 13 | Second MOTION to Dismiss Appeal by George W. Liebmann Responses due by 2/8/2016 (Attachments: # 1 Exhibit Pl. 262, # 2 Exhibit Pl. 263, # 3 Exhibit Pl. 313 (Report of Sale), # 4 Exhibit Pl. 313 (HUD-1 annexed to Report of Sale)), # 5 Exhibit Pl. 63, # 6 Exhibit Claims Register)(Shively, Orbie) (Entered: 01/21/2016) |
| 01/21/2016 | 14 | RESPONSE in Opposition re 11 MOTION to Stay Pending Appeal and Waiver of |

J. A. 28

| | | |
|---|---|---|
| | | *Supersedeas Bond or Alternatively to Establish Bond* filed by George W. Liebmann. Replies due by 2/8/2016. (Shively, Orbie) (Entered: 01/21/2016) |
| 03/18/2016 | 15 | MEMORANDUM OPINION Signed by Judge Richard D Bennett on 3/18/2016. (cags, Deputy Clerk) (Entered: 03/18/2016) |
| 03/18/2016 | 16 | ORDER finding as moot 2 Motion to Strike; granting 3 Motion George W. Liebmann, Chapter 7 Trustee's to Dismiss; finding as moot 11 Motion to Stay; finding as moot 13 Appellee's Second Motion to Dismiss. Signed by Judge Richard D Bennett on 3/18/2016 (cags, Deputy Clerk) (Entered: 03/18/2016) |
| 03/22/2016 | 17 | NOTICE OF APPEAL as to 16 Order on Motion to Strike, Order on Motion to Dismiss, Order on Motion to Stay, by Arlene A. Smith-Scott. Filing fee $ 505, receipt number 0416-5924299. (Smith Scott, Arlene) Modified on 3/23/2016 (sls, Deputy Clerk). (Entered: 03/22/2016) |
| 03/23/2016 | 18 | Transmission of Notice of Appeal and Docket Sheet to US Court of Appeals re 17 Notice of Appeal,. IMPORTANT NOTICE: To access forms which you are required to file with the United States Court of Appeals for the Fourth Circuit please go to http://www.ca4.uscourts.gov and click on Forms & Notices. (sls, Deputy Clerk) (Entered: 03/23/2016) |
| 03/25/2016 | 19 | USCA Case Number 16-1325 for 17 Notice of Appeal, filed by Arlene A. Smith-Scott. Case Manager - Cathy Tyree Herb (slss, Deputy Clerk) (Entered: 03/25/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 05/03/2016 17:44:20 | | | |
| PACER Login: | as5117:3537193:0 | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:15-cv-03423-RDB |
| Billable Pages: | 5 | Cost: | 0.50 |

0027352 437

AFTER RECORDING, PLEASE RETURN TO:                                    BGW#: 62652

Bierman, Geesing & Ward, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814

## DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE

THIS DEED OF APPOINTMENT OF SUBSTITUTE TRUSTEE, is made this 25 day of September 2008, by and among CAPITAL ONE BANK SUCCESSOR BY MERGER TO GREENPOINT MORTGAGE FUNDING INC. party of the first part, and HOWARD N. BIERMAN, JACOB GEESING AND CARRIE M. WARD, any of whom may act independently of the other (collectively, 'Substitute Trustees'), party of the second part.

WHEREAS, Arlene A. Smith-Scott by Deed of Trust dated February 22, 2007, and recorded among the Land Records of Baltimore County, Maryland in Liber 0025320, Folio 281, did grant and convey certain real estate known as:

SEE ATTACHED LEGAL DESCRIPTION

Known as: 10 Stahley Drive, Catonsville, MD 21228

in trust, to secure to Greenpoint Mortgage Funding, Inc., payment of a note ("Note") of even date therewith in the original principal amount of $967,500.00; and

WHEREAS, said Deed of Trust provides that the holder of the Note shall have the power and authority to appoint, by an instrument duly executed, acknowledged and recorded among the Land Records aforesaid, substitute trustee(s) in the place and stead of the trustee(s) named therein; and

WHEREAS, the party of the first part is the owner and holder of the note secured by said Deed of Trust.

NOW, THEREFORE WITNESSETH, in consideration of the sum of Ten Dollars ($10.00), and other good and valuable consideration, the party of the first part by the execution and delivery of these presents, hereby appoints Howard N. Bierman, Jacob Geesing and Carrie M. Ward, as substitute trustees under the said Deed of Trust in the place and stead of the trustee or trustees originally named therein, or in place of any other trustee or trustees who have heretofore been substituted for the originally named trustee or trustees, the said Substitute Trustees being vested with all of the right, title and interest and clothed with all the rights, powers and privileges of the trustee or trustees originally named in said Deed of Trust.

```
IMP FD SURE $        20.00
RECORDING FEE        20.00
TOTAL                40.00
Rcpt BA15     Rcpt # 46058
SM     IM     Blk # 1210
Sep 29, 2008        03:14 PM
```

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27352, p. 0437, MSA_CE62_27207. Data available 10/02/2008. Printed 08/22/2014.

J.A.31

00273521 438

0023512 026

**SCHEDULE "A"**
**LEGAL DESCRIPTION**

BEGINNING for the same at a pipe heretofore set on
the West side of Park Drive as laid out on the Plat of
Summit Park recorded among the Land Records of
Baltimore County in Plat Book WPC No. 5, folio 71, said
place of beginning being at the end of the 3rd line of the
land which by deed dated August 4, 1947 and recorded
among the Land Records of Baltimore County in Liber
JWB No. 1579, folio 462, was conveyed by Walter R.
Tabler and wife to Melvin S. White and wife, thence
leaving said place of beginning and binding in part on
the West side of Park Drive and also in part on the
Southwest side of Stanley Drive as shown on the
aforesaid Plat as now surveyed referring courses to
said plat the 4 following courses and distances, viz:  (1)
by a curve to the left in a Northwesterly direction with a
radius of 380 feet for a distance of 67.31 feet to a point
of reverse curve (the arc of which is subtended by a
chord bearing North 3 degrees 19 minutes 58 seconds
West 67.22 feet) thence  (2)  by a curve to the right in a
Northwesterly direction with a radius of 480 feet for a
distance of 61.23 feet to another point of reverse curve
(the arc of which is subtended by a chord bearing North
4 degrees 45 minutes 11 seconds West 61.19 feet)
thence  (3)  by a curve to the left in a Northwesterly
direction with a radius of 60 feet for a distance of 73.98
feet to another point of reverse curve (the arc of which
is subtended by a chord bearing North 36 degrees 25
minutes 23 seconds West 69.38 feet) thence  (4)  by a
curve to the right in a Northwesterly direction with a
radius of 120 feet for a distance of 72.53 feet to a pipe
now set at the southeast corner of Lot 4, Section D,
Summit Park (the arc of which is subtended to a chord
bearing North 54 degrees 25 minutes 53 seconds West
71.43 feet) thence leaving Stanley Drive and binding on
the division line between Lots 4 and 5, Section D of
said Plat  (5)  South 85 degrees 58 minutes West
222.28 feet to the western outline of said plat, thence
binding on a portion of said Western outline (6)  South
0 degrees 36 minutes East 311.51 feet to the Northwest
corner of Lot 6, Section D of said Plat, thence binding

BALTIMORE COUNTY CIRCUIT COURT (Land Records) [MSA CE 62-23367] Book SM 23512, p. 0026. Printed 08/08/2008. Online 08/22/2008.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27352, p. 0438, MSA_CE62_27207. Date available 10/02/2008. Printed 08/22/2014.

J A 32

0027352 439

0023512 027

on a portion of the division line between Lots 5 and 6, Section D  (7)  North 87 degrees 58 minutes East 122.03 feet to the beginning of the 2nd line of the aforesaid Deed, thence binding on the 2nd and 3rd lines of said Deed the 2 following courses and distances, respectively  (8)  North 2 degrees 02 minutes West 90 feet to the beginning of the 3rd line, thence  (9)  North 87 degrees 58 minutes East 208.12 feet to the place of beginning.

According to a survey prepared by Evan, Hagan & Holdefer, Inc., surveyors and Civil Engineers, February 1977.

Containing 1.838 acres of land more or less.

SAVING AND EXCEPTING THEREFROM, so much of said lot of ground as was granted and conveyed by Deed dated April 3, 1979, and recorded among the Land Records of Baltimore County in Liber EHK, Jr. No. 6007, folio 414, by Adolph Saxon unto Forty West Builders, Inc., containing 0.373 acres of land more or less.

ALSO BEING the property shown as Lot 1 on a plat entitled, "Resubdivision of Portion of Lot 5, Section D, SUMMIT PARK", which plat is recorded among the Land Records of Baltimore County in Plat Book 43, folio 148, together with the 0.017 Ac.± widening line shown on said plat.

The improvements thereon being known as:  10 Stanley Drive, Baltimore, Maryland 21228

Tax I.D. #:  18-00-006303

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27352, p. 0439, MSA_CE62_27207. Date available 10/02/2008. Printed 08/22/2014.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) (MSA CE 62-23367) Book SM 23512, p. 0027. Printed 08/08/2008. Online 08/22/2008.

J. A. 33

0 0 2 7 3 5 2 1   4 4 0

BGW#: 62652

IN WITNESS WHEREOF, CAPITAL ONE BANK SUCCESSOR BY MERGER TO GREENPOINT MORTGAGE FUNDING INC. has caused these presents to be executed the day hereinabove first written by Capital One by _Jacqueline Suarato_, which individual has been duly appointed as the party with proper authority so to act for the purposes contained herein.

Capital One Bank Successor by Merger to Greenpoint Mortgage Funding Inc.

Name: _Jacqueline Suarato_
Title: _Assistant Vice President_

STATE OF _New York_ )
COUNTY OF _Suffolk_ ) ss.

I, _Judith Fitzgerald_, a Notary Public in and for the State and County aforesaid, do hereby certify that _Jacqueline Suarato    AVP_ of Capital One Bank Successor by Merger to Greenpoint Mortgage Funding Inc., personally appeared before me in the jurisdiction aforesaid and executed the foregoing Deed of Appointment of Substitute Trustee hereto annexed bearing the date of _September 25_, 2008, and being duly sworn, he/she stated that he/she has lawful authority to execute said instrument, and he/she acknowledged the same to be his/her willful act and deed and that of the said party of the first part.

Given under my hand and seal this _25_ day of _September_, 2008.

Notary Public

My Commission Expires:

I hereby certify that the within instrument was prepared under the supervision of either Howard N. Bierman, Jacob Geesing and Carrie M. Ward, attorneys-at-law duly admitted to practice before the Court of Appeals of the State of Maryland.

Howard N. Bierman
Jacob Geesing
Carrie M. Ward

BGW#: 62652

JUDITH A. FITZGERALD
NOTARY PUBLIC-STATE OF NEW YORK
No. 01FI6753051
Qualified in Suffolk County
Commission Expires September 25, 20_10_

J.A. 34

0 0 2 7 3 5 2 1 4 4 1

BALTIMORE COUNTY CIRCUIT COURT (Land Records) SM 27352, p. 0441, MSA_CE62_27207. Date available 10/02/2008. Printed 08/22/2014.

Party of the first part:

Capital One Bank Successor by Merger to Greenpoint Mortgage Funding Inc.
c/o Capital One Bank
265 Boradhollow Road
PO Box 8913
Melville, NY 11747

Party of the second part:

Howard N. Bierman, Substitute Trustee
Jacob Geesing, Substitute Trustee
Carrie M. Ward, Substitute Trustee
4520 East West Highway, Suite 200
Bethesda, MD 20814

J.A. 35

BGW#62652

IN THE CIRCUIT COURT FOR BALTIMORE COUNTY, MARYLAND

Jacob Geesing, et al.                                    *
4520 East West Highway, Suite 200          *
Bethesda, MD 20814                               *
    Substitute Trustees                      *
    Plaintiffs                                      *
vs.                                                             *
ARLENE A. SMITH-SCOTT                        *          Case No. _____
10 Stanley Drive                                     *
Catonsville, MD 21228                           *
                                                               *
    Defendant(s)                                *
*    *    *    *    *    *    *    *          *

## CERTIFICATION REGARDING DEBT INSTRUMENT

    I HEREBY CERTIFY that enclosed herein is a true and correct copy of the debt instrument ("Note") which was provided to the undersigned Substitute Trustee by the current holder of said Note, and which is secured by the enclosed Deed of Trust.

        Respectfully submitted,
        Bierman, Geesing & Ward, LLC

By: _Jacob_____
    Jacob Geesing
    Carrie M. Ward
    Howard Bierman
    4520 East West Highway, Suite 200
    Bethesda, MD 20814
    (301) 961-6555

Sworn before me this _26th_ day of _September_, 2008.

_Rodnita Moulton_
Notary Public

My Commission Expires:

True Copy Test
JULIE L. ENSOR, Clerk
Per _____ Assistant Clerk

JA 36

Circuit Court for Baltimore County
County Courts Building
401 Bosley Avenue
Towson, MD 21204

GREENPOINT MORTGAGE CORPORATION )
　　　　)
　　　　*Plaintiff / Counter Defendant*　　)
　　　　)
vs.　　　　　　　　　　　　　　　)　　CASE NUMBER #03-C-08010285
　　　　)
　　　　)
ARLENE A SMITH-SCOTT　　　　)
1359 FISHING CREEK ROAD　　　　)
ANNAPOLIS, MD. 21403　　　　　　)
　　　　)
　　　　*Defendant / Counter Plaintiff*　　)

ORDER

　　THE FOREGOING MOTION FOR INJUNCTION TO STAY FORECLOSURE SALE
*Plaintiff notified of court's unsideration*
having been read and considered it is thereupon this 14 day of Octob

2008,

　　ORDERED by the Baltimore County Circuit Court that this Motion for Injunction to Stay

Foreclosure sale is GRANTED ~~and the Clerk shall issue the Mandate assessing costs against the~~

~~PLAINTIFF.~~

　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　JUDGE

cc: Jacob Geesing, Esq. *counsel for Plaintiff*
　　　Arlene Smith-Scott

J A 37

Case 14-25022    Claim 6-1    Filed 12/01/14    Page 1 of 2

**B10 (Official Form 10) (04/13)**

| UNITED STATES BANKRUPTCY COURT District of Maryland | | PROOF OF CLAIM |
|---|---|---|

| | |
|---|---|
| Name of Debtor:<br>ARLENE SMITH–SCOTT | Case Number:<br>14–25022 |

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):

US Bank National Assoc.

**FILED**
U.S. Bankruptcy Court
District of Maryland
12/1/2014
Mark A. Neal, Clerk
COURT USE ONLY

Name and address where notices should be sent:

US Bank National Assoc.
c/o Mary–Beth T. Valley
Roetzel &Andress LPA
420 South Orange Avenue
CNL Center II, 7th Floor
Orlando, FL 32801
    Telephone number: 407–896–2224    email: mvalley@ralaw.com

Mary–Beth T. Valley
Roetzel &Andress LPA
420 South Orange Avenue
CNL Center II, 7th Floor
Orlando, FL 32801

☐ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**
_____ *(If known)*
Filed on: _____

Name and address where payment should be sent (if different from above):

Telephone number:    email:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:** $   1912038.81
If all or part of the claim is secured, complete item 4. If all or part of the claim is entitled to priority, complete item 5.
☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** _____Money loaned_____ (See instruction #2)

**3. Last four digits of any number by which creditor identifies debtor:** _1275_

**3a. Debtor may have scheduled account as:**
_____
(See instruction #3a)

**3b. Uniform Claim Identifier (optional):**
_____
(See instruction #3b)

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.
Nature of property or right of setoff: ☑ Real Estate  ☐ Motor Vehicle  ☐ Other
Describe:
Value of Property: $_____
Annual Interest Rate (when case was filed) 3.875% ☐ Fixed or ☑ Variable

Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:
$ _____
Basis for perfection: _____First mortgage_____
Amount of Secured Claim: $   1912038.81
Amount Unsecured:    $   0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan – 11 U.S.C. §507(a)(5).

Amount entitled to priority:

☐ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. §507(a)(7).

☐ Taxes or penalties owed to governmental units – 11 U.S.C. §507(a)(8).

☐ Other – Specify applicable paragraph of 11 U.S.C. §507(a)(_).

$_____

*Amounts are subject to adjustment on 4/1/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

J.A.38

**7. Documents:** Attached are **redacted** copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and **redacted** copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. (*See instruction #7, and the definition of "redacted".*)

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

**8. Signature:** (See instruction #8) Check the appropriate box.

☐ I am the creditor.   ☑ I am the creditor's authorized agent. (Attach copy of power of attorney, if any.)   ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)   ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name: Mary-Beth T. Valley
Title: Attorney
Company: Roetzel & Andress LPA
Address and telephone number (if different from notice address above):

s/ Mary-Beth T. Valley    12/1/2014
(Signature)    (Date)

Telephone number:    email:

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

J. A. 39

0034527 447



## ASSIGNMENT OF DEED OF TRUST

**When Recorded Return To:**

Cohen Financial
4601 College Blvd. Suite 300
Leawood, KS 66211

Attention:
        Loan Operations

| | |
|---|---|
| IMP FD SURE | 40.00 |
| RECORDING FEE | 20.00 |
| TOTAL | 60.00 |
| Rcpt BAR5 | Rcpt # 98170 |
| JLE   LL | Blk # 968 |
| Dec 16, 2013 | 12:13 PM |

Premises:

Street Address: 10 Stanley Drive
City of:          Baltimore
County of:       Baltimore
State of:        Maryland
Tax Reference: _____

## ASSIGNMENT OF DEED OF TRUST

**FOR VALUE RECEIVED**, the undersigned ("Assignor") hereby assigns and transfers to Waterfall Victoria Master Fund, Ltd.

Americas, 17th Floor        , having an office located at   1185 Avenue of the
New York, NY 10036       ,                                    ("Assignee"), its successors and assigns,
**WITHOUT RECOURSE**, the undersigned's interest in and to that certain Deed of Trust in the original principal amount of $967,500.00 dated as of February 22, 2007 and recorded on March 8, 2007 in Liber 25320, Folio 281 in the Land Records of Baltimore County, Maryland. The foregoing assignment is being made without representation or warranty, express or implied, except as specifically set forth in Article 8 of that certain Loan Sale Agreement executed by and among the Assignor and the Assignee, dated June 17 , 2011("Agreement").

**IN WITNESS WHEREOF**, the undersigned has executed this Assignment of Mortgage as of June 23, 2011

### GREENPOINT MORTGAGE FUNDING, INC.

By: _____
Name: Douglas Bottner
Title:  Senior Vice President

Borrower:
    ARLENE A. Smith-Scott

**Harbor City Research, Inc.**
201 N. Charles St., Suite 900
Baltimore, MD 21201

J.A. 40        FG85641    #2000A

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 34527, p. 0447, MSA_CE62_34363. Date available 12/19/2013. Printed 09/01/2014.

0034527  448

## ACKNOWLEDGEMENT

State of New York        :
                         :          ss:
County of Suffolk        :

On the 23RD day of June in the year 2011 before me, the undersigned, a Notary Public in and for said State, personally appeared Douglas Bottner, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

```
VICTORIA T. BROWN
Notary Public, State of New York
No. 01BR5035393
Qualified in Suffolk County
Commission Expires October 31, 2014
```

J.A.41



## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

When Recorded Return To:

Cohen Financial
4601 College Blvd. Suite 300
Leawood, KS 66211

Attention:

     Loan Operations

Premises:

| | |
|---|---|
| Street Address: | 10 Stanley Drive |
| City of: | Baltimore |
| County of: | Baltimore |
| State of: | Maryland |
| Tax Reference: | _____ |

## ASSIGNMENT OF ASSIGNMENT OF LEASES AND RENTS

FOR VALUE RECEIVED, the undersigned ("Assignor") hereby assigns and transfers to **, with an address of 1185 Avenue of the Americas, 17th Floor, New York 10036 June ("Assignee"), its successors and assigns, WITHOUT RECOURSE, the undersigned's interest in and to that certain Assignment of Leases and Rents dated as of February 22, 2007 and recorded on March 8, 2007 in Liber 25320, Folio 304 in the Land Records of Baltimore County, Maryland. The foregoing assignment is being made without representation or warranty, express or implied, except as specifically set forth in Article 8 of that certain Loan Sale Agreement executed by and among the Assignor and the Assignee, dated June 17, 2011 ("Agreement").

IN WITNESS WHEREOF, the undersigned has executed this Assignment of Assignment of Leases and Rents, as of June 23, 2011.

GREENPOINT MORTGAGE FUNDING, INC.

By: _____
Name: Douglas Bottner
Title: Senior Vice President

** Waterfall Victoria Master Fund, Ltd.

BORROWER: ALLENE A. Smith-Scott

Harbor City Research, Inc.
201 N. Charles St., Suite 900
Baltimore, MD 21201
F085641    #8083A

J.A.42

## ACKNOWLEDGEMENT

State of New York        :
                         :      ss:
County of Suffolk        :

On the 23rd day of June in the year 2011 before me, the undersigned, a Notary Public in and for said State, personally appeared Douglas Bottner, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

VICTORIA T. BROWN
Notary Public, State of New York
No. 01BR6086063
Qualified in Suffolk County
Commission Expires October 31, 2014

J.A. 43

0034527  451

Upon Recording, please return to:
Cohen Financial
4601 College Blvd., Suite 300
Leawood KS 66211

③

## ASSIGNMENT OF DEED OF TRUST AND SECURITY AGREEMENT

FOR VALUE RECEIVED, Waterfall Victoria Master Fund, Ltd., a Cayman Islands exempt company with offices at 1140 Avenue of the Americas, 7th Floor, New York, NY 10036 ("Assignor") does hereby grant, assign, convey and transfer unto without recourse unto US Bank National Association, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3 ("Assignee"), with offices at 1140 Avenue of the Americas, 7th Floor, New York, NY 10036, its successors and assigns, all of the right, title and interest of Assignor in and to that certain Deed of Trust and Security Agreement described as follows:

| | |
|---|---|
| Grantor(s): | Arlene A. Smith-Scott |
| Original Grantee: | GreenPoint Mortgage Funding, Inc. |
| Dated as of: | February 22, 2007 |
| Recorded: | March 8, 2007 in Book 25320, Page 281 in the Land Records of Baltimore County, Maryland |
| Amount: | $967,500.00 |
| Property: | 10 Stanley Drive, Baltimore MD 21228, more fully described in Exhibit "A" attached thereto |
| Tax Map No: | 18-00-006303 |

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described instrument.

THIS IS TO CERTIFY THAT THE WITHIN INSTRUMENT HAS BEEN PREPARED BY A PARTY TO THIS INSTRUMENT.

By: _____

Name: Leo Whit

Harbor City Research, Inc.   ③
201 N. Charles St., Suite 900
Baltimore, MD 21201

J.A.SN

0034527 452

IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Deed of Trust and Security Agreement as of this 11ᵗʰ day of December, 2013 to be effective as of October 19, 2011.

WITNESS/ATTEST:

_Ben Cox_

_____

ASSIGNOR:

Waterfall Victoria Master Fund, Ltd., a Cayman Islands company
By: Waterfall Asset Management, LLC, a Delaware limited liability company, its Manager
By: CFC Transactions, LLC, an Illinois limited liability company, its attorney-in-fact

By: _____
Name: Ted Wht
Title: Authorized Person

STATE OF KANSAS

COUNTY OF JOHNSON

ACKNOWLEDGMENT

I HEREBY CERTIFY, that on this 11ᵗʰ day of December, 2013, before me, the subscriber, a Notary Public in and for the aforesaid State and County, personally appeared Ted Wright who acknowledged himself to be the Authorized Person of CFC Transactions, LLC, and that as such Authorized Person, he executed the within instrument for the purposes therein contained by signing in my presence the name of said company by himself as its Authorized Person.

WITNESS MY HAND and Notarial Seal.

_Brenda Grother_                    (SEAL)
NOTARY PUBLIC

My Commission Expires:
_6/17/2014_

BRENDA GROTHER
Notary Public, State of Kansas
My Appointment Expires
June 17, 2014

Date of Note: February 22, 2007
Original Principal Amount of Note: $967,500.00
Maker of Note: Arlene A. Smith-Scott
Payee of Note: Greenpoint Mortgage Funding, Inc.

## ASSIGNMENT AND ENDORSEMENT OF DEED OF TRUST NOTE

For Value Received, **WATERFALL VICTORIA MASTER FUND, LTD.**, a Cayman Island exempt company ("Assignor"), hereby transfers, assigns, and endorses to US BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 ("Assignee"), its successors and/or assigns, all of Assignor's right, title, and interest in and to that certain Deed of Trust Note dated February 22, 2007, executed by Arlene A. Smith-Scott, as maker, in favor of Greenpoint Mortgage Funding, Inc. ("Original Lender"), as payee, in the original principal amount of $967,500.00. This Endorsement of Deed of Trust Note is executed concurrently with Assignor's execution of and delivery to Assignee of that certain Assignment of Deed of Trust and Security Agreement of even date herewith (the intent being to assign to Assignee all of the security for the Note).

The Note is hereby endorsed as follows:

"Pay to the order of US BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 its successors and/or assigns, WITHOUT RECOURSE, representation or warranty of any kind"

The foregoing endorsement shall have the same effect as though it were written directly on the Note.

IN WITNESS WHEREOF, Assignor has executed this Assignment and Endorsement of Deed of Trust Note this 5th day of December, 2013, to be effective as of October 19., 2011.

WATERFALL VICTORIA MASTER FUND, LTD.
A Cayman Island exempt company
By: Waterfall Asset Management, LLC, a Delaware limited liability company, its Manager
By: CFC Transactions, LLC, an Illinois limited liability company,
Its Attorney-in-Fact

By: _____
Name: Ted Wright
Title: Authorized Person

J. A. 46

## ACKNOWLEDGEMENT

State of Kansas          :
                          :        ss:
County of Johnson        :

On the 5th day of December in the year 2013 before me, the undersigned, a Notary Public in and for the above State and County, personally appeared Ted Wright, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_Brenda Grother_
Notary Public

BRENDA GROTHER
Notary Public, State of Kansas
My Appointment Expires
June 17, 2014

J. A. 47

0034527  45**8**
453

Upon Recording, please return to:
Cohen Financial
4601 College Blvd., Suite 300
Leawood KS 66211

(C)

| | |
|---|---|
| THF FD SURE | 10.00 |
| RECORDING FEE | 20.00 |
| TOTAL | 60.00 |
| Reef RAE5 | Rcpt # 98170 |
| XLE  LL | Blk # 923 |
| Dec 16, 2013 | 12:14 Pm |

## ASSIGNMENT OF INTEREST IN ASSIGNMENT OF LEASES AND RENTS

FOR VALUE RECEIVED, **Waterfall Victoria Master Fund, Ltd.**, a Cayman Islands exempt company with offices at 1140 Avenue of the Americas, 7th Floor, New York, NY 10036 ("Assignor") does hereby grant, assign, convey and transfer unto without recourse unto **US Bank National Association, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3** ("Assignee"), with offices at 1140 Avenue of the Americas, 7th Floor, New York, NY 10036, its successors and assigns, all of the right, title and interest of Assignor in and to that certain Assignment of Leases and Rents described as follows:

| | |
|---|---|
| Grantor(s): | Arlene A. Smith-Scott |
| Original Grantee: | GreenPoint Mortgage Funding, Inc. |
| Dated as of: | February 22, 2007 |
| Recorded: | March 8, 3007 in Book 25320, Page 304 in the Land Records of Baltimore County, Maryland |
| Property: | 10 Stanley Drive, Baltimore MD 21228, more fully described in Exhibit "A" attached thereto |
| Tax Map No: | 18-00-006303 |

TO HAVE AND TO HOLD the same unto Assignee, its successors and assigns, forever, subject only to the terms and conditions of the above-described instrument.

THIS IS TO CERTIFY THAT THE WITHIN INSTRUMENT HAS BEEN PREPARED BY A PARTY TO THIS INSTRUMENT.

By: _____

Name: _____

Harbor City Research, Inc.  (H)
201 N. Charles St., Suite 900
Baltimore, MD 21201

JA. 48

0034527 454

IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Interest in Assignment of Leases and Rents as of this 11ᵗʰ day of December, 2013 to be effective as of October 19, 2011.

WITNESS/ATTEST:

ASSIGNOR:

Waterfall Victoria Master Fund, Ltd., a Cayman Islands company
By: Waterfall Asset Management, LLC, a Delaware limited liability company, its Manager
By: CFC Transactions, LLC, an Illinois limited liability company, its attorney-in-fact

By: _____
Name: Leo Wright
Title: Authorized Person

ACKNOWLEDGMENT

STATE OF KANSAS

COUNTY OF JOHNSON

I HEREBY CERTIFY, that on this 11ᵗʰ day of December 2013, before me, the subscriber, a Notary Public in and for the aforesaid State and County, personally appeared Ted Wright who acknowledged himself to be the Authorized Person of CFC Transactions, LLC, and that as such Authorized Person, he executed the within instrument for the purposes therein contained by signing in my presence the name of said company by himself as its Authorized Person.

WITNESS MY HAND and Notarial Seal.

_____ (SEAL)
NOTARY PUBLIC
My Commission Expires:
6/17/2014

BRENDA GROTHER
Notary Public, State of Kansas
My Appointment Expires
June 17, 2014

T A 49

Exhibit 21.1

## Subsidiaries

| Subsidiaries | Jurisdiction |
|---|---|
| Sutherland Partners, LP | Delaware |
| Sutherland Asset I, LLC | Delaware |
| Sutherland Grantor Trust, Series I | Delaware |
| Sutherland Grantor Trust, Series II | Delaware |
| Sutherland Grantor Trust, Series III | Delaware |
| Waterfall Commercial Depositor, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC1 | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC2 | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC3 | Delaware |
| Waterfall Commercial Depositor II, LLC | Delaware |
| ReadyCap Commercial Mortgage Trust 2014-1 | New York |
| ReadyCap Holdings, LLC | Delaware |
| ReadyCap Commercial, LLC | Delaware |
| ReadyCap Lending, LLC | Delaware |
| Readycap Commercial Asset Depositor, LLC | Delaware |
| ReadyCap Commercial Revolving Asset Trust | Delaware |
| Silverthread Falls Holdings, LLC | Delaware |
| Silverthread Falls, LLC | Delaware |
| Silverthread Falls Miami, LLC | Delaware |
| Silverthread Falls NYC, LLC | Delaware |
| Silverthread Falls Asset Services NYC, LLC | Delaware |
| Silverthread Falls Denver, LLC | Delaware |
| Silverthread Falls Orange County, Inc. | Delaware |
| Silverthread Falls LA County, Inc. | Delaware |
| Silverthread Falls DFW, LLC | Delaware |
| WAM Sarasota Hanger, LLC | Delaware |
| 435 Clark Road, LLC | Delaware |
| SAMC REO 2013-01, LLC | Delaware |
| Sutherland Asset II, LLC | Delaware |
| 500 & 501 South Homestead Boulevard, LLC | Delaware |
| RL CIT 2014-01, LLC | Delaware |
| SAMC TRS 2014-01, LLC | Delaware |
| Silverthread Falls Asset Services Denver, LLC | Delaware |
| Silverthread Falls Baltimore, LLC | Delaware |
| Silverthread Falls Chicago, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2010-SBC1 REO, LLC | Delaware |
| Williams Rd, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC3 REO-B, LLC | Delaware |
| 8-14 Saddle River Rd, LLC | Delaware |
| 17 Brinkerhoff Place, LLC | Delaware |
| 24 Third Avenue, LLC | Delaware |
| 49 Old Rte 23 LLC | Delaware |
| 115 Cross Key Rd, LLC | Delaware |
| 302-304 Van Houten Paterson, LLC | Delaware |
| 509-511 South Orange Ave LLC | Delaware |

J. A. 50

| | |
|---|---|
| 646 Kennedy Blvd, LLC | Delaware |
| 801 W. Rt 70 LLC | Delaware |
| 998 E 24th Street, LLC | Delaware |
| 9955 Orange Ave, LLC | Delaware |
| Block 153, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC3 REO-B, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC3 REO-C, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-SBC3 REO-J, LLC | Delaware |
| 463 21st, LLC | Delaware |
| 278 Clinton Place, LLC | Delaware |
| 872-874 Stuyvesant Ave, LLC | Delaware |
| 1292-1 Springfield Ave, LLC | Delaware |
| Waterfall Victoria Mortgage Trust 2011-1 | Delaware |
| Waterfall Victoria Mortgage Trust 2011-1 REO, LLC | Delaware |

J.A. 51

S-11/A 1 a2222633zs-11a.htm S-11/A

As filed with the Securities and Exchange Commission on January 6, 2015

Registration Statement No. 333-199114

## SECURITIES AND EXCHANGE COMMISSION
### Washington, D.C. 20549

Amendment No. 3
to

# FORM S-11
### FOR REGISTRATION
### UNDER
### THE SECURITIES ACT OF 1933
### OF CERTAIN REAL ESTATE COMPANIES

# SUTHERLAND ASSET MANAGEMENT CORPORATION
(Exact name of registrant as specified in its governing instruments)

**Sutherland Asset Management Corporation**
**1140 Avenue of the Americas, 7th Fl.**
**New York, NY 10036**
**(212) 257 4600**
(Address, including Zip Code, and Telephone Number, including Area Code, of Registrant's Principal Executive Offices)

**Thomas Capasse**
**Chief Executive Officer**
**Sutherland Asset Management Corporation**
**1140 Avenue of the Americas, 7th Fl.**
**New York, NY 10036**
**(212) 257 4600**
(Name, Address, including Zip Code, and Telephone Number, including Area Code, of Agent for Service)

Copies to:

| | |
|---|---|
| **Jay L. Bernstein, Esq.** | **David J. Goldschmidt, Esq.** |
| **Clifford Chance US LLP** | **Skadden, Arps, Slate, Meagher & Flom LLP** |
| **31 West 52nd Street** | **Four Times Square** |
| **New York, New York 10019** | **New York, New York 10036** |
| **Tel (212) 878 8000** | **Tel (212) 735-3000** |
| **Fax (212) 878 8375** | **Fax (212) 735-2000** |

J.A.52

Table of Contents

## MANAGEMENT'S DISCUSSION AND ANALYSIS OF
## FINANCIAL CONDITION AND RESULTS OF OPERATIONS

**Overview**

We are a real estate finance company that acquires, originates, manages, services and finances primarily SBC loans. SBC loans generally range in original principal amount of between $500,000 and $10 million and are used by small businesses to purchase real estate used in their operations or by investors seeking to acquire small multi-family, office, retail, mixed use or warehouse properties. We will also invest in SBC ABS, and other real estate-related investments. As of September 30, 2014, we held a diversified portfolio of assets with an aggregate unpaid principal balance, or UPB, of approximately $1.5 billion and a carrying value of approximately $1.2 billion. Our objective is to provide attractive risk-adjusted returns to our stockholders, primarily through dividends and secondarily through capital appreciation. In order to achieve this objective, we will continue to grow our investment portfolio by acquiring SBC loans and related investments and originating new SBC loans.

We are externally managed and advised by Waterfall Asset Management, LLC, an SEC registered investment adviser, whose investment professionals source and evaluate our loan acquisitions and advise on our new loan origination strategies. We have historically acquired performing, sub-performing, and non-performing SBC loans and intend to continue to acquire these loans as part of our business strategy. We consider a loan to be performing if the borrower is current on 100% of the contractual payments due for principal and interest during the most recent quarter or if the borrower's contractual status is current and the borrower has made at least 66% of contractual payments due for principal and interest in the most recent quarter. We consider a loan to be sub-performing or non-performing if the borrower does not meet the criteria of a performing loan. Our acquired performing loans represented approximately 59.8% of the carrying value and 56.4% of the UPB of our total loan portfolio as of September 30, 2014. We typically acquire sub-performing and non-performing loans at a discount to their UPB when we believe that resolution of the loans will provide attractive risk-adjusted returns. Our acquired sub-performing and non-performing loans represented in the aggregate 10.4% of the carrying value and 21.2% of the UPB of our total loan portfolio as of September 30, 2014.

Through ReadyCap Holdings, LLC, our wholly-owned origination subsidiary, including its subsidiaries, or ReadyCap, we have originated more than $411 million in conventional loans in 18 states since ReadyCap's inception in September 2012 and through December 2014. We originated $77.4 million of loans in the fourth quarter of 2014. Our originated loans, all of which are currently classified as performing loans, represented approximately 29.8% of the carrying value and 22.4% of the UPB of our total loan portfolio as of September 30, 2014. We will continue expanding our national origination platform by entering new attractive markets in the United States. We will also originate SBC loans for real estate guaranteed under the SBA Section 7(a) Program through ReadyCap using our SBLC license and recent personnel hires. In the future, we may also originate SBC loans for real estate under the SBA 504 loan program, pursuant to which the SBA guarantees subordinated, long-term financing. Additionally, ReadyCap has been approved by Freddie Mac as an originator and servicer for multi-family loan products under Freddie Mac's newly launched small balance loan program. ReadyCap employs 101 people focused on originating and servicing SBC loans, including SBA loan originations.

Through CBCA, our wholly-owned brokerage and advisory subsidiary, we provide sales, leasing, transaction management and facilities management services in support of owners of smaller commercial properties. CBCA employs 65 people dedicated to these activities on our behalf, and we expect CBCA will emerge as an important source of SBC loan originations referrals for us over time.

We have elected to be taxed as a REIT for U.S. federal income tax purposes commencing with our taxable year ended December 31, 2013. As a REIT, we generally are not be subject to U.S. federal income tax on our net taxable income to the extent that we annually distribute all of our net taxable



<u>Table of Contents</u>

income to stockholders and maintain our intended qualification as a REIT. We also intend to operate our business in a manner that will permit us to be excluded from registration as an investment company under the 1940 Act.

**Factors Impacting Our Operating Results**

We expect that our results of operations will be affected by a number of factors and will primarily depend on, among other things, the level of the interest income from our assets, the market value of our assets and the supply of, and demand for, SBC loans, MBS and other assets we may acquire in the future and the financing and other costs associated with our business. Our net investment income, which includes the amortization of purchase premiums and accretion of purchase discounts, varies primarily as a result of changes in market interest rates, the rate at which our distressed assets are liquidated and the prepayment speed of our performing assets. Interest rates and prepayment speeds vary according to the type of investment, conditions in the financial markets, competition and other factors, none of which can be predicted with any certainty. Our operating results may also be impacted by conditions in the financial markets, credit losses in excess of initial estimates or unanticipated credit events experienced by borrowers whose SBC loans are held directly by us or are included in our MBS. Our operating results will also be impacted by our available borrowing capacity.

***Changes in Market Interest Rates.***  We own and expect to acquire or originate FRMs and ARMs, with maturities ranging from five to 30 years. Our loans typically have amortization periods of 15 to 30 years or balloon payments due in five to ten years. ARM loans generally have a fixed interest rate for a period of five, seven or ten years and then an adjustable interest rate equal to the sum of an index rate, such as LIBOR, plus a margin, while FRM loans bear interest that is fixed for the term of the loan. As of September 30, 2014, approximately 63.7% of the loans of our portfolio were ARMs and 36.3% were FRMs, based on UPB. The weighted average margin on ARMs was approximately 4.3% and the weighted average coupon on FRMs was approximately 6.4% as of September 30, 2014. We utilize derivative financial and hedging instruments in an effort to hedge the interest rate risk associated with our ARMs.

With respect to our business operations, increases in interest rates, in general, may over time cause:

- the interest expense associated with our variable rate borrowings to increase;

- the value of fixed rate SBC loans, MBS and other real estate related assets to decline;

- coupons on variable rate SBC loans and MBS to reset to higher interest rates; and

- prepayments on SBC loans and MBS to slow.

Conversely, decreases in interest rates, in general, may over time cause:

- the interest expense associated with variable rate borrowings to decrease;

- the value of fixed rate SBC loans, MBS and other real estate related assets to increase;

- coupons on variable rate SBC loans and MBS to reset to lower interest rates; and

- prepayments on SBC loans and MBS to increase.

Additionally, non-performing SBC loans are not as interest rate sensitive as performing loans, as earnings on non-performing loans are often generated from restructuring the assets through loss mitigation strategies and opportunistically disposing of them. Because non-performing SBC loans are short-term assets, the discount rates used for valuation are based on short-term market interest rates, which may not move in tandem with long-term market interest rates. A rising rate environment often means an improving economy, which might have a positive impact on commercial property values, resulting in increased gains on the disposition of these assets. While rising rates could make it more

86

J.A. 54

Table of Contents

**SUTHERLAND ASSET MANAGEMENT CORPORATION**

**NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)**

**Note 7—Loans (Continued)**

*Loan characteristics*

The following table displays the geographic concentration of the Company's loans secured by real estate recorded on our consolidated balance sheets.

| Geographic Concentration (Current Principal Balance) | September 30, 2014 Held-for-investment | September 30, 2014 Held-for-sale, at fair value | December 31, 2013 Held-for-investment | December 31, 2013 Held-for-sale, at fair value |
|---|---|---|---|---|
| New York | 11.3% | 4.0% | 33.4% | 1.9% |
| Florida | 17.9 | 4.1 | 16.5 | 8.6 |
| California | 9.2 | 29.8 | 10.6 | 17.5 |
| New Jersey | 3.6 | 1.6 | 4.2 | — |
| Connecticut | 1.9 | — | 3.0 | — |
| Tennessee | 1.1 | — | 4.1 | — |
| Texas | 12.6 | 17.5 | 2.7 | 32.4 |
| Massachusetts | 1.7 | — | 2.7 | — |
| Georgia | 2.7 | 5.8 | 3.1 | 2.5 |
| Arizona | 4.9 | 6.1 | 2.7 | — |
| Illinois | 1.7 | 4.5 | 0.6 | 7.4 |
| North Carolina | 2.3 | 10.1 | 2.2 | 6.5 |
| Colorado | 2.4 | 0.3 | 0.7 | 0.9 |
| Virginia | 2.0 | 2.3 | 0.8 | — |
| Oregon | 2.1 | 4.9 | 2.0 | 7.4 |
| Washington | 2.0 | — | 1.2 | — |
| Ohio | 1.4 | — | 0.1 | — |
| Other | 19.2 | 9.0 | 9.4 | 14.9 |
| Total | 100.0% | 100.0% | 100.0% | 100.0% |

The following table displays the collateral type concentration of the Company's loans recorded on our consolidated balance sheets.

| Collateral Type (by Current Principal Balance) | September 30, 2014 Held-for-investment | September 30, 2014 Held-for-sale, at fair value | December 31, 2013 Held-for-investment | December 31, 2013 Held-for-sale, at fair value |
|---|---|---|---|---|
| Mixed use | 8.2% | 6.3% | 21.0% | 6.5% |
| Office | 10.9 | 17.9 | 15.4 | 15.6 |
| Multi-family | 7.7 | 37.2 | 13.7 | 43.2 |
| Industrial | 3.7 | 13.5 | 4.2 | 10.1 |
| Retail | 11.2 | 23.6 | 9.2 | 20.8 |
| Land | 0.3 | — | 7.4 | — |
| Hotel | 1.0 | — | 6.9 | — |
| Health care | 10.7 | — | 0.2 | — |
| Service provider | 18.7 | — | — | — |
| Deficiency judgment | 6.4 | — | — | — |
| Other | 21.2 | 1.5 | 22.0 | 3.8 |
| Total | 100.0% | 100.0% | 100.0% | 100.0% |

J. A 55

Table of Contents

# SUTHERLAND ASSET MANAGEMENT CORPORATION

## NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)

### Note 7—Loans (Continued)

The following table displays delinquency information on loans, held-for-investment as of September 30, 2014:

| Loan Balance | Number of Loans | Interest Rate | Maturity Date | Current Unpaid Principal Balance(a) | 30-89 Days Delinquent(a) | 90+ Days Delinquent(a) |
|---|---|---|---|---|---|---|
| **Fixed-rate:** | | | | | | |
| 0 - 500k | 473 | 0.00 - 24.00% | 10/15/08 - 02/01/39 | $ 74,651 | $ 8,558 | $ 26,870 |
| 500k-1mm | 55 | 3.25 - 9.50 | 10/18/04 - 05/01/38 | 37,834 | 2,874 | 12,873 |
| 1mm-1.5mm | 11 | 3.99 - 18.00 | 06/15/11 - 08/01/22 | 13,385 | 3,884 | 2,237 |
| 1.5mm-2mm | 12 | 3.25 - 7.56 | 06/15/13 - 11/01/37 | 21,128 | 1,795 | 8,708 |
| 2mm-2.5mm | 2 | 5.48 - 5.75 | 01/31/14 - 12/01/14 | 4,076 | — | 2,038 |
| >2.5mm | 11 | 3.38 - 12.00 | 09/14/13 - 09/10/21 | 80,707 | 3,500 | 15,616 |
| Total fixed-rate | 564 | | | $ 231,781 | $ 20,611 | $ 68,342 |
| **Adjustable rate:** | | | | | | |
| 0 - 500k | 3,856 | 0.00 - 10.00% | 04/27/04 - 03/01/41 | $ 395,325 | $ 12,970 | $ 75,077 |
| 500k-1mm | 189 | 2.66 - 8.75 | 09/19/09 - 03/01/47 | 132,564 | 3,911 | 10,563 |
| 1mm-1.5mm | 68 | 3.25 - 8.21 | 06/29/09 - 05/01/39 | 81,246 | 1,045 | 6,895 |
| 1.5mm-2mm | 48 | 2.62 - 7.38 | 07/28/09 - 03/01/38 | 84,052 | 3,483 | 8,878 |
| 2mm-2.5mm | 7 | 4.50 - 6.00 | 01/01/15 - 04/15/39 | 15,474 | — | — |
| > 2.5mm | 24 | 1.49 - 7.25 | 06/30/09 - 11/16/37 | 118,961 | 5,812 | 63,205 |
| Total adjustable rate | 4,192 | | | $ 827,622 | $ 27,221 | $ 164,618 |

(a)    In thousands

The following table displays delinquency information on mortgage loans, held-for-sale, at fair value as of September 30, 2014:

| Loan Balance | Number of Loans | Interest Rate | Maturity Date | Current Unpaid Principal Balance(a) | 30-89 Days Delinquent(a) | 90+ Days Delinquent(a) |
|---|---|---|---|---|---|---|
| **Fixed-rate:** | | | | | | |
| 0 - 500k | 2 | 5.33 - 6.30% | 12/01/18 - 09/01/24 | $ 930 | $ — | $ — |
| 500k-1mm | 28 | 5.15 - 6.68 | 12/01/18 - 10/01/24 | 22,746 | — | — |
| 1mm-1.5mm | 12 | 5.39 - 8.74 | 04/01/15 - 08/01/24 | 15,283 | — | — |
| 1.5mm-2mm | 14 | 5.21 - 8.33 | 01/01/17 - 10/01/24 | 25,163 | — | — |
| 2mm-2.5mm | 10 | 5.07 - 7.84 | 12/01/15 - 10/01/24 | 22,761 | — | — |
| > 2.5mm | 32 | 5.00 - 10.00 | 08/01/15 - 10/01/24 | 161,428 | — | — |
| Total fixed-rate | 98 | | | $ 248,311 | $ — | $ — |
| **Adjustable rate:** | | | | | | |
| 0 - 500k | 6 | 5.48 - 6.98% | 04/01/43 - 06/01/43 | $ 2,437 | $ — | $ — |
| 500k-1mm | 4 | 5.48 - 6.46 | 08/01/23 - 06/01/43 | 2,220 | — | — |
| 1mm-1.5mm | 1 | 5.80 | 10/01/23 - 10/01/23 | 1,186 | — | — |
| 1.5mm-2mm | 4 | 5.25 - 5.66 | 07/01/23 - 11/01/23 | 6,501 | — | — |
| 2mm-2.5mm | 1 | 6.98 | 06/01/43 - 06/01/43 | 2,008 | — | — |
| > 2.5mm | 3 | 5.26 - 6.49 | 12/01/23 - 06/01/38 | 10,798 | — | — |
| Total adjustable rate | 19 | | | $ 25,150 | $ — | $ — |

(a)    In thousands

F-38

J.A 56

# SUTHERLAND ASSET MANAGEMENT CORPORATION

## NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)

### Note 7—Loans (Continued)

The following table displays delinquency information on loans, held-for-investment as of December 31, 2013:

| Loan Balance | Number of Loans | Interest Rate | Maturity Date | Current Unpaid Principal Balance(a) | 30-89 Days Delinquent(a) | 90+ Days Delinquent(a) |
|---|---|---|---|---|---|---|
| Fixed-rate: | | | | | | |
| 0 - 500k | 258 | 0.00 - 11.8% | 05/01/10 - 02/01/39 | $ 50,209 | $ 4,106 | $ 23,862 |
| 500k - 1mm | 43 | 3.25 - 9.50 | 10/01/07 - 05/01/38 | 28,723 | — | 15,486 |
| 1mm - 1.5mm | 10 | 3.25 - 7.95 | 02/08/12 - 08/01/22 | 12,570 | 1,147 | 4,888 |
| 1.5mm - 2mm | 9 | 5.00 - 8.50 | 04/03/14 - 11/01/37 | 15,890 | — | 5,098 |
| 2mm - 2.5mm | 3 | 4.00 - 5.48 | 05/17/13 - 01/31/14 | 6,617 | — | 2,038 |
| > 2.5mm | 5 | 3.25 - 12.0 | 02/08/12 - 07/26/16 | 19,723 | 6,414 | 3,500 |
| Total fixed-rate | 328 | | | $ 133,732 | $ 11,667 | $ 54,872 |
| Adjustable rate: | | | | | | |
| 0 - 500k | 252 | 2.00 - 9.99% | 09/11/10 - 03/01/41 | $ 72,378 | 2,284 | 24,479 |
| 500k - 1mm | 78 | 3.25 - 8.75 | 10/29/09 - 03/01/47 | 51,411 | 2,821 | 8,162 |
| 1mm - 1.5mm | 21 | 3.17 - 8.21 | 12/01/12 - 12/01/38 | 25,404 | — | 2,243 |
| 1.5mm - 2mm | 7 | 3.25 - 7.38 | 01/06/13 - 03/01/38 | 12,478 | — | 2,000 |
| 2mm - 2.5mm | 6 | 4.25 - 5.97 | 12/31/13 - 11/01/34 | 13,205 | — | 2,333 |
| > 2.5mm | 9 | 3.25 - 12.0 | 08/01/09 - 11/01/34 | 42,339 | — | 21,629 |
| Total adjustable rate | 373 | | | $ 217,215 | $ 5,105 | $ 60,846 |

(a)    In thousands

The following table displays delinquency information on mortgage loans, held-for-sale, at fair value as of December 31, 2013:

| Loan Balance | Number of Loans | Interest Rate | Maturity Date | Current Unpaid Principal Balance(a) | 30-89 Days Delinquent(a) | 90+ Days Delinquent(a) |
|---|---|---|---|---|---|---|
| Fixed-rate: | | | | | | |
| 0 - 500k | 1 | 5.33% | 12/01/18 | $ 454 | $ — | $ — |
| 500k - 1mm | 7 | 5.33 - 6.62 | 12/01/18 - 01/01/24 | 5,936 | — | — |
| 1mm - 1.5mm | 5 | 5.93 - 8.74 | 04/01/15 - 11/01/15 | 6,414 | — | — |
| 1.5mm - 2mm | 4 | 5.72 - 8.20 | 01/01/14 - 10/01/23 | 6,913 | — | — |
| 2mm - 2.5mm | 3 | 5.79 - 7.84 | 11/01/15 - 10/01/23 | 7,009 | — | — |
| > 2.5mm | 10 | 5.48 - 8.00 | 04/01/15 - 07/01/22 | 51,453 | — | — |
| Total fixed-rate | 30 | | | $ 78,179 | $ — | $ — |
| Adjustable rate: | | | | | | |
| 0 - 500k | 6 | 5.48 - 6.98% | 04/01/43 - 06/01/43 | $ 2,462 | $ — | $ — |
| 500k - 1mm | 4 | 5.48 - 6.46 | 08/01/23 - 06/01/43 | 2,243 | — | — |
| 1mm - 1.5mm | 1 | 5.80 | 10/01/23 | 1,198 | — | — |
| 1.5mm - 2mm | 4 | 5.25 - 5.66 | 07/01/23 - 11/01/23 | 6,576 | — | — |
| 2mm - 2.5mm | 1 | 6.98 | 06/01/43 | 2,022 | — | — |
| > 2.5mm | 10 | 5.26 - 6.49 | 12/01/23 - 06/01/38 | 10,937 | — | — |
| Total adjustable rate | 26 | | | $ 25,438 | $ — | $ — |

(a)    In thousands

J.A.57

Table of Contents

### SUTHERLAND ASSET MANAGEMENT CORPORATION

### NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)

#### Note 21—Use of Special Purpose Entities (Continued)

*Securitization transactions*

In 2011, the Company engaged in three securitization transactions. Prior to October 1, 2013 the Operating Partnership was exempt from consolidating the securitizations under ASC 946: *Financial Services—Investment Companies*. Upon the change to operating company accounting, under ASC 810: *Consolidation*, the Operating Partnership is required to consolidate, as a VIE, the SPE/trust that was created to facilitate the transaction and to which the underlying mortgage loans in connection with the securitization were transferred. (See Note 2 for a discussion of our accounting policies applied to the consolidation of the VIE and transfer of the financial assets in connection with the securitization.).

The mortgage loans in the securitization trust are comprised of performing, sub-performing and non-performing SBC loans.

On a quarterly basis, subsequent to October 1, 2013, the Company completes an analysis to determine whether the VIE should be consolidated. As part of this analysis, the Company's involvement in the creation of the VIE, including the design and purpose of the VIE and whether such involvement reflects a controlling financial interest that results in the Company being deemed the primary beneficiary of the VIE is considered. In determining whether the Company would be considered the primary beneficiary, the following factors are considered: (i) whether the Company has both the power to direct the activities that most significantly impact the economic performance of the VIE; and (ii) whether the Company has the right to receive benefits or the obligation absorb losses of the entity that could be potentially significant to the VIE. Based on the Company's evaluation of these factors, including the Company's involvement in the design of the VIE, it was determined that the Company is required to consolidate the VIE created to facilitate the securitization transaction effective October 1, 2013.

For financial statement reporting purposes, since the underlying trust is consolidated, the securitization is effectively viewed as a financing of the mortgage loans that were securitized to enable the senior security to be created and sold to a third-party investor. As such, the senior security is presented on the consolidated balance sheet as securitized debt obligations of consolidated VIEs. The third-party beneficial interest holders in the VIE have no recourse against the Company, except that the Company has an obligation to repurchase assets from the VIE in the event that certain representations and warranties in relation to the mortgage loans sold to the VIE are breached. In the absence of such a breach, the Company has no obligation to provide any other explicit or implicit support to any VIE. As previously stated, the Company is not obligated to provide, nor has the Company provided, any financial support to these consolidated securitization vehicles.

As of September 30, 2014, the carrying value of the Company's securitized assets was $70.4 million and $3.1 million, and is presented on the consolidated balance sheet as loans, held-for-investment and real estate acquired in settlement of loans, respectively. As of December 31, 2013, the carrying value of the Company's securitized assets was $88.4 million and $5.2 million, and is presented on the consolidated balance sheet as loans, held-for-investment and real estate acquired in settlement of loans, respectively.

The securitization trust receives principal and interest on the underlying mortgage loans and distributes those payments to the certificate holders. The assets and other instruments held by the securitization trust are restricted in that they can only be used to fulfill the obligations of the

F-58

J.A 58

Appeal: 16-1325    Doc: 22-1    Filed: 05/17/2016    Pg: 63 of 119
5/16/2016
www.sec.gov/Archives/edgar/data/1456906/000104746915000040/a2222633zs-11a.htm

Table of Contents

# SUTHERLAND ASSET MANAGEMENT CORPORATION

## NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)

### Note 21—Use of Special Purpose Entities (Continued)

securitization trust. The risks associated with the Company's involvement with the VIE is limited to the risks and rights as a certificate holder of the securities retained by the Company.

The activities of the trust are substantially set forth in the securitization transaction documents, primarily the mortgage loan trust agreement, the trust agreement, the indenture and the securitization servicing agreement (collectively, the "Securitization Agreements"). Neither the trust nor any other entity may sell or replace any assets of the trust except in connection with: (i) certain loan defects or breaches of certain representations and warranties which have a material adverse effect on the value of the related assets; (ii) loan defaults; (iii) certain trust events of default or (iv) an optional termination of the trust, each as specifically permitted under the Securitization Agreements.

### *Securitized debt*

The consolidation of the securitization transactions includes the sales of senior securities to third parties which are shown as securitized debt obligations securitized debt obligations of consolidated VIEs on the consolidated balance sheets. The following table presents additional information on the Company's securitized debt obligations:

| (In Thousands) | September 30, 2014 | | December 31, 2013 | |
| | Current Principal Balance | Weighted Average Interest Rate | Current Principal Balance | Weighted Average Interest Rate |
| --- | --- | --- | --- | --- |
| Waterfall Victoria Mortgage Trust 2011-SBC1 | $ 533 | 7.0% | $ 1,195 | 7.0% |
| Waterfall Victoria Mortgage Trust 2011-SBC2 | 37,846 | 5.2 | 46,780 | 5.1 |
| Waterfall Victoria Mortgage Trust 2011-SBC3 | — | — | 14,678 | 6.5 |
| Total | $ 38,379 | 5.2% | $ 62,653 | 5.5% |

Repayment of our securitized debt will be dependent upon the cash flows generated by the mortgage loans in the securitization trust that collateralize such debt. The actual cash flows from the securitized mortgage loans are comprised of coupon interest, scheduled principal payments, prepayments and liquidations of the underlying mortgage loans. The actual term of the securitized debt may differ significantly from our estimate given that actual interest collections, mortgage prepayments and/or losses on liquidation of mortgages may differ significantly from those expected.

Costs incurred in connection with the securitization transactions are capitalized and amortized over the anticipated life of the securitized debt.

J.A.59

Table of Contents

### SUTHERLAND ASSET MANAGEMENT CORPORATION

### NOTES TO UNAUDITED CONSOLIDATED FINANCIAL STATEMENTS (Continued)

**Note 21—Use of Special Purpose Entities (Continued)**

*VIE impact on consolidated financial statements*

The following table reflects the assets and liabilities recorded on the consolidated balance sheets:

| (In Thousands) | September 30, 2014 | December 31, 2013 |
|---|---|---|
| Assets: | | |
| Loans, held-for-investment | $ 70,351 | $ 88,393 |
| Real estate acquired in settlement of loans | 3,091 | 5,232 |
| Due from servicers | 2,014 | 1,826 |
| Total assets | $ 75,456 | $ 95,451 |
| Liabilities: | | |
| Securitized debt obligations of consolidated VIEs | $ 37,973 | $ 55,749 |
| Total liabilities | $ 37,973 | $ 55,749 |

The following table reflects the income and expense amounts recorded on our consolidated statements of income related to our consolidated VIE's for the periods the Company operated under operating company accounting.

| (In Thousands) | Three Months Ended September 30, 2014 | Nine Months Ended September 30, 2014 |
|---|---|---|
| Income | | |
| Interest income, loans, held-for-investment | $ 1,876 | $ 5,372 |
| Realized gain (loss) on loans, held-for-investment | (275) | 1,042 |
| Realized gain on securitized debt obligations | — | 613 |
| Total income | $ 1,601 | $ 7,027 |
| Expense | | |
| Interest expense securitized debt obligations of consolidated VIEs | $ (892) | $ (2,020) |
| Impairment expense | (1,469) | (3,302) |
| Loan servicing expense | (421) | (898) |
| Realized gain (loss), real estate acquired in settlement of loans | 176 | (781) |
| Total expense | $ (2,606) | $ (7,001) |
| Net income | $ (1,005) | $ 26 |

F-60

J.A.60

Entity Information

# NYS Department of State

## Division of Corporations

## Entity Information

The information contained in this database is current through November 16, 2015.

Selected Entity Name: WATERFALL VICTORIA MASTER FUND, LTD.

Selected Entity Status Information

| | |
|---|---|
| **Current Entity Name:** | WATERFALL VICTORIA MASTER FUND, LTD. |
| **DOS ID #:** | 4142467 |
| **Initial DOS Filing Date:** | SEPTEMBER 15, 2011 |
| **County:** | NEW YORK |
| **Jurisdiction:** | CAYMAN ISLANDS |
| **Entity Type:** | FOREIGN BUSINESS CORPORATION |
| **Current Entity Status:** | ACTIVE |

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Chief Executive Officer**
KENNETH NICK
1140 AVENUE OF THE AMERICAS
7TH FLOOR
NEW YORK, NEW YORK, 10036

**Principal Executive Office**
WATERFALL VICTORIA MASTER FUND, LTD.
1140 AVENUE OF THE AMERICAS
7TH FLOOR
NEW YORK, NEW YORK, 10036

**Registered Agent**        J. A. 61

11/17/2015                                    Entity Information

CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

This office does not record information regarding
the names and addresses of officers, shareholders or
directors of nonprofessional corporations except the
chief executive officer, if provided, which would be
listed above. Professional corporations must include
the name(s) and address(es) of the initial officers,
directors, and shareholders in the initial certificate
of incorporation, however this information is not
recorded and only available by viewing the
certificate.

## *Stock Information

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| | No Information Available | |

*Stock information is applicable to domestic business corporations.

## Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| SEP 15, 2011 | Actual | WATERFALL VICTORIA MASTER FUND, LTD. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New
York State. The entity must use the fictitious name when conducting its activities or business in New
York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results   New Search

Services/Programs  |  Privacy Policy  |  Accessibility Policy  |  Disclaimer  |  Return to DOS
Homepage  |  Contact Us

J. A. 62

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
Baltimore Division

IN RE:                                              Case No. 09-12469-JFS

ARLENE A. SMITH-SCOTT
          Debtor                                    Chapter 11

_____

CAPITAL ONE BANK
          Movant

vs.
          Debtor/Respondent
and

ARLENE A. SMITH-SCOTT
          Debtor/Respondent

_____

<u>**NOTICE OF APPEARANCE AND REQUEST FOR NOTICES PURSUANT TO
BANKRUPTCY RULE 2002**</u>

TO THE CLERK OF THE COURT AND TO ALL PARTIES:

PLEASE TAKE NOTICE that, pursuant to Fed. R. Bankr. P. 2002, that Christina
Williamson, Esquire, and the law offices of Bierman, Geesing, Ward & Wood, LLC hereby enter
their appearance on behalf of Capital One Bank Successor by Merger to Greenpoint Mortgage
Funding Inc., in the above-captioned case and request that notices of all papers, including, but
not limited to, orders, reports, pleadings, motions, applications, or petitions, requests, disclosure
statements, answering and reply papers send notices of hearings or other proceedings, whether
transmitted by mail, delivery, telephone, telegraph, telex or otherwise relating to any issue which
may be raised in the above-captioned case be provided to:

> Christina Williamson
> Bierman, Geesing, Ward & Wood, LLC
> 4520 East West Highway, Suite 200
> Bethesda, MD 20814
> (301) 961-6555
> bankruptcy@bgw-llc.com

BGWW#: 62652

J.A.63

Case 1:09-cv-02029   Doc 12-573   Filed 03/15/15   Page 2 of 2

Dated: March 16, 2011

Respectfully Submitted,
Bierman, Geesing, Ward & Wood, LLC

    /s/ Christina Williamson
Christina Williamson, MD Fed. Bar No. 16813
Bierman, Geesing, Ward & Wood, LLC
4520 East West Highway, Suite 200
Bethesda, MD 20814
(301) 961-6555
(301) 961-6491 (facsimile)
bankruptcy@bgw-llc.com
*Attorney for the Movant*

## CERTIFICATION

I HEREBY CERTIFY that on the 16th day of March, 2011, the following person(s) were served a copy of the foregoing NOTICE OF APPEARANCE electronically via the CM/ECF system or by first class mail postage prepaid to:

Marc R. Kivitz, Esq.
201 N. Charles Street, Suite 1330
Baltimore, MD  21201

Arlene A. Smith-Scott
10 Stanley Drive
Catonsville, MD  21228

Arlene A. Smith-Scott
1359 Fishing Creek Road
Annapolis, MD  21403

    /s/ Christina Williamson
Christina Williamson

J.A. 64

Exhibit

# LEHMAN BROTHERS | Small Business Finance

January 29, 2008



Arlene Smith-Scott
1359 Fishing Creek Rd
Annapolis, MD 21403

## Property Tax Statement for Calendar Year 2007

Lehman Brothers Small Business Finance
Federal I.D. No. 510073416

Loan Number: ░░░░░░░░░
You're Tax ID Number: ░░░░░░░░░

Our records indicate Lehman Brothers disbursed funds totaling $ ░░░░░░░, from your escrow
account during the calendar year 2007, for payment of property taxes.

Should you should have questions or concerns in regard to this notice, please contact our Customer
Service Department at (800) 370-6357, Monday through Friday, 6:00 AM to 6:00PM, Pacific Time.

Sincerely,

Lehman Brothers, SBF
Customer Service Department







J.A. 65

<u>**Exhibit "A"**</u>

Deed of Trust Note with Allonge and Endorsement
Reflecting Assignments

J. A. 66

7281 ✓

# DEED OF TRUST NOTE

$967,500.00

February 22, 2007

FOR VALUE RECEIVED, the undersigned, ARLENE A. SMITH-SCOTT, (the "Borrower") promises to pay to the order of GREENPOINT MORTGAGE FUNDING, INC., a New York corporation, its successors and assigns, (the "Lender"), at P.O. Box 908, Newark, New Jersey 07101-0908, Attn: Payment Processing, or at such other place or places as the Lender may from time to time designate in writing, without offset, in lawful money of the United States of America, the principal sum of NINE HUNDRED SIXTY-SEVEN THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($967,500.00) together with interest thereon at the rate hereinafter provided from the date of this Note (the "Closing Date") to and including the date this Note is paid, said principal and interest being payable as provided below.

Interest on the outstanding balance of this Note shall accrue at a fixed annual rate equal to seven and five-eighths percent (7.625%) from the Closing Date until March 1, 2012 ("Initial Change Date"). On the Initial Change Date, and on the date every sixty (60) months thereafter (each hereinafter, a "Rate Change Date"), the interest rate on this Note shall adjust to the annual rate determined as follows: The Lender will calculate the new interest rate by adding three percentage points (3.000%) to the Index Rate (hereafter defined), and then rounding the sum upwards to the nearest one-eighth of one percentage point (1/8 of 1%); provided, in no event shall the new interest rate ever (i) increase or decrease (a) on the Initial Change Date by more than five percentage points (5.00%) from the rate of interest in effect immediately prior to such Initial Change Date, and (b) on any subsequent Rate Change Date by more than one percentage points (1.00%) from the rate of interest in effect immediately prior to such Rate Change Date or (ii) increase to a rate higher than thirteen and five-eighths percentage points (13.625%) or lower than three percentage points (3.000%). The Index Rate shall be equal to the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published by The Wall Street Journal, said rate to be determined on the basis of the most recent Index Rate available as of the date forty-five (45) days prior to the applicable Rate Change Date. In the event such index is not available, the Lender will choose a new index that is based upon comparable information, and notify the Borrower of this choice.

This Note shall be payable in installments as follows:
   (i) A single installment of all interest to accrue hereon from the Closing Date to and including the last day of the month during which the Closing Date occurs shall be due and payable on the Closing Date.
   (ii) 479 consecutive monthly installments of combined principal and interest shall be due and payable commencing on the first (1st) day of April, 2007, and thereafter on the same day of each and every succeeding month. The amount of each of the initial sixty (60) monthly installments of principal and interest is SIX THOUSAND FOUR HUNDRED FIFTY-SIX AND 39/100 DOLLARS ($6,456.39). The monthly payment may change on each Rate Change Date to fully amortize the outstanding balance of this Note at the adjusted interest rate that comes into effect on the Rate Change Date over the remaining term of this Note.
   (iii) A final payment of the entire unpaid principal balance of this Note and all accrued and unpaid interest thereon and all other charges due hereunder shall be due and payable on March 1, 2047.

For purposes of computing interest on the debt evidenced hereby, interest shall be calculated on the basis of a three hundred sixty (360) day calendar year based on the actual number of days elapsed. Payments made on account hereof shall be applied first to the payment of late fees and costs, then to the payment of accrued and unpaid interest, and the remainder shall be credited to principal.

This Note is secured by that certain Deed of Trust and Security Agreement given by Borrower to

1

T.A.67

EXHIBIT

A

Lizabeth Lee Walther and Bruce W. Henry, Trustees, for the use and benefit of Lender, of even date herewith and intended to be recorded among the land records of Baltimore County, Maryland ("Deed of Trust"), conveying to the said Trustees all of such grantor's right, title and interest in and to property known as 10 Stanley Drive, Catonsville, Maryland 21228, and more particularly described therein ("Property"). The term "Loan Documents" refers collectively to this Note, the Deed of Trust, and any and all other documents executed in connection with this Note or now or hereafter executed by Borrower and/or others and by or in favor of Lender, which wholly or partially secure or guarantee payment of this Note or pertains to indebtedness evidenced by this Note. The term "Debt" means, collectively, (i) the entire outstanding principal balance hereof, together with all accrued and unpaid interest thereon, (ii) all amounts payable to Lender under or in connection with the Loan Documents, and (iii) any and all other liabilities and obligations of Borrower under this Note or the other Loan Documents.

The failure to make when due any installment or other payment described herein (whether of principal, interest, late charges or other authorized charges due under this Note) which continues for a period of thirty (30) days after the date when the same is due or the occurrence of any default under the terms of the Deed of Trust which continues for the duration of any applicable grace period therein contained, shall constitute an event of default under this Note (hereinafter an "Event of Default"). Upon the occurrence of an Event of Default, the entire Debt shall, at the option of the Lender, become immediately due and payable without notice or demand, and Lender may foreclose all liens and security interests securing payment hereof, pursue any and all rights, remedies and recourses available to Lender or pursue any combination of the foregoing. Acceleration of maturity, once claimed by the Lender, may at its option be rescinded by an instrument in writing to that effect; however, the tender and acceptance of a partial payment or partial performance shall not, by itself, affect or rescind such acceleration of maturity. Failure to exercise any of the options aforementioned or the failure to exercise any other option herein or in the Deed of Trust provided for shall not constitute a waiver of the right to exercise the same in the event of any subsequent default.

Upon an Event of Default, the Lender may, in the Lender's sole discretion and without notice or demand, in addition to any other remedy the Lender may exercise, raise the rate of interest accruing on the Debt by five (5) percentage points above the interest rate otherwise applicable hereunder (the "Default Rate"); provided, however, in no event shall the Default Rate exceed the maximum interest rate which may be collected from Borrower under applicable law. If judgment is entered against the Borrower on this Note, the amount of such judgment entered (which may include principal, interest, and reasonable fees and costs as set forth in this Note or the other Loan Documents) shall bear interest at such Default Rate as of the date of entry of judgment. Further, to the extent permitted by law, upon an Event of Default, the Lender shall have the right, in addition to any other remedy the Lender may exercise, to set off the Debt or other amounts due under any other obligation of the Borrower to the Lender against any and all accounts, whether checking or savings or otherwise, credits, money, stocks, bonds or other security or property of any nature whatsoever on deposit with, held by, owed by, or in the possession of, the Lender or any of its affiliates to the credit of or for the account of the Borrower, without notice to or consent by the Borrower.

In the event any installment or other payment due under this Note or the other Loan Documents is paid more than ten (10) days after the date when the same is due, then the Lender shall be entitled to collect a "late charge" in an amount equal to one-twentieth (1/20th) of such amount.

In the event it shall become necessary to employ counsel to collect the Debt or to protect the security hereof, the Borrower agrees to pay reasonable attorney's fees of up to fifteen (15) percent of the unpaid balance of this Note, whether suit be brought or not, and all other costs and expenses reasonably connected with collection, the protection of the security, the defense of any counterclaim, the enforcement (including

2

without limitation, as a part of any proceeding brought under the Bankruptcy Reform Act of 1978, as amended) of any remedies herein provided for, or provided for in the Deed of Trust given to secure this Note.

This Note may be prepaid in whole or in part pursuant to the following provisions:

(a)    A prepayment premium shall be payable in connection with any prepayment made under this Note as provided below:

(i)    Borrower may voluntarily prepay all of the unpaid principal balance of this Note on a Business Day designated as the date for such prepayment in a written notice from Borrower to Lender given at least 30 days prior to the date of such prepayment. Such prepayment shall be made by paying (A) the amount of principal being prepaid, (B) all accrued interest, (C) all other sums due Lender at the time of such prepayment, and (D) the prepayment premium calculated pursuant to subpart (f) of this paragraph. As used herein, the term "Business Day" shall mean any day other than a Saturday, Sunday or any other day on which Lender is not open for business. For all purposes including the accrual of interest, but excluding the determination of the prepayment date under subpart (f) of this paragraph, any prepayment received by Lender on any day other than the last calendar day of the month shall be deemed to have been received on the last calendar day of such month.

(ii)    Borrower may voluntarily prepay less than all of the unpaid principal balance of this Note (a "Partial Prepayment") at any time. Upon delivery of the Partial Prepayment, a prepayment premium calculated pursuant to subpart (f) of this paragraph, based on the amount being prepaid, shall be due and payable to Lender upon demand.

(iii)    Upon Lender's exercise of any right of acceleration under this Note, Borrower shall pay to Lender, in addition to the entire unpaid principal balance of this Note outstanding at the time of the acceleration, (A) all accrued interest, (B) all other sums due Lender, and (C) the prepayment premium calculated pursuant to subpart (f) of this paragraph, to the extent such prepayment premium does not exceed the maximum rate permitted by applicable law.

(iv)    Any application by Lender of any proceeds of collateral or other security to the repayment of any portion of the unpaid principal balance of this Note prior to the stated maturity date of this Note and in the absence of acceleration shall be deemed to be a partial prepayment by Borrower, requiring the payment to Lender by Borrower of a prepayment premium. The amount of any such partial prepayment shall be computed so as to provide to Lender a prepayment premium computed pursuant to subpart (f) of this paragraph without Borrower having to pay out-of-pocket any additional amounts.

(b)    Notwithstanding the provisions of subpart (a) immediately above, no prepayment premium shall be payable with respect to (A) any prepayment made after the expiration of the Prepayment Premium Period (as defined hereinbelow in subpart (f) of this paragraph), or (B) any prepayment occurring as a result of the application of any insurance proceeds or condemnation award under the Deed of Trust, or (C) a Partial Prepayment in an amount that, when aggregated with other prepayments made during the preceding twelve (12) months, is not greater than ten percent (10%) of the original principal balance of this Note.

(c)    Any permitted or required prepayment of less than the unpaid principal balance of this Note shall not extend or postpone the due date of any subsequent monthly installments or change the amount of such installments, unless Lender agrees otherwise in writing.

(d)    Borrower recognizes that any prepayment of the unpaid principal balance of this Note, whether voluntary or involuntary or resulting from a default by Borrower, will result in Lender incurring loss, including reinvestment loss, additional expense and frustration or impairment of Lender's ability to meet its commitments to third parties. Borrower agrees to pay to Lender upon demand damages for the detriment caused by any prepayment, and agrees that it is extremely difficult and impractical to ascertain the extent of such damages. Borrower therefore acknowledges and agrees that the formula for calculating prepayment premiums set forth hereinbelow at subpart (f) of this paragraph represents a reasonable estimate of the damages Lender will incur because of a prepayment.

3

J.A.69

(e)    Borrower further acknowledges that the prepayment premium provisions of this Note are a material part of the consideration for the Loan, and acknowledges that the terms of this Note are in other respects more favorable to Borrower as a result of the Borrower's voluntary agreement to the prepayment premium provisions.

(f)    Any prepayment premium payable under this paragraph shall be computed as follows:

(i)    If the prepayment is made during the first five (5) Loan Years (the "Prepayment Premium Period"), the prepayment premium shall be as follows:

(A)    If prepayment is made during the first Loan Year, the prepayment premium shall be five percent (5%) of the principal amount being prepaid;

(B)    If prepayment is made during the second Loan Year, the prepayment premium shall be four percent (4%) of the principal amount being prepaid;

(C)    If prepayment is made during the third Loan Year, the prepayment premium shall be three percent (3%) of the principal amount being prepaid;

(D)    If prepayment is made during the fourth Loan Year, the prepayment premium shall be two percent (2%) of the principal amount being prepaid;

(E)    If prepayment is made during the fifth Loan Year, the prepayment premium shall be equal to one percent (1%) of the principal amount being prepaid.

(ii)    If the prepayment is made after the expiration of the Prepayment Premium Period, there shall be no prepayment premium due.

(iii)    As used herein, the term "Loan Year" shall mean the consecutive full twelve (12) month period commencing on the first calendar month immediately following the Closing Date hereof and each consecutive full twelve (12) month period thereafter commencing on such anniversary thereof, except that the first Loan Year shall also include the partial month in which the Closing Date occurs, and except that the first Loan Year shall commence on the Closing Date if such date is the first day of a calendar month.

The Borrower and any endorsers, guarantors and sureties jointly and severally waive presentment, protest and demand, notice of protest, notice of dishonor, demand and dishonor, and any and all lack of diligence or delays in the collection or enforcement hereof and expressly agree that this Note, or any payment hereunder, may be extended from time to time without in any way affecting the liability of the Borrower or any endorser, guarantor or surety hereof.

In the event any provision of this Note (or any part of any provision) is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provision (or remaining part of the effected provision) of this Note, but this Note shall be as if such invalid, illegal or unenforceable provision (or part thereof) had not been contained in this Note, but only to the extent it is invalid, illegal or unenforceable.

All notices or other communications required or permitted to be given pursuant hereto shall be given in the manner and be effective as specified in the Deed of Trust, directed to the parties at their respective addresses as provided therein.

So long as the lien of the Deed of Trust securing the payment of the Debt remains unreleased of record, the Borrower agrees, in addition to any financial reporting required in the Deed of Trust, to provide the Lender upon request, with an updated credit report and/or appraisal of the Property, acceptable to the Lender in its sole discretion.

It is understood and agreed that in the event a default exists under any other loan held by the Lender in which the Borrower is a borrower thereunder, and such default is not cured within any applicable grace

period, then the Lender may, at its option, declare the entire Debt immediately due and payable without notice or demand.

It is the intention of the Borrower and the Lender to conform strictly to applicable usury laws. Accordingly, if the transactions contemplated hereby would be usurious under applicable law then, in that event, notwithstanding anything to the contrary in any agreement entered into in connection with or as security for this Note, it is agreed as follows: (i) the aggregate of all consideration which constitutes interest under applicable law that is contracted for, charged or received under this Note or under any of the other aforesaid agreements or otherwise in connection with this Note shall under no circumstances exceed the maximum amount of interest allowed by applicable law, and any excess shall be credited, first, on fees and costs, if any, due on this Note and, secondly, on the principal balance due on this Note by the Lender (or, if this Note shall have been paid in full, refunded to the Borrower) and (ii) in the event that maturity of this Note is accelerated by reason of an election by the Lender resulting from any default hereunder or otherwise, or in the event of any required or permitted prepayment, then such consideration that constitutes interest may never include more than the maximum amount allowed by applicable law, and excess interest, if any, provided for in this Note or otherwise shall be canceled automatically as of the date of such acceleration or prepayment and, if therefore prepaid, shall be credited, first, on fees and costs, if any, due on this Note and, secondly, on the principal balance due on this Note (or if this Note shall have been paid in full, refunded to the Borrower).

The Borrower represents and warrants that the loan evidenced by this Note was made and transacted solely for the purpose of carrying on or acquiring a business or commercial enterprise.

As used in this Note, the singular shall include the plural and the plural shall include the singular, where the context shall so require.

This Note shall be the joint and several obligations of the makers hereof (if more than one) and shall apply to and bind them and each of them and their respective heirs, successors and personal representatives. The joint and several obligations of each of the makers shall be absolute and unconditional and shall remain in full force and effect until the Debt is paid in full and, until such payment is made, shall not be discharged, affected, modified or impaired with respect to any maker upon the happening from time to time of any event including, without limitation, the invalidity or unenforceability of the obligations hereunder with respect to any of the other makers or any matter which would result in the release or discharge of any of the other makers.

In the event that the unpaid principal amount hereof at any time, for any reason, exceeds the maximum amount hereinabove specified, the Borrower covenants and agrees to pay the excess principal amount forthwith upon demand; such excess principal amount shall in all respects be deemed to be included among the advances made pursuant to the other terms of this Note and shall bear interest at the rate or rates hereinabove stated.

The Borrower agrees to pay on demand any expenditure made by the Lender in accordance with the Deed of Trust, including, but not limited to, the payment of taxes, special assessments, insurance premiums, and the cost of maintenance and preservation of the property described in the Deed of Trust. At the option of the Lender, all such expenditures may be added to the unpaid principal balance of this Note and become a part of and on a parity with the principal indebtedness secured by the Deed of Trust and other instruments executed herewith, and shall accrue interest at a rate as may be payable from time to time on the original principal indebtedness or may be declared immediately due and payable.

5

The Borrower agrees to reimburse the Lender for any regulatory costs or expenses incurred by the Lender in connection with its obligations under this Note, including, without limitation, costs arising out of the Lender's compliance with capital adequacy guidelines, reserve requirements and deposit insurance regulations, and the Borrower shall render to the Borrower a statement of the costs incurred, setting forth the method of calculation, and the Borrower shall pay such increased costs to the Lender within thirty (30) days after the Borrower has received such statement.

BORROWER HEREBY IRREVOCABLY AUTHORIZES ANY ATTORNEY-AT-LAW DESIGNATED BY THE LENDER TO CONFESS JUDGMENT AGAINST EACH BORROWER, OR ANY OF THEM, IN ANY COURT OF RECORD OR, IN THE ALTERNATIVE, AUTHORIZES LENDER TO INSTRUCT THE CLERK OF ANY COURT OF RECORD TO CONFESS JUDGMENT AGAINST EACH BORROWER, OR ANY OF THEM, WITHOUT A PRIOR HEARING, AT ANY TIME AFTER THIS NOTE BECOMES DUE (WHETHER BY DEMAND, PASSAGE OF TIME, UPON ACCELERATION OR OTHERWISE) FOR THE UNPAID BALANCE OF THIS NOTE PLUS INTEREST, TOGETHER WITH COURT COSTS AND ATTORNEYS' FEES IN AN AMOUNT EQUAL TO FIFTEEN PERCENT (15%) OF THE PRINCIPAL AMOUNT OF THE OBLIGATIONS THEN OUTSTANDING. IN CONNECTION THEREWITH, THE BORROWER HEREBY RELEASES, TO THE EXTENT PERMITTED BY APPLICABLE LAWS, ALL ERRORS AND ALL RIGHTS OF EXEMPTION, APPEAL, STAY OF EXECUTION, AND INQUISITION. SUCH AUTHORITY AND POWER MAY BE EXERCISED ON ONE OR MORE OCCASIONS, FROM TIME TO TIME, IN THE SAME OR DIFFERENT JURISDICTIONS, AS OFTEN AS THE LENDER SHALL DEEM NECESSARY OR DESIRABLE, FOR ALL OF WHICH THIS AGREEMENT SHALL BE SUFFICIENT WARRANT.

BORROWER HEREBY AGREES NOT TO ELECT A TRIAL BY JURY OF ANY ISSUE TRIABLE OF RIGHT BY JURY, AND WAIVES ANY RIGHT TO TRIAL BY JURY FULLY TO THE EXTENT THAT ANY SUCH RIGHT SHALL NOW OR HEREAFTER EXIST WITH REGARD TO THIS NOTE OR THE OTHER LOAN DOCUMENTS, OR ANY CLAIM, COUNTERCLAIM OR OTHER ACTION ARISING IN CONNECTION THEREWITH. LENDER IS HEREBY AUTHORIZED TO FILE A COPY OF THIS PARAGRAPH IN ANY PROCEEDINGS AS CONCLUSIVE EVIDENCE OF THIS WAIVER BY BORROWER.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE REAL PROPERTY ENCUMBERED BY THE DEED OF TRUST IS LOCATED (WITHOUT REGARD TO ANY CONFLICT OF LAWS PRINCIPLES) AND THE APPLICABLE LAWS OF THE UNITED STATES OF AMERICA. BORROWER HEREBY IRREVOCABLY SUBMITS TO THE JURISDICTION OF ANY COURT OF COMPETENT JURISDICTION LOCATED IN THE STATE IN WHICH THE REAL PROPERTY ENCUMBERED BY THE DEED OF TRUST IS LOCATED IN CONNECTION WITH ANY PROCEEDINGS ARISING OUT OF OR RELATING TO THIS NOTE.

TIME IS OF THE ESSENCE OF ALL PROVISIONS OF THIS NOTE.

6

MADE under seal as of the day and year first above written.

_____ (SEAL)
Arlene A. Smith-Scott

STATE/COMMONWEALTH OF Maryland
CITY/COUNTY OF Harford , to-wit:

I HEREBY CERTIFY that on this the 2nd day of February, 2007 before me, the Subscriber, a Notary Public in and for the jurisdiction aforesaid, personally appeared ARLENE A. SMITH-SCOTT, personally well known to me (or proven satisfactorily) to be the person who executed the foregoing instrument, and acknowledged that s/he executed the foregoing instrument in her/his name for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

[Seal]

_____
Notary Public
Name: Karla Boisvert

My commission expires: 6/19/10



Case 09-12469    Doc 341-1    Filed 01/31/14    Page 9 of 11

Date of Note: February 22, 2007
Original Principal Amount of Note: $967,500.00
Maker of Note: Arlene A. Smith-Scott
Payee of Note: Greenpoint Mortgage Funding, Inc.

## ALLONGE

Pursuant to this ALLONGE ("Allonge"), GREENPOINT MORTGAGE FUNDING, INC., a New York corporation ("Assignor"), hereby assigns and endorses to Waterfall Victoria Master Fund, Ltd. ("Assignee"), its successors and/or assigns that certain Promissory Note dated February 22, 2007, executed Arlene A. Smith-Scott, as maker, in favor of the Assignor, as payee, in the original principal amount of $967,500.00 ("Note"), the original of said Note being attached hereto and made a part hereof.

The Note is hereby endorsed as follows:

"Pay to the order of **                                    , its successors and/or assigns, WITHOUT RECOURSE, representation or warranty of any kind, except as set forth in Article 8 of that certain Loan Sale Agreement dated June 17, 2011, executed by and between the Assignor and the Assignee."

The foregoing endorsement shall have the same effect as though it were written directly on the Note.

This Allonge is made WITHOUT RECOURSE and without any representations or warranties, express or implied, except as set forth in Article 8 of that certain Loan Sale Agreement dated June 17, 2011, executed by and between the Assignor and the Assignee.

Dated June 23, 2011.

                              GREENPOINT MORTGAGE FUNDING, INC.

                              By: _____
                              Name: Douglas Bottner
                              Title: Senior Vice President

** Waterfall Victoria Master Fund, Ltd.

J.A.74

In re: ARLENE A. SMITH-SCOTT v. US BANK NATIONAL ASSOCIATION,
AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE
TRUST 2011-SBC3

_____/

## AFFIDAVIT OF PAULA RUSH

Comes now PAULA RUSH and avers:

1.    I am a consultant to the attorney and the property owner in this action.  Unless
indicated otherwise I have personal knowledge of the facts and circumstances set forth
below and if called as a witness, could and would testify competently thereto.

2.    I have reviewed documents pertaining to the underlying mortgage loan account
identified as loan numbers 0004036810(Original Lender - GreenPoint Mortgage
Funding);  91477281(Lehman Brothers – Owner 1098 Issuer as Beneficiary of Interest in
2007); and 22065281(Countrywide- Servicer) (collectively referred to as the "subject
loan"),  which are related to the property known as 10 Stanley Drive, Catonsville, MD
21228 ( "subject property").

3.    I researched documents related to Waterfall Victoria Master Fund LTD, and
Waterfall Victoria Trust 2001-SBC3 on the U.S. Securities and Exchange Commission
website.

4.    I have reviewed several documents related to this loan and property that were
obtained from multiple sources, including from Plaintiff, Baltimore County Maryland
land records[1], filings by Waterfall Victoria Master Fund on the U.S. Securities and
Exchange Commission governmental website[2], and private, proprietary databases. Those
documents include the:

**Exhibit 1** - February 22, 2007- Note executed for $967,500 on Subject Property
containing no endorsements;

_____

[1] https://mdlandrec.net/main/
[2] http://www.sec.gov/cgi-bin/browse-edgar?CIK=0001541862&action=getcompany

J.A.75

**Exhibit 2** - February 22, 2007- Deed of Trust on Subject Property ("DOT") filed in Maryland land records;

**Exhibit 3** - January 29, 2008 - Lehman Brothers Small Business Finance "End of Year 1098 Statement" sent to property owner indicating that Loan Number 0091477281( "Subject Loan") was owned and managed by Lehman Brothers during the calendar year of 2007;

**Exhibit 4** - September 25, 2008 – Deed of Appointment of Substitute Trustee executed by and among Capital One Bank Successor by Merger to Greenpoint Mortgage Funding Inc. to Howard Bierman, Jacob Geesing, and Carrie M. Ward filed in county records;

**Exhibit 5** - September 26, 2008 – Certification Regarding Debt Instrument executed by Bierman Geesing & Ward and marked True Copy Test filed in court records but no actual document was attached;

**Exhibit 6** - November 13, 2008 – Greenpoint Mortgage Funding Inc. servicing notice of transfer letter sent to property owner referencing a Greenpoint loan number 0004036810 transferred to Countrywide Home Loan Servicing LP, loan number 22065281, effective Nov. 29, 2008;

**Exhibit 7** - June 23, 2011 – An Allonge executed by Douglas Bottner as Senior Vice President for Greenpoint Mortgage Funding Inc., stated as transferring the Note: "GREENPOINT MORTGAGE FUNDING, INC., a New York corporation ("Assignor"), hereby assigns and endorses to Waterfall Victoria Master Fund, Ltd. ("Assignee"), its successors and/or assigns that certain Promissory Note dated February 22, 2007, executed Arlene A. Smith-Scott, as maker, in favor of the Assignor, as payee, in the original principal amount of $967,500.00 ("Note"), the original of said Note being attached hereto and made a part hereof. The Note is hereby endorsed as follows: "Pay to the order of **, its successors and/or assigns, WITHOUT RECOURSE, representation or warranty of any kind, except as set forth in Article 8 of that certain Loan Sale Agreement dated June 17, 2011, executed by and between the Assignor and the Assignee." (** Waterfall Victoria Master Fund, Ltd.);

J.A.76

**Exhibit 8** - June 23, 2011 – Assignment of Assignment of Leases and Rents executed by Douglas Bottner, Senior Vice President of Greenpoint Mortgage Funding Inc. to Waterfall Victoria Master Fund, Ltd.;

**Exhibit 9** - September 15, 2011 - NYS Department of State, Division of Corporations, Registration information for Waterfall Victoria Master Fund Ltd. a Foreign Business Corporation, DOS ID # 4142467[3];

**Exhibit 10** – December 11 2013( recorded on Dec. 16, 2013)  - Assignment of Rents executed by Ted Wright on  Dec 11, 2013 to be effective Oct. 19, 2011(backdated) and filed in county records on Dec. 16, 2013 stating: "FOR VALUE RECEIVED, Waterfall Victoria Master Fund, Ltd., a Cayman Island exempt company with office at  1140 Avenue of the Americas, 7[th] Floor, New York, NY 10036 ( "Assignor") does hereby grant, assign, convey and transfer unto without recourse unto US Bank National Association, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3 ( "Assignee") with offices at 1140 Avenue of the Americas, 7[th] Floor, New York, NY 10036, its successors and assigns, all of the right, title and interest of Assignor in and to that certain Deed of Trust and Security Agreement….:

**Exhibit 11** – December 16, 2013 - Assignment of DOT ( "ADOT") executed by Douglas Bottner as Senior Vice President for GreenPoint Mortgage Funding on June 17, 2011 and acknowledged on June 23, 2011, but filed  county records on Dec. 16, 2013 stating as follows: "FOR VALUE RECEIVED, the undersigned ( "Assignor") hereby assigns and transfers to Waterfall Victoria Master Fund, Ltd., having an office located at 1185 Avenue of the Americas, 17[th] Floor, New York, NY 10036 ( "Assignee"), its successors and assigns, WITHOUT RECOURSE, the undersigned's interest in and to that certain Deed of Trust in the original principal amount of $967,500.00 dated as of February 22, 2007 and recorded on March 8, 2007 in Liber 25320, Folio 281 in the Land Records of Baltimore County, Maryland. The foregoing assignment is being made

---

[3]

http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=4147738&p_corpid=4142467&p_entity_name=%77%61%74%65%72%66%61%6C%6C%20%76%69%63%74%6F%72%69%61%20%6D%61%73%74%65%72&p_name_type=%41&p_search_type=%42%45%47%49%4E%53&p_srch_results_page=0

J.A.77

without representation or warranty, express or implied, except as specifically set forth in
<u>Article 8</u> of that certain Loan Sale Agreement executed by and among the Assignor and
the Assignee, dated June 17, 2011 ("Agreement").

    <u>Exhibit 12</u> – December 5, 2013 – Assignment and Endorsement of Deed of Trust
Note executed by Ted Wright(filed as part of Transfer of Claim in Case No. 09-12469 -
Document #341) stating an assignment of the Deed of Trust Note purported to be
effective as of Oct. 19, 2011( backdated) stating as follows:

        For Value Received, WATERFALL VICTORIA MASTER FUND, LTD., a
Cayman Islands exempt company with offices at 1140 Avenue of the Americas, 7th
Floor. New York. NY 10036 ("Assignor") does hereby grant, assign, convey and transfer
unto without recourse unto US BANK NATIONAL ASSOCIATION, AS INDENTURE
TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011- SBC3
("Assignee"), its successors and/or assigns, all of Assignor's right, title, and interest in
and to that certain Deed of Trust Note dated February 22, 2007, executed by Arlene A.
Smith-Scott, as maker, in favor of Greenpoint Mortgage Funding, Inc.("Original
Lender"), as payee, in the original principal amount of $967,500.00. This Endorsement of
Deed of Trust Note is executed  concurrently with Assignor's execution of and delivery
to Assignee of that certain Assignment of Deed of Trust and Security Agreement of even
date herewith ( the intent being to assign to Assignee all of the security for the Note).

    The Note is hereby endorsed as follows:

    "Pay to the order of US BANK NATIONAL ASSOCIATION AS INDENTURE
TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 its
successors and/or assigns, WITHOUT RECOURSE, representations or warranty of any
kind"

    The foregoing endorsement shall have the same effect as though it were written
directly on the Note.

    IN WITNESS WHEREOF, Assignor has executed this Assignment and
Endorsement of Deed of Trust Note this 5th day of December, 2013, to be effective as of
October 19, 2011.

J.A.78

WATERFALL VICTORIA MASTER FUND, LTD.

A Cayman Island exempt company

By: Waterfall Asset Management, LLC, a Delaware limited liability company,

By: CFC Transactions, LLC, an Illinois limited liability company,

It's Attorney-in-Fact

By: Ted Wright

Title: Authorized Person

**Exhibit 13** - Transfer of Claim in Case No. 09-12469 - Document #341 filed on Jan. 31, 2014 stating a transfer of claim from Greenpoint Mortgage Corporation a division of Capital One – Special Assets[4] to US Bank National Association, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3. This filing included all of the following documents: (1) Deed of Trust Note Feb. 22, 2007; (2)Allonge June 23, 2011( 1st Allonge) ;(3) Assignment and Endorsement of Deed of Trust Note Dec. 5, 2013(2nd Allonge);(4) Assignment of Deed of Trust June 23, 2011; (5)Assignment of Leases and Rents June 23, 2011; (6) Assignment of deed of Trust and Security Agreement Dec. 11, 2013; (7) Assignment of Interest In Assignment of Leases and Rents Dec 11, 2013; (8) CFC Transactions LLC Manager's Certificate Designating Officers dated March 14, 2011 and referencing a servicing agreement dated Jan. 21, 2010 and related Limited Power of Attorney dated Feb. 8, 2010,  and Limited Power of Attorney dated Aug. 23, 2010 between Waterfall Victoria REO 2010-02, LLC( "Waterfall REO Entity") and unknown entity relative to this transaction.

**Exhibit 14** - Motion For Relief From Stay("RFS") filed by US BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2001-SBC3 on Dec. 19, 2013 as Document 332 in property owners bankruptcy Case No. 09-12469. This RFS attached the Note and 2 Allonges as Exhibit A.

---

[4] * The loan documents attached to Claim No. 9-1 indicate that the legal name of the initial transferor is Greenpoint Mortgage Funding, Inc.

J.A. 79

<u>MY KEY FINDINGS ARE SUMMARIZED AS FOLLOWS:</u>

5.    <u>ALLONGES AND TRANSFERS OF NOTE</u>

As revealed in the documents attached, the timeline of NOTE ownership transfers
does not create a legitimate chain of title.

<u>12/31/2007</u>    LEHMAN BROTHERS SMALL BUSINESS FINANCE -
Endorsements and/or Allonges from Greenpoint to Lehman or Lehman back to
Greenpoint do not exist in the records.

<u>6/17/2011</u>    ALLONGE #1[5] -GREENPOINT MORTGAGE FUNDING SALE TO
WATERFALL VICTORIA MASTER FUND LTD - SALE AGREEMENT
REFERENCED IN ALLONGE. Lehman endorsement is missing.

<u>6/2011</u>      WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 was
purported to be created as a Grantor Trust, however no SEC filings exists for this trust,
and no trust formation documents have ever been produced in this case.

<u>10/1/2013</u>    WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 ceased
to be in existence and is a reported subsidiary of Sutherland Asset Management
Corporation.

<u>12/5/2013</u>    ALLONGE #2[6] – WATERFALL VICTORIA MASTER FUND LTD
TO US BANK AS TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST
2011-SBC3. Trust does not exist at this time.


<u>ALLONGES</u>

In this case two Allonges[7] have been presented which purport to transfer the loan
from the original lender directly to Waterfall Victoria Master Fund LTD and from
Waterfall Victoria Master Fund LTD to Waterfall Victoria Mortgage Trust 2001-SBC3.

---

[5] Even if Allonge was created properly it was not permanently affixed to the Note as required.
[6] Even if Allonge was created properly it was not permanently affixed to the Note as required.
    [7] If the endorsement is not made on the promissory note, but on a separate piece of paper,
it's called an "allonge," which is formally defined as a piece of paper attached to the original
note for purposes of endorsement. *See* Unif. Commercial Code § 3-204, Official Comment 1.

J.A. 80

The allonges have not been presented as attached or firmly affixed to the original Note, and do not include Lehman Brothers in the chain of title, a known entity claiming it possessed ownership of the Note in 2007.

## PHYSICAL ATTACHMENT

Whenever a lender transfers or pledges a loan, the assignor must "indorse"[8] the promissory note to the assignee. Traditionally, indorsements appeared on the same piece of paper as the note or on a separate page, known as an "allonge." If an allonge is used it must be physically attached to the promissory Note as to become part of the Note to be valid and effectual.

The use of an allonge must meet the technical requirements of the Uniform Commercial Code to make the transferee of a promissory note its "holder."  UCC §3-202(2) states: "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper <u>so firmly affixed thereto as to become a part thereof</u>."

This requirement is deliberate and designed to assure the indorsements travel with the instrument and therefore "protect subsequent purchasers from the risk that the present holder or a previous holder has negotiated the instrument to someone outside the apparent chain of title through a separate document."

The allonge must be "affixed to the instrument" per §3-204(a). *Blacks Law Dictionary*, 83 (8th Ed. 2004) defines the word "Allonge" as follows: A slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsement when the original paper is filled with indorsements. Former UCC § 3-204(a) eliminates that requirement and provides that "a paper affixed to the instrument is part of the instrument." The UCC comment makes it clear that the Allonge is valid even if space is available on the instrument. (Citations omitted.)

---

[8] 1. Both the New York UCC and Revised Article 3,  say "indorse" rather than "endorse."

## FRAUDULENT ALLONGE

In this case another problem with the allonges is that a valid endorsement of the payee's name either on the back of the note or on the accompanying allonge, did not exist when the note was alleged to be transferred to the current claimed possessor. Instead, it is clear that Waterfall Victoria has attempted to create a chain of title "after the fact" and that parties in the chain are missing such as Lehman Brothers. As Lehman Brothers is a bankrupt entity it is impossible to recreate that portion of the transfers of the loan. Evidence exists that the Note was transferred or negotiated through Lehman as it was Lehman who issued the end of year 1098 Tax Statement.

## UCC CODE

The Uniform Commercial Code forbids enforcement and collection of security instrument unless the creditor possesses the properly-negotiated original promissory note. The maker who signs a promissory note is only liable per §3-412 to a "person entitled to enforce" the note, a term described in §3-301 so that only someone in possession of a validly negotiated note qualifies. *The possession* requirement, which is emphasized over and over in §3-301's definition and its accompanying Official Comment. To prove "standing" to sue and/or assert rights the party that claims standing must have the original document and all required endorsements. In this case the chain is broken.

## INDEMNIFICATION

There is no original copy of the Note in the record with allonges attached. A mere *copy* of these documents will not suffice. There could be numerous copies of the original note, with or without other endorsement histories that would not create a right of foreclosure in numerous plaintiffs. This scenario creates a practical reason for the possession requirement. If the maker of the note pays a "person not entitled to enforce," he/she is not discharged from liability on the note, and faces the prospect of having to pay the true owner when that person surfaces with proof of ownership of the note (see §§3-

601 and 3-602 above). Courts must take special care not to expose the maker to such double liability.

### KNOWLEDGE OF DEFECTS IN CHAIN OF TITLE

In this case, Waterfall Victoria took the Note with actual knowledge of its defects and assignment of a claim in a bankruptcy sale, and with notice of an uncured default.

MD Comm L Code §3-302 (2013) (a) Subject to subsection (c) and § 3-106(d), "holder in due course" means the holder of an instrument if:(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) The holder took the instrument (i) for value, (ii) in good faith, (iii) without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series, (iv) without notice that the instrument contains an unauthorized signature or has been altered, (v) without notice of any claim to the instrument described in § 3-306, and (vi) without notice that any party has a defense or claim in recoupment described in § 3-305(a).

(c) Except to the extent a transferor or predecessor in interest has rights as a holder in due course, a person does not acquire rights of a holder in due course of an instrument taken (i) by legal process or by purchase in an execution, bankruptcy, or creditor's sale or similar proceeding, (ii) by purchase as part of a bulk transaction not in ordinary course of business of the transferor, or (iii) as the successor in interest to an estate or other organization.

### CASES DISCUSSING ALLONGES

It is not enough that there is a separate piece of paper which documents the transfer unless that piece of paper is "affixed" to the note. *See Adams v. Madison Realty & Dev., Inc.*, 853 F.2d 163, 167 (3d Cir. 1988) (Mere folding of the alleged allonge around the note insufficient); *HSBC Bank USA v. Thompson*, 940 N.E.2d 986 (Ohio App. 2nd Dist.

J.A. 83

2011) (unattached pages cannot be an allonge); *In re Weisband*, 427 B.R. 13, 20 (Bankr. D. Ariz. 2010)(same). As for staples, *see Lamson v. Commercial Credit Corp.*, 187 Colo. 382 (1975) ("Stapling is the modern equivalent of gluing or pasting. Certainly as a physical matter it is just as easy to cut by scissors a document pasted or glued to another as it is to detach the two by un-stapling."); *accord S.W. Res. Corp. v. Watson*, 964 S.W.2d 262, 263 (Tex. 1997). One court has also blessed the use of an Acco fastener; *see Fed. Home Loan Mortg. Corp. v. Madison*, 2011 WL 2690617 (D. Ariz. July 12, 2011).

6. **ADDITIONAL ISSUES:**

ISSUE #1    Assignments are backdated to be effective in more than 2 years earlier. If a trust is created, as claimed here (2011-SBC3), it is required to be closed and all assets transferred as of the closing date. In this case Allonges and Assignments do not reflect that occurred.

ISSUE #2    **Exhibit 3** with a date of January 29, 2008 reflects that Lehman Brothers Small Business Finance issued an "End of Year 1098 Statement" which was sent to property owner indicating that the subject loan was owned and managed by Lehman Brothers during the calendar year of 2007. This is not reflected in any assignment or endorsement( Allonge). The assignments and endorsement claim that the loan was transferred from GreenPoint Mortgage Funding directly to Waterfall Victoria Master Fund. This is easily shown to be false via the Lehman Brothers end of year 1098 statement.

ISSUE #3    As demonstrated in **Exhibit 4** a substitution of trustee could not have been executed by Greenpoint Mortgage Funding(Capital One Bank Successor by Merger to Greenpoint Mortgage Funding Inc.) on September 25, 2008 as claimed to Howard Bierman, Jacob Geesing, and Carrie M. Ward, as Lehman was the purported owner in 2007 and no assignment or endorsement transferred the loan back to Greenpoint Mortgage.

J.A.81

ISSUE #4      As demonstrated by **Exhibit 5** on September 26, 2008 the
Certification Regarding Debt Instrument executed by Bierman
Geesing & Ward and marked "True Copy" Test[9] filed in court
records contained no actual original document. In the entire record
of this case, no original or authenticated copy of an original Note is
found. The original may not exist, or it exists but the parties are
withholding it, or have destroyed it to eliminate endorsements or other
markings that may have been present on the Note but did not match
the claimed chain of ownership.

ISSUE #5      As demonstrated in Exhibit 6 on November 13, 2008 Greenpoint
Mortgage Funding Inc. sent a notice of servicing transfer letter sent to
property owner referencing a Greenpoint loan number 0004036810
transferred to Countrywide Home Loan Servicing LP, loan number
22065281, effective Nov. 29, 2008, thereby as of this date in 2008
Greenpoint was not the owner, Lehman was, or the servicer,
Countrywide was. Therefore all documents executed by Greenpoint
after Nov. 29, 2008 were false and fraudulently created including the
Allonge in Exhibit 7.

ISSUE #6      As demonstrated in **Exhibit 7** an Allonge was purported to be
executed on June 23, 2011 by Douglas Bottner as Senior Vice
President for Greenpoint Mortgage Funding Inc., stated it transferred

---

[9] A certified copy is one that is signed and certified as a true copy by the officer to
whose custody the original is intrusted. Black's Law Dictionary (5th Ed. 1979) A
certified copy bears the official seal, if any, as well as the officer's signature. See
Rule 5-902(a). Courts Article, 2-201 includes as one of the enumerated duties of
clerks of court the providing of "copies of records or papers in ( the clerk's)
custody to a person requesting a copy, under seal of court if required". If a person
asks the clerk to mark the copy "true test", apparently to show the source and
accuracy of the copy, but does not request and pay for a certified copy, the court
seal should NOT be affixed to the uncertified copy. Maintaining the distinction
between the types of copies will avoid substitution of true test copies for certified
copies.

J.A. 85

the Note from "GREENPOINT MORTGAGE FUNDING, INC. to Waterfall Victoria Master Fund, Ltd. This could not have occurred legally unless the Lehman endorsements and assignments occurred sending the loan back to Greenpoint. At this date in 2011 Greenpoint was not the servicer or the owner of record. Further the endorsement is purported to be effective pursuant to a Loan Sale Agreement dated June 17, 2011, executed by and between Greenpoint and Waterfall Victoria Master Fund, Ltd. This loan sale agreement has never been produced as part of the record and endorsements do not exist transferring the loan from Lehman to Greenpoint for Greenpoint to have the authority to transfer the Note.

ISSUE #7    As demonstrated in <u>Exhibit 8</u> the June 23, 2011 Assignment of Assignment of Leases and Rents executed by Douglas Bottner, Senior Vice President of Greenpoint Mortgage Funding Inc. to Waterfall Victoria Master Fund, Ltd. would also fail in authenticity due to the same ownership chain problems. You cannot assign what you do not own.

ISSUE #8    As demonstrated in <u>Exhibit 9</u> on September 15, 2011 the NYS Department of State, Division of Corporations, shows a registration for Waterfall Victoria Master Fund Ltd. a Foreign Business Corporation, DOS ID # 4142467.[10] Prior to that date no registration is found. <u>Exhibit 7</u> and <u>Exhibit 8</u> have dates referring back to June 23, 2011. It appears the entity stated in these documents was not a registered business entity at the time of the effective date found in these documents rendering them void.

---

[10] http://appext20.dos.ny.gov/corp_public/CORPSEARCH.ENTITY_INFORMATION?p_nameid=4147738&p_corpid=4142467&p_entity_name=%77%61%74%65%72%66%61%6C%6C%20%76%69%63%74%6F%72%69%61%20%6D%61%73%74%65%72&p_name_type=%41&p_search_type=%42%45%47%49%4E%53&p_srch_results_page=0

J.A.86

**ISSUE #9**   As demonstrated in <u>Exhibit 10</u> the December 11, 2013( recorded on

Dec. 16, 2013) Assignment of Rents executed by Ted Wright on  Dec

11, 2013 <u>to be effective Oct. 19, 2011</u> purported to transfer rights to

rents from  Waterfall Victoria Master Fund, Ltd. to US Bank National

Association, as Indenture Trustee for Waterfall Victoria Mortgage

Trust 2011-SBC3

**Exhibit 11**   December 16, 2013 - Assignment of DOT ( "ADOT") executed by

Douglas Bottner as Senior Vice President for GreenPoint Mortgage

Funding on June 17, 2011 and acknowledged on June 23, 2011, but

filed  county records on Dec. 16, 2013 stating as follows: "FOR

VALUE RECEIVED, the undersigned ( "Assignor") hereby assigns

and transfers to Waterfall Victoria Master Fund, Ltd., having an office

located at 1185 Avenue of the Americas, 17th Floor, New York, NY

10036 ( "Assignee"), its successors and assigns, <u>WITHOUT</u>

<u>RECOURSE</u>, the undersigned's interest in and to that certain Deed of

Trust in the original principal amount of $967,500.00 dated as of

February 22, 2007 and recorded on March 8, 2007 in Liber 25320,

Folio 281 in the Land Records of Baltimore County, Maryland. The

foregoing assignment is being made without representation or

warranty, express or implied, except as specifically set forth in <u>Article</u>

<u>8</u> of that certain Loan Sale Agreement executed by and among the

Assignor and the Assignee, dated June 17, 2011 ( "Agreement").

**Exhibit 12**   December 5, 2013 – Assignment and Endorsement of Deed of Trust

Note executed by Ted Wright(filed as part of Transfer of Claim in

Case No. 09-12469 - Document #341) stating an assignment of the

Deed of Trust Note purported to be effective as of Oct. 19, 2011(

backdated) stating as follows:

For Value Received, WATERFALL VICTORIA MASTER FUND,

LTD., a Cayman Islands exempt company with offices at 1140

J.A.89

Avenue of the Americas, 7th Floor. New York. NY 10036 ("Assignor") does hereby grant, assign, convey and transfer unto without recourse unto US BANK NATIONAL ASSOCIATION, AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011- SBC3 ("Assignee"), its successors and/or assigns, all of Assignor's right, title, and interest in and to that certain Deed of Trust Note dated February 22, 2007, executed by Arlene A. Smith-Scott, as maker, in favor of Greenpoint Mortgage Funding, Inc.("Original Lender"), as payee, in the original principal amount of $967,500.00. This Endorsement of Deed of Trust Note is executed  concurrently with Assignor's execution of and delivery to Assignee of that certain Assignment of Deed of Trust and Security Agreement of even date herewith ( the intent being to assign to Assignee all of the security for the Note).

The Note is hereby endorsed as follows:

"Pay to the order of US BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2011-SBC3 its successors and/or assigns, WITHOUT RECOURSE, representations or warranty of any kind"

The foregoing endorsement shall have the same effect as though it were written directly on the Note.

IN WITNESS WHEREOF, Assignor has executed this Assignment and Endorsement of Deed of Trust Note this 5th day of December, 2013, to be effective as of October 19, 2011.

WATERFALL VICTORIA MASTER FUND, LTD.

A Cayman Island exempt company

By: Waterfall Asset Management, LLC, a Delaware limited liability company,

By: CFC Transactions, LLC, an Illinois limited  liability company,

J.A.88

It's Attorney-in -Fact

By: Ted Wright

Title: Authorized Person

**Exhibit 13**    Transfer of Claim in Case No. 09-12469 - Document #341 filed on Jan. 31, 2014 stating a transfer of claim from Greenpoint Mortgage Corporation a division of Capital One – Special Assets[11] to US Bank National Association, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3.  This filing included all of the following documents: (1) Deed of Trust Note Feb. 22, 2007; (2)Allonge June 23, 2011( 1st Allonge) ;(3) Assignment and Endorsement of Deed of Trust Note Dec. 5, 2013(2nd Allonge);(4) Assignment of Deed of Trust June 23, 2011; (5)Assignment of Leases and Rents June 23, 2011; (6) Assignment of deed of Trust and Security Agreement Dec. 11, 2013; (7) Assignment of Interest In Assignment of Leases and Rents Dec 11, 2013; (8) CFC Transactions LLC Manager's Certificate Designating Officers dated March 14, 2011 and referenced a servicing agreement dated Jan. 21, 2010 and related Limited Power of Attorney dated Feb. 8, 2010,  and Limited Power of Attorney dated Aug. 23, 2010 between Waterfall Victoria REO 2010-02, LLC ("Waterfall REO Entity") and unknown entity relative to this transaction.

**Exhibit 14**    Motion For Relief From Stay("RFS") filed by US BANK NATIONAL ASSOCIATION AS INDENTURE TRUSTEE FOR WATERFALL VICTORIA MORTGAGE TRUST 2001-SBC3 on Dec. 19, 2013 as Document 332 in property owners bankruptcy Case No. 09-12469. This RFS attached the Note and 2 Allonges as Exhibit A.

---

[11] * The loan documents attached to Claim No. 9-1 indicate that the legal name of the initial transferor is Greenpoint Mortgage Funding, Inc.

J. A 89

7. <u>INDEMNIFICATION</u>

The property owner is entitled to indemnification due to the plausibility of another entity coming forward and claiming ownership in the future. The claimed owner should produce the original Note and explanations for the Lehman Brothers tax statement and ownership issues, and the registration that did not exist for Waterfall Victoria at the time of executing documents, the failures to properly assign and endorse the Note, and the SEC statements the 2011-SBC3 trust no longer existed as of October 1, 2013.

8. <u>RELEVANT FACTS</u>

A.   The current party making claims in the property owner's bankruptcy related to the Note and Deed of Trust is purported to be a securitization trust Waterfall Victoria 2011-SBC3, which is stated as purchasing distressed assets. US Bank is claimed as trustee of the trust.

B.   US Bank has claimed authority to execute documents such as Substitution of Trustee and claim ownership rights via a Proof of Claim transfer, however although 2 Waterfall Victoria Trusts created in 2008 exist on the US BANK investor reporting site, this trust does not.  The SERIES 2011-SBC3 trust does not exist on the investor reporting site for US BANK NATIONAL ASSOCIATION[12].

C.   A search of the SEC filings for the securitized trust revealed no filings related to this trust however Sutherland Asset Management Corporation is reporting information related to this trust in its filings.

D.   Waterfall Victoria Mortgage Trust 2011-SBC3 is a subsidiary of Sutherland Asset Management Corporation.

E.   Waterfall Victoria Mortgage Trust 2011-SBC3 is a Grantor Trust that was completed in 2011, which is two years prior to the transfer from Waterfall Victoria Master Fund, LTD executed in this case.

F.   Loans are reported as distressed assets acquired at a discount.

---

[12] https://trustinvestorreporting.usbank.com/TIR/public/dealList/search/2695

J.A. 90

G. Distressed Assets are purchased with knowledge of document exceptions such as lost notes, and lack of endorsements and/or assignments.

H. Sutherland reported that Victoria funds were all liquidated in 2011.

I. Sutherland Asset Management Corporation was formed as a Maryland Company in 2013. The company acquires real estate through the foreclosure of their loans.

J. Auditor has been unable to examine the Note for authenticity and any endorsements thereon, and/or Allonges as the record does not contain any copy which is a true certified copy of the original Note.

K. The Assignments purported to confer standing of US BANK as Trustee for Waterfall Victoria Trust 2011-SBC3 are all backdated and LEHMAN BROTHERS SMALL BUSINESS FINANCE is not present in those assignments.

L. The Allonges that purport to confer standing of US BANK as Trustee for Waterfall Victoria Trust 2011-SBC3 are not attached to the Note as required to be effective and do not contain any endorsement or Allonge from LEHMAN BROTHERS. You cannot assign and/or transfer that which you do not own. As fully briefed herein, there is no evidence that GREENPOINT owned this loan at the time it made assignments and executed an Allonge to transfer the loan.

M. The parties continue to assert that the 2011-SBC3 trust owns this loan when Sutherland reports the trust has been dissolved and no longer holds any assets.

N. Actions undertaken with the intent to mislead the courts appear to have taken place. Filing a Proof of Claim when you are not the party to whom the debt is owed is fraudulent. Prosecuting a Proof of Claim and/or transferring a Proof of Claim when you are not the proper party to a non-existent party is fraudulent. Prosecuting a *Motion for Relief From Stay* when you are not the proper party is fraudulent.

O. Victoria Funds description of events that occurred and substantial changes to the company structure stating as follows[13]: "We trace our history back to August 2007 when the Victoria series of funds, or the Victoria Funds, made their initial acquisition of an equity tranche of an SBC loan securitization. The Victoria Funds were formed and managed by our Manager to invest in a range of loans and asset backed securities, or ABS, requiring active management to generate returns. <u>Our business was operated as part of the Victoria Funds until November of 2011 at which time the Victoria Funds contributed substantially all of their SBC loans to our operating partnership in exchange for substantially all of its partnership units</u>[14] representing $371.5 million in assets and $262.2 million of equity capital.  In November and December of 2013, we completed a private placement, or the 2013 private placement, of shares of our common stock and OP units, pursuant to which we raised approximately $226 million of equity capital. Concurrently with the closing of the 2013 private placement, we engaged in a series of transactions, which we refer to as the REIT formation transactions, in order to allow us to continue our business as a real estate investment trust, or REIT, for U.S. federal income tax purposes. As part of these transactions, we became a Maryland corporation, which was formed on November 5, 2013, and the sole general partner of, and commenced conducting substantially all of our businesses through, our operating partnership and its subsidiaries. We have elected to be taxed as a REIT for U.S. federal income tax purposes commencing with our taxable year ended December 31, 2013. So long as we qualify as a REIT, we generally are not subject to U.S. federal income tax on our net taxable income to the extent that we annually distribute all of our net taxable income to stockholders. We are organized in a traditional umbrella partnership real estate investment trust, or UpREIT, format pursuant to which we serve as the general partner of, and conduct substantially all of our business through, Sutherland Partners, L.P., a Delaware limited partnership, which serves as our operating partnership subsidiary. We also intend to operate our

---

[13] http://www.secinfo.com/dVut2.mu.htm#s3y3
[14] http://www.secinfo.com/dVut2.mu.htm#1stPage

J.A.92

business in a manner that will permit us to be excluded from registration as an investment company under the Investment Company Act of 1940, as amended, or the 1940 Act." The SEC filing[15] dated Jan 6, 2015 contains this chart showing that 2011-SBC3 no longer contains any loans and an explanation of a consolidation which occurred.

*Securitized debt*

The consolidation of the securitization transactions includes the sales of senior securities to third parties which are shown as securitized debt obligations securitized debt obligations of consolidated VIEs on the consolidated balance sheets. The following table presents additional information on the Company's securitized debt obligations:

| (In Thousands) | September 30, 2014 | | December 31, 2013 | |
| | Current Principal Balance | Weighted Average Interest Rate | Current Principal Balance | Weighted Average Interest Rate |
| --- | --- | --- | --- | --- |
| Waterfall Victoria Mortgage Trust 2011-SBC1 | $ 533 | 7.0% | $ 1,195 | 7.0% |
| Waterfall Victoria Mortgage Trust 2011-SBC2 | 37,846 | 5.2 | 46,780 | 5.1 |
| Waterfall Victoria Mortgage Trust 2011-SBC3 | — | — | 14,678 | 6.5 |
| Total | $ 38,379 | 5.2% | $ 62,653 | 5.5% |

Note 21—Use of Special Purpose Entities (Continued)

*Securitization transactions*

In 2011, the Company engaged in three securitization transactions. Prior to October 1, 2013 the Operating Partnership was exempt from consolidating the securitizations under ASC 946: *Financial Services—Investment Companies*. Upon the change to operating company accounting, under ASC 810: *Consolidation*, the Operating Partnership is required to consolidate, as a VIE, the SPE/trust that was created to facilitate the transaction and to which the underlying mortgage loans in connection with the securitization were transferred. (See Note 2 for a discussion of our accounting policies applied to the consolidation of the VIE and transfer of the financial assets in connection with the securitization.).

The mortgage loans in the securitization trust are comprised of performing, sub-performing and non-performing SBC loans.

On a quarterly basis, subsequent to October 1, 2013, the Company completes an analysis to determine whether the VIE should be consolidated. As part of this analysis, the Company's involvement in the creation of the VIE, including the design and purpose of the VIE and whether such involvement reflects a controlling financial interest that results in the Company being deemed the primary beneficiary of the VIE is considered. In determining whether the Company would be considered the primary beneficiary, the following factors are considered: (i) whether the Company has both the power to direct the activities that most significantly impact the economic performance of the VIE; and (ii) whether the Company has the right to receive benefits or the obligation absorb losses of the entity that could be potentially significant to

---

[15] http://www.sec.gov/Archives/edgar/data/1456906/000104746915000040/a2222633zs-11a.htm#ci15101_the_offering

the VIE. Based on the Company's evaluation of these factors, including the Company's involvement in the design of the VIE, it was determined that the Company is required to consolidate the VIE created to facilitate the securitization transaction effective October 1, 2013.

For financial statement reporting purposes, since the underlying trust is consolidated, the securitization is effectively viewed as a financing of the mortgage loans that were securitized to enable the senior security to be created and sold to a third-party investor. As such, the senior security is presented on the consolidated balance sheet as securitized debt obligations of consolidated VIEs. The third-party beneficial interest holders in the VIE have no recourse against the Company, except that the Company has an obligation to repurchase assets from the VIE in the event that certain representations and warranties in relation to the mortgage loans sold to the VIE are breached. In the absence of such a breach, the Company has no obligation to provide any other explicit or implicit support to any VIE. As previously stated, the Company is not obligated to provide, nor has the Company provided, any financial support to these consolidated securitization vehicles.

As of September 30, 2014, the carrying value of the Company's securitized assets was $70.4 million and $3.1 million, and is presented on the consolidated balance sheet as loans, held-for-investment and real estate acquired in settlement of loans, respectively. As of December 31, 2013, the carrying value of the Company's securitized assets was $88.4 million and $5.2 million, and is presented on the consolidated balance sheet as loans, held-for-investment and real estate acquired in settlement of loans, respectively.

The SEC filing[16] dated Jan 6, 2015 also contains this chart showing that 2011-SBC3 was consolidated, specifically stating in Notes to this chart: "The Predecessor consolidates the asset and liabilities of the trust starting with the date of conversion from an investment company to an operating company," and "Upon conversion to operating company......we are required to consolidate.....the underlying SBC loans in connection with the securitization were transferred.

*Securitization Trusts*

Prior to October 1, 2013 we were exempt from consolidating the securitizations under ASC 946: Financial Services—Investment Companies. Upon conversion to operating company accounting, under ASC 810: Consolidation, we are required to consolidate, as a VIE, the SPE/trust that was created to facilitate the transaction and to which the underlying SBC loans in connection with the securitization were transferred.

VIEs are defined as entities in which equity investors (i) do not have the characteristics of a controlling financial interest, and/or (ii) do not have sufficient equity at risk for the entity to finance its activities without additional subordinated financial support from other parties. The entity that consolidates a VIE is known as its primary beneficiary, and is generally the entity with (i) the power to direct the activities that most significantly impact the VIE's economic performance, and (ii) the right to receive benefits from the VIE or the obligation to absorb losses of the VIE that could be significant to the VIE. For VIEs that do not have substantial ongoing activities, the power to direct the activities that most significantly impact the VIEs' economic performance may be determined by an entities' involvement with the design of the VIE.

---

[16] http://www.sec.gov/Archives/edgar/data/1456906/000104746915000040/a2222633zs-11a.htm#ci15101_the_offering

J.A.94

Our consolidated statements of financial condition present: (i) our direct assets and liabilities, and the assets and liabilities of consolidated securitization vehicles. Assets of all consolidated VIEs can only be used to satisfy the obligations of those VIEs, and the liabilities of consolidated VIEs are non-recourse to us. We will aggregate all the assets and liabilities of the consolidated securitization vehicles because we determined that these entities are substantively similar, and therefore, a further disaggregated presentation would not be more meaningful.

### Note 8—Real Estate Acquired in Settlement of Loans

The Company acquires real estate through the foreclosure of its mortgage loans. As of December 31, 2013, the Company held 27 properties in the Company's consolidated taxable REIT subsidiary, SAMC REO 2013-01, LLC and the Company's securitization transactions. The table below summarizes the carrying amount of the Company's real estate holdings as of December 31, 2013:

| (In Thousands) | SAMC REO 2013-01, LLC | WVMT 2011-SBC1(a) | WVMT 2011-SBC2(b) | WVMT 2011-SBC3(c) | Total |
|---|---|---|---|---|---|
| Alabama | $ 454 | $ — | $ — | $ — | $ 454 |
| California | — | 257 | 166 | — | 423 |
| Connecticut | — | — | — | 88 | 88 |
| Florida | — | — | — | 284 | 284 |
| Georgia | 866 | — | — | 270 | 1,136 |
| Illinois | — | 225 | — | — | 225 |
| Massachusetts | — | 194 | — | — | 194 |
| New Jersey | — | 488 | 251 | 1,686 | 2,425 |
| New York | — | — | — | 367 | 367 |
| North Carolina | — | — | — | 770 | 770 |
| Rhode Island | — | 186 | — | — | 186 |
| Total | $ 1,320 | $ 1,350 | $ 417 | $ 3,465 | $ 6,552 |

(a) Waterfall Victoria Mortgage Trust 2011-SBC1 ("WVMT 2011- SBC1") is a grantor trust securitization completed by the Company in 2011. The Predecessor consolidates the asset and liabilities of the trust starting with the date of conversion from an investment company to an operating company.
(b) Waterfall Victoria Mortgage Trust 2011-SBC2 ("WVMT 2011- SBC2") is a REMIC securitization completed by the Company in 2011. The Predecessor consolidates the asset and liabilities of the trust starting with the date of conversion from an investment company to an operating company.

(c)Waterfall Victoria Mortgage Trust 2011-SBC3 ("WVMT 2011- SBC3") is a grantor trust securitization completed by the Company in 2011. The Predecessor consolidates the asset and liabilities of the trust starting with the date of conversion from an investment company to an operating company.

## CONCLUSION

10.    The document evidence clearly shows that the named parties in the bankruptcy court filings, assignments, and Allonges were not the parties with authority at the time the documents were executed and/or filed.

11.    Despite the record reflecting ownership flaws, which would have been noted on Document Exception reports at the time of purchase of the loan as distressed debt, US BANK and WATERFALL VICTORIA MASTER FUND LTD, and WATERFALL VICTIORIA MORTGAGE TRUST 2011-SBC3 filed and prosecuted claims against the property owner without standing and with actual knowledge of the false representations and false documents entered into the record.

12.    The WATERFALL VICTIORIA MORTGAGE TRUST 2011-SBC3 no longer exists as of Oct. 1, 2013.

13.    Incorporated by reference are Exhibits 1-17.


I HEREBY CERTIFY under penalty of perjury under the laws of the State of Florida that the foregoing is true and correct to the best of my knowledge and belief.

Executed this _15_ day of May, 2015, in Charlotte County FL by:

Paula Rush

7474 Claypool St.

Englewood FL 34224

443-676-3509

paularush@comcast.net

J. A. 96

**PAULA RUSH**

4619 Hidden Forest Lane
Sarasota FL 34235
http://paularush@comcast.net
443-676-3509

**WEBSITES**

paularush.com
loandatafinder.com

**BLOG**

paularush.me

## BACKGROUND STUDY

December 2006 – Present

I have been involved in cases and investigation of the mortgage industry, loan and securitization auditing, securitization analysis, and as an auditor/expert in affirmative actions against lenders, and defensive actions against foreclosures logging well over 15,000 hours of time researching cases, reading thousands of reports, treatises, law journal articles, opinions, court findings, consumer advocacy group papers, transcripts, etc.

I have reviewed all the findings of the Financial Crisis Inquiry Commission, The Permanent Committee on Investigations ("Levin Report" released over 1800 pages), and several other major investigations. I have reviewed all the pleadings and evidence in all the insurer and investor lawsuits, SEC lawsuits, bankruptcies of major lenders, and major civil lawsuits.

Due to eight years of experience and well-rounded knowledge in this field, I have been retained as an auditor, expert, and litigation support for hundreds of affirmative actions against lenders, and defensive actions against foreclosures in nine states. My work in those cases includes all aspects of loan and securitization auditing, litigation, discovery, consulting, training, and expert services.

## EXPERT EXPERIENCE

I am one of a relatively small handful of professionals who have mastered the complexity of mortgage loan and securitization auditing and how those concepts translate to affirmative and defensive litigation in defense of property. I routinely act as a Litigation Support Specialist, Expert Witness and Forensic Consultant, Loan and Securitization Auditor, Trainer, and specialized paralegal for law firms in several states. I am called upon to assist with all aspects of preparing a case, filing affidavits of audit findings and testifying on clients' behalf as an expert.

1

J.A. 98

I have been involved in cases in Louisiana, Delaware, Maryland, Ohio, Florida, Virginia, Georgia, North Carolina, Hawaii, Oregon, California, New York, Wisconsin, Utah, Michigan, and the District of Columbia. I consult with law firms regarding affirmative lender litigation including strategy, research, and preparing pleadings, defense of mortgage foreclosure, deficiency judgments, short sales, and loan modification.

I have an extensive and comprehensive understanding of mortgage lending and securitization related issues and have conducted in depth analysis of over 500 loan files and securitization trusts and review audits of hundreds more through research and investigation encompassing thousands of securitization documents, reports, bankruptcy filings, counterparty lawsuits, party specific and industry research. This in depth understanding has been earned through more than seven years of practical experience("boots on the ground") and thousands of hours of deep research regarding all aspects of origination and securitization of loans. In short, for more than seven years I have spent every day immersed in mortgage loan and securitization related issues, advocating for homeowners, training attorneys and auditors, and providing expert services.

## SPECIFIC AREAS OF EXPERTISE

Securitization Auditing including; New York and Delaware trust law, all forms of RMBS trusts, structure of trust investment classes, investor pass through rates, multiple layers of credit enhancements, document custodial history, UCC code, reverse repurchases, secured financings vs. true sales, waterfall structures, trigger events, voting rights including matters put to vote, fractional pledges of principal and interest, stress tests and modeling assumptions, representations and warranties, document exceptions, margin calls, and a myriad of other securitization issues including interest rate and credit default swaps.

Loan Auditing including; discrimination, elder abuse, appraisal fraud, contract claims, accounting, assignments and transfers, title and settlement violations, fee audit, illegal charges, overcharges, loan rescission, void at inception or voidable contracts, federal and state law violations.

Participant Auditing including; mortgage broker, table funder/lender, warehouse lender, loan purchaser, securitization aggregator, sponsor, indenture trustees, owner trustee, document custodian, certificate insurer, mortgage insurer, title insurer, servicer, master servicer, and special servicers.

Special Areas of Expertise include: Pay Option Arm loans, lender bankruptcy claims - equitable subordination, relief from stay, administrative priority claims, discrimination, insurer and investor claims, financial elder abuse, and appraisal fraud.

## AUDITING EXPERIENCE

In the course of my work I have produced hundreds of audit reports and affidavits in residential and commercial real estate mortgage investigations and am recognized by Attorneys as a leading expert and investigator in the field. My audits support attorneys

2

J.A. 99

lawsuit claims related to state and federal law claims and related subjects. Attorneys consult with me regarding affirmative and defensive lender litigation including strategy, research, and preparing pleadings, defense of mortgage foreclosure, deficiency judgments, short sales, second lien stripping, bankruptcy adversaries, and loan modification.

In the course of my work I am called upon to find loans in securitization trusts and analyze the structure of those trusts both at inception and the current state of the trust. I track loans on original loan tapes and investor reports from inception all the way through to present time. I find and analyze all contracts between the parties, and subsequent events such as repurchases, breaches of representations and warranties, document exception reports, reinsurance contracts, matters put to investor votes, loan liquidations, and loan sales. I have developed detailed analysis of investor reports including a proprietary best interest test. My analysis includes the investor pass through rate, the structure of the trust and the fractional distribution of principal and interest, credit enhancements, loan modifications, loss severity, open and closed investor classes, and CUSIP search for principal investors who are the real parties in interest.

I have been directly involved with numerous six figure settlements, and stopping hundreds of foreclosure sales. After stopping the sales, resolutions have been reached which allowed the homeowners to keep the home through good modification and principal reductions.

I prepare highly advanced loan and securitized analysis reports. Special expertise includes Pay-Option-Arm/ Pick-a-Pay loans, lender bankruptcies, analysis of securitized trust structure, best interest of investors test, FDIC loss share agreements, and complex credit enhancements structures.

I have experience in identifying loan violations related to; false advertising, mortgage broker's practices, appraisal fraud, unmarketable titles, loan settlement practices, mortgage insurances, predatory lending violations, predatory servicing practices, Federal and state law violations in several states and regulatory requirements. I gained substantially all my education through independent study and over seven years of practical case specific experience which includes litigation against every major Wall Street Bank, small to large loan originators, all major servicers, and many FDIC insured banks.

**SPECIAL POSITIONS**

**2007- 2010 Chairperson – Official Borrower's Committee**
AMERICAN HOME MORTGAGE HOLDINGS, INC., Case No. 07-11047

I was nominated to serve as Chairperson of the Official Committee of Borrowers in the bankruptcy of American Home Mortgage by AARP Managing Attorney, Rawle Andrews Esquire, **AARP Legal Counsel for the Elderly**, 601 E Street, NW, A4-410, Washington, D.C. 20049, and unanimously elected by the committee members, Mike Roland, **Consumer Law Center**, P.A., 537 10th Street West, Bradenton, FL 34205, Keith J. Keogh, Esquire, **Law Offices of Keith J. Keogh**, Ltd., 227West Monroe Street, Suite 2000, Chicago, IL 60606, Margaret Becker, Esquire, **Staten Island Legal Services**, 36 Richmond Terrace, Room # 205, Staten Island, NY 10301, , Hope Del Carlo, Esquire, **Oregon Law Center**, 921 SW Washington Street, Suite 516, Portland, OR 97205. I resigned as Chairperson in 2010

3

J.A 100

when I settled my personal case. The Chapter 11 plan was confirmed and all committees were dissolved shortly thereafter.

Committee Counsel Stephen A. Weisbrod
Gilbert Oshinsky LLP
1100 New York Avenue, NW, Suite 700
Washington, DC 20005
T (202) 772-1962
F (202) 772-3962
weisbrods@gotofirm.com
www.gotofirm.com

     I was the driving force behind the appointment of the AHM *Official Borrower Committee* and Judge Christopher Sontchi repeatedly recognized and complimented me on my efforts in many hearing transcripts. The *Official Borrower Committee* was appointed after I advocated individually for more than one year for borrower rights in this case. Due to my efforts and exposure of homeowner issues, I was instrumental in obtaining the only homeowner committee ever appointed in a lender bankruptcy case. My advocacy work resulted in my appointment as Chairperson of the committee. I fought for 1 ½ years Pro Se for various protections for borrowers and was solely responsible for the insertion of 363(o) protections in all loan sales and the servicing platform sale agreement. This protection had been absent from numerous lender loan sales in bankruptcy in Delaware.

     Through my individual efforts, and later committee efforts, we fought for protections in loan sale agreements, protections in the bankruptcy plan, for an ombudsman, protection of documents, and to protect borrower rights to defend against foreclosures without the protection for American Home in the automatic stay. We fought against destruction of documents, and we crafted protection language in the reorganization plan. We secured a fully funded ombudsman to assist homeowners after the plan was effective and the committee dissolved.

     As Chairperson of the committee, I was instrumental obtaining numerous protections in the bankruptcy plan, including a plan ombudsman for borrowers to obtain loan files and obtain information on the holder of their note, mandated protection of documents, and special rights for homeowners to protect borrower rights to defend against foreclosures without consideration for the protection for American Home in the automatic stay, as well as many other protections.

     The Committee was supported by the State of Maryland, Center for Responsible Lending, National Association of Consumer Advocates, Regional US Trustee Roberta DeAngelis, National Consumer Law Center in Washington DC, and many others.

## CONTINUED ADVOCACY FOR HOMEOWNERS

Beginning in June 2012 I initiated and worked on bringing a motion to form an official homeowner committee in a 51 debtor bankruptcy which included origination, servicing, securitization, and foreclosure entities associated with GMAC Mortgage LLC.

On August 24 2012, Robert Brown Esq. filed a motion to form an Official Borrower-Homeowner Committee in the Residential Capital, LLC, Case No. 12-12020 (MG) pending in the United States Bankruptcy Court, Southern District of New York. That motion may be viewed at: http://www.kccllc.net/documents/1212020/1212020120824000000000016.pdf

To support that motion I did extensive research into the case and wrote an amicus brief in support. That document may be viewed at: http://www.kccllc.net/documents/1212020/1212020120926000000000009.pdf

On September 27, 2012 I attended the hearing in New York and argued for the formation of the committee. The committee appointment was denied, however special counsel was appointed to represent homeowners in this case.

### TEACHING/TRAINING EXPERIENCE

For the past four years I have trained attorneys on all topics including loan auditing, securitization, discovery, credit enhancements, regulatory requirements, foreclosure defense, FDIC loss share agreements, appraisal fraud, investor fraud, clouds on title, financial elder abuse, and all Federal and State laws applicable to lender litigation and foreclosure defense. I train attorneys on how to uncover the violations, understand the transactions, and apply legal concepts to the litigation such as; unclean hands, indispensable parties, fraud at inception, fraudulent inducement, impossibility of performance, void and voidable contracts, and estoppels(judicial, equitable, silence, promissory).

I have been retained to train auditors and foreclosure defense attorneys in California, Virginia, Florida, and Georgia. My training includes loan and securitization auditing, research and use of data mined from securitization, legal strategy, connecting agency relationships originators through securitization and research analytics such as investor best interest test, spread test, and chain of title research, how to identify and prove various frauds such as: insurance fraud, appraisal fraud, origination fraud, broker fraud, securitization fraud, and aiding and abetting fraud and use of document exception reports to connect fabrication and false document production.

### RECENT TRAINING ENGAGEMENTS
**Legal Alliance**
**Peter Bowers Esq.**
2234 N. Federal Hwy #419
Boca Raton Florida 33431
561-235-7980 Office
561-245-1503 Cell

**Salfi & Sprysenski, P.A.**
Chris Sprysenski, Esq.

J.A. 102

Dominick Salfi(retired judge)
999 Douglas Avenue, Suite 3324
Altamonte Springs, FL 32714
407-774-2700 (T) 407-774-7308 (F)

**The Law Office of Mandy Pavlakos, P.A.**
1410 Lake Baldwin Lane, Suite A
Orlando, FL 32814
**Office Phone :**( 407)745-0801
**Fax:** (407)209-3807

**Law Offices of Lance Denha**
3948 Coral Ridge Drive
Coral Springs, FL 33065
Office: 954-840-0770
Toll Free: 855-862-2223 ext 377
Fax: 855-856-2529

**Brown, Brown & Brown, P.C.**
Christopher Brown Esq.
R. Michael Smith Esq.
Miguel A. Vaca Esq.
6269 Franconia Road
Alexandria, Virginia 22310
Phone: 703.924.0223
Fax: 703.924.1586
brownfirm@lawyer.com
www.metrotriallaw.net
www.facebook.com/virginiaattorney

**Latin Law Group, LLC**
Latrice Latin, Attorney
llatin@latinlawgroupllc.com
www.latinlawgroupllc.com
1455 Old Alabama Road
Suite 195-B
Roswell, GA 30076
Office: 678-890-5868
Fax: 678-853-2405

**Calomeni & Associates**
Dale Calomeni, Attorney
dacalomeni1@bellsouth.net
www.calomenilaw.com
1455 Old Alabama Road
Suite 195-B

J.A.103

Roswell, GA 30076
Office: 770-597-6112
Cell: 770-597-6111

**ALBERT LAW GROUP**
Alvin S. Albert - Attorney at Law
2791 Main St
East Point GA 30344
Phone: 404-781-8567
Fax: 678-278-0988
albertlawgroup@yahoo.com

## ADDITIONAL ATTORNEY REFERENCES

### CALIFORNIA
Nathan Fransen
Fransen and Molinaro, LLP
951.520.9684 – tel
951284.1089 – fax
www.fransenandmolinaro.com

**Law Offices of James F. Pokorny, A P.C.**
James Pokorny
110 West "C" Street Suite 1504
San Diego, CA 92101-3907
Phone: 866-941-3385 (Toll Free) / 619-894-8321
Fax: 619-239-8141
James@jamespokornylaw.com

### FLORIDA
**The Mack Law Firm Chartered**
Jacqulyn Mack
Trial and Appellate Lawyers
2022 Placida Road
Englewood, Florida 34224-5204
(941) 475. 7966 telephone
(941) 475. 0729 facsimile
Jacqulyn@MackLawFirm.org
Sarasota Office:
27 Fletcher Avenue
Sarasota, Florida 34237

Matthew Weidner PA
1229 Central Avenue,
St. Petersburg Florida 33705 Phone
 (727) 894-3159 Fax: (727) 213-6235

7

J. A. 104

weidner@mattweidnerlaw.com

Pomeranz & Associates, P.A.
Mark Pomeranz
1920 E Hallandale Beach Blvd
Hallandale Beach, FL 33009
Office: 305-891-5858

## WASHINGTON DC
Rawle Andrews Jr., Esq.
Regional Vice President - Mideast States
601 E. Street, NW   Suite B8-550
Washington, DC, 20049
Office: 202-434-2047
Fax: 202-434-6470
www.aarp.org
www.createthegood.org

## NEW YORK
Robert E. Brown, Esq.
Law Offices of Robert E. Brown, PC
44 Wall Street, 12th Floor
New York, NY 10005
Wall Street (212) 766-9779
Mott Street/Chinatown (347) 488-6969
Staten Island (718) 979-9779
Facsimile (718) 979-9784
www.RobertBrownLaw.com

David Aker Attorney at Law
23 Southern Road
Hartsdale, New York 10530
Tel. & Fax 914 674-1094
International Fax 914 479-5304
Cell 914 426-1775
daveaker@optonline.net

## DELAWARE
Law Office of Vivian Houghton
800 North West St., 2nd Floor
Wilmington DE
Phone: 302-658-0518
Fax: 302-658-5731
Website: www.vivianhoughton.com
vivianhoughton@comcast.net

8

J. A 105

**MARYLAND**
John D. Burns, Esquire
The Burns LawFirm, LLC
6303 Ivy Lane, Suite 102
Greenbelt, MD 20770
Phone: 301-441-8780
Email: jburns@burnsbankruptcyfirm.com

**INVESTIGATIONS**

**Federal Reserve False Advertising Investigation – 2007**

I participated in an investigation with The Federal Reserve Board regarding the advertising practices of lenders.

**Real Estate Fraud Ring in California – 2007**

In 2007 I uncovered a large mortgage fraud scheme in California which I turned over the Los Angeles FBI (several homeowners and Mona Dobben were involved). I testified at a trial in the American Home Mortgage Bankruptcy for one of the victims, Mona Dobben, which led to a $100,000 judgment in her favor to be paid as a administrative priority claim[1] of $100,000 for aiding and abetting the mortgage broker in a fraud[2] and post petition conduct. American Home appealed.[3] After filing a motion for bond[4] to protect the judgment and a hearing on the matter a second order was entering granting the full payment of the previous order and the appeal was dropped by the Debtors.[5] The transcript of my testimony in this case was published by the Wall Street Journal.[6]

**Insurance Fraud Investigation with TRIAD in 2007-2008.**

I initiated and participated in and insurance investigation with mortgage insurer TRIAD with fraud investigator John Murphy jmurphy@marcorconsult.com and Earl Wall ewall@tgic.com, Senior Vice President, Secretary and General Counsel

**Financial Crisis Inquiry Committee Investigation**

I was contacted by Dixie Noonan a member of The Financial Crisis Inquiry Commission appointed by Congress (FCIC) and asked to share my research related to the mortgage industry and securitization of loans as part of their investigation.

---

[1] http://dm.epiq11.com/AHM/Document/GetDocument/1019292
[2] http://www.prweb.com/releases/2010/02/prweb3596764.htm
[3] http://dm.epiq11.com/AHM/Document/GetDocument/1005825
[4] http://dm.epiq11.com/AHM/Document/GetDocument/1103024
[5] http://dm.epiq11.com/AHM/Document/GetDocument/1151054
[6] http://online.wsj.com/public/resources/documents/amhome_transcript.pdf

J. A. 1016

## Securitization Auditing

I've completed hundreds of audits on loans and securitization trusts created between 2006-2012 uncovering double sold loans, insurance fraud, Federal and State law violations, and fraud which led to settlements, judgments, and protection of homeowner property.

## LAST FOUR YEARS CASE HISTORY

This history is not complete as I'm a consultant to the homeowner legal counsel only on numerous cases. For those cases I am not named as an expert, and do not write a written report.

| MY CV CASES | STATE | CASE NUMBER |
|---|---|---|
| ADELEYE, JOHN | GREENBELT MARYLAND | CASE NOT FILED YET |
| ALBURY, LEWIS | PALM BEACH COUNTY FLORIDA | 50-2010-CA-015384XXXXMB |
| ALLI, ALWYN | GREENBELT MARYLAND | CASE NO. 389549V |
| Andrews, Charles | PALM BEACH COUNTY FLORIDA | CASE NO. 50 2008 CA 037390XXXXMB |
| ANDREWS, CHARLES | PALM BEACH COUNTY FLORIDA | Case No. 50-2007-CA-018679 |
| ANDREWS, ED | SILVER SPRING, MARYLAND | RESEARCH ONLY |
| ANTOLINO, JOHN | BROWARD, FLORIDA | Case No. CACE12-0927-11 |
| ARCURI, GIUSEPPE | BROWARD COUNTY FLORIDA | Case No.: 11-24156 |
| ARNOLD, NATHANIEL | PRINCE GEORGES, MARYLAND | CASE #: CAE 13-14539 |
| AUSTIN, SCOTT | GARRETT COUNTY, MARYLAND | 11-C-13013317 |
| BARNES, SHAWN | BROWARD COUNTY FLORIDA | CASE NO. CACE08037709 |
| BEALL, LAURA | FAIRFAX, VIRGINIA | RESEARCH ONLY |
| BENJAMIN, BARRY | CALIFORNIA | DOCUMENTARY FILM RESEARCH ONLY |
| BIRMINGHAM, JOHN | GREENBELT MARYLAND | BANKRUPTCY NO. 13-25276-WIL |
| BOZZO, ANNA | PALM BEACH COUNTY FLORIDA | CASE NO.: 50-201-CA-020864 |
| BROWN, KEVIN | BROWARD COUNTY FLORIDA | CACE12033263 |
| BUTLER, BRETT | FLOYD COUNTY GEORGIA | AUDIT ONLY |
| CAMPBELL, KIERNAN | SARASOTA COUNTY FLORIDA | CASE NO. 09-CA-2412-NC |
| CANTERO, LINA & ALEJANDRO | MIAMI-DADE FLORIDA | 13-2011-CA-005566-0000-01 |
| CASTILLO-ALVES | BROWARD COUNTY FLORIDA | CASE NO. 08-CA-003379 |
| CHAMBERS, DOUG & MARIBEL | PALM BEACH COUNTY FLORIDA | CASE NO. 2010CA24680 |
| CHARLES, BRENDA | PALM BEACH COUNTY FLORIDA | CASE NO. 50-2008-CA-031466XXXXMB |
| CHEGINI, AZADEH | EASTERN DISTRICT VA | CASE NO. 14-12095-BFK |
| COLLINS, VELMA | BROWARD COUNTY FLORIDA | CASE NO. 12-033313 |
| COMBS, CRYSTAL | GREENBELT MARYLAND | Case No. 13-16996 |
| COMBS, CRYSTAL | GREENBELT MARYLAND | Case No. 13-16996 |
| COMBS, CRYSTAL | GREENBELT MARYLAND | Civil Action No. GJH 14-3372 |
| COURSEN, ELIZABETH | FLORIDA | CASE NO: 8:12-cv-690-T-26EAJ |
| D'AMBROSIO, VITO & SHERRIE | CALIFORNIA | RESEARCH-MOD |

10

J.A.107

| DAMICO, JAMES | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| DICICCO, ROSALIE | VOLUSIA COUNTY FLORIDA | CASE NO. 2010-30601 CICI |
| DOBBEN V. AMERICAN HOME | CALIFORNIA | Case No. CV 09-8007 DSF (CWx) |
| DOBBEN V. AMERICAN HOME | DELAWARE | Case No. 07-11047 (CSS) |
| DWYER, RICHARD | BROWARD, FLORIDA | CACE13006173 |
| EPLING, BRANDON | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| FALERO, ERMES | PALM BEACH COUNTY FLORIDA | CASE NO. 50-2009-CA-015748XXXXMB |
| FEDEWA, ERIC | VIRGINIA | AUDIT ONLY NON JUDICIAL FORECLOSURE |
| FEDEWA, LAWRENCE | VIRGINIA | AUDIT ONLY NON JUDICIAL FORECLOSURE |
| FLOWERS, JASON | BROWARD COUNTY FLORIDA | CASE NO. 12-027762 |
| GATICA, LORENA | BROWARD COUNTY FLORIDA | CASE NO. CACE-08-060376 |
| GIORDANO, LINDA | BROWARD COUNTY FLORIDA | CACE12018135 |
| GRAVES, GRACIE | WASHINGTON DC | RESEARCH ONLY |
| GRULLON, LEANDRO | FLORIDA | RESEARCH ONLY |
| HARDISON | FLORIDA | RESEARCH ONLY |
| HARRIS, DIANE | PALM BEACH COUNTY FLORIDA | Case No. 502009CA019932XXXXMB |
| HARVEY, RON | MANATEE COUNTY FLORIDA | |
| HASSELL, ERNIE | FLORIDA | Case #: 2008-018284-CI |
| HAZLETT, KEN | WEST PALM BEACH FLORIDA | CASE NO. 50 2007CA016175XXXXMB |
| HORNADAY, CHRIS | GEORGIA | RESEARCH ONLY |
| HUMBARGER, ROGER | OREGON | CASE No. CV11-1202-PK |
| JACKSON, DR. DAVID | SOUTHERN DISTRICT NY | CASE NO. 09-cv-6045-RMB(RLE) |
| JARVIS, DEBRA | FLORIDA | CASE NO.:  2009 CA 017506 (AW) |
| JENKINS, MARY & MARK | GREENBELT MARYLAND | Case No. 13-28946-TJC |
| JOHNSON, THOMAS | BROWARD COUNTY FLORIDA | 062012CA033263AXXXCE |
| JOSE SANCHEZ | BROWARD COUNTY FLORIDA | CASE NO. 2010 CA 020665 |
| KASSEM, JEHAN | BLOOMFIELD HILLS MICHIGAN | 2:14-cv-11143-LJM-RSW |
| KILBOURNE, LAWRENCE | EASTERN DISTRICT VA | CASE NO. 12-10649-BFK |
| KODBERG, VADIM | SARASOTA COUNTY FLORIDA | CASE NO. 58-2012-CA-009403 NC |
| LAMACCHIA, DELENA | NORTH CAROLINA | Case No. 07-11047 (CSS) |
| LINGA, RAO | GREENBELT MARYLAND | CASE No:11-29341-WIL |
| LOPEZ, ROSA | FLORIDA | |
| LUFT, CARRIE | DELAWARE ACCREDITED BK | Case No. 09-11516 (MFW) |
| LUFT, CARRIE | LEE COUNTY FLORIDA | Case No. 2:11-cv-703-FtM-29SPC |
| MARKOWITZ | CALIFORNIA | |
| MARTINEZ, VILMA | MIAMI FLORIDA | |
| MCCALL, LORRAINE & DAVID | PALM BEACH COUNTY FLORIDA | Case No. 502010CA012971XXXXMB |
| MEISLOHN, MITCHELL | MARTIN COUNTY FLORIDA | CASE NO. 43-2012-CA-000206CAXXX |
| Melnick, Linda | MANATEE COUNTY FLORIDA | CASE NO.41-2010-CA-002472 |
| MILLER, CATHY | OSCEOLA COUNTY FLORIDA | CASE NO. 2013-CA-001563 |
| MILLER, SHEA | PALM BEACH COUNTY FLORIDA | CASE NO. 50-2010-CA-009008XXXXMB |
| Modelin Rosiers | MANATEE COUNTY FLORIDA | Case No.: 2011-CA-006441 |

11

J.A. 107

| | | |
|---|---|---|
| MULLEN, STEPHAN & MARY | SARASOTA COUNTY FLORIDA | Case No. 09-CA-008178-NC |
| MURRAY, JOSHUA | MIAMI-DADE FLORIDA | 09-36605CA21 |
| NAHAS, STEPHAN | VIRGINIA | Case No. 10-17453-BFK |
| NAHAS, STEPHAN | HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| NAHAS, STEPHAN | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| NESSIM, CAROL | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| NYAMOR, HEMEN | OHIO | |
| O'DONNELL, SIOBHAN | FLORIDA | CASE  NO, 50-2012CA011 948XXXXMB |
| OKORO, CYRIACUS & HENRIETTA | GREENBELT MARYLAND | BANKRUPTCY NO. 13-26641-TJC |
| O'NEAL, CYNTHIA | COWETA COUNTY GEORGIA | CASE NUMBER:  3 08-CV-104-JTC |
| PANKA, JEANNE | MANATEE COUNTY FLORIDA | CASE NO. 2012-CA-007533 |
| PAREDES | MIAMI-DADE FLORIDA | CASE NO. 09-30002-CA-01 |
| PARRA, WILLIAMS | GWINNETT COUNTY GEORGIA | GA-91000981-12 |
| PAULEMON, CARMEL | CHARLOTTE COUNTY FLORIDA | CASE NO. 08-003351-CA |
| PHILLIPPE, MARTINE | PALM BEACH COUNTY FLORIDA | 50-2011-CA-013826XXXXMB |
| PIKE, LALANI | FT. WASHINGTON MD | RESEARCH ONLY |
| POWELL, PATRICK | CUMMINGS GEORGIA | Case No. 11CV-0694 |
| RAWE, ODGER | TILLAMOOK, OR | AUDIT ONLY |
| RESCAP COMMITTEE MOTION | SOUTHERN DISTRICT NY | Case No. 12-12020 (MG) |
| RICCOBON, GUSTAVO | MIAMI-DADE FLORIDA | CASE NO. 2012-CA-040808 |
| RODGERS, REBECCA | BROWARD COUNTY FLORIDA | 062009CA040250AXXXCE |
| ROSIERS, MODELIN | FLORIDA | CASE NO. 41-2011-CA-006441AX |
| RUSH, PAULA | MARYLAND | CASE NO. 12-CO-9003948 |
| RUSH, PAULA | GREENBELT MARYLAND | WMN-07-CV-0854 |
| RUSH, PAULA | DELAWARE | Case No. 07-11047 (CSS) |
| SAINTASSE, EUNICE | BROWARD COUNTY FLORIDA | CASE NO. CACE 12-023009 |
| SAKYI, EBENEEZER | VIRGINIA | AUDIT ONLY |
| SANCHEZ, JOSE | BROWARD COUNTY FLORIDA | CASE NO. 1020665 |
| SHIREY, KARL | LAKE COUNTY FLORIDA | Case No. 08-CA-5556 |
| SINGH | FLORIDA | Case No. 20009-CA-038604-0 |
| SMITH, EUGENIA | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| STAGGS, MARLON | CENTRAL DISTRICT CALIFORNIA | Case No. 2:12-cv-01002-CAS-VBK |
| SOLLER, TAMMY-CAMPELL | SARASOTA FLORIDA | Case No. 2009-CA-002412 |
| STEPHAN, NANCY | PINELLAS COUNTY FLORIDA | Case No. 11-CA-012053 |
| TANNER, CHRISTOPHER | ORANGE COUNTY FLORIDA | CASE NO: 2010-CA-022453-0 |
| UTT, JORDAN | CALIFORNIA | AUDIT ONLY |
| VOLPE, VITO | PALM BEACH COUNTY FLORIDA | 50-2008-CA- 022378XXXXMB |
| WEHAN, MIKE | KAUAI HAWAII | Case No.SACV09-01279 JVS (RNBx) |
| WEHAN, MIKE | CALIFORNIA | Case No.SACV09-01279 JVS (RNBx) |
| WEST, NICOLE | MARTIN COUNTY FLORIDA | 432007CA000311CAAXMX |
| WILSON | WASHINGTON DC APPEAL | APPEAL NO. 12-CV-608 |

12

J.A.108

| WINKLER, DIANA | ORANGE COUNTY FLORIDA | CASE NO. 2008-CA-017519 |
|---|---|---|
| WITTENBERG, MARC | OHIO | Case No. CV-12-781136 |
| WONESH, AL | NEW JERSEY | RESEARCH ONLY |
| WOOD, ERIK | VALRICO FLORIDA | RESEARCH ONLY |
| YAMAMURA, ALEX | CENTRAL DISTRICT CALIFORNIA | CASE NO. BC 420031 |
| ZEWDIE, BELAYNEH | GREENBELT MARYLAND | BANKRUPTCY NO. 14-14421- ADVERSARY NO. 14-00313-TJC |
| ZOLNER, ERIN & KEITH | SARASOTA COUNTY FLORIDA | CASE NO. 2009 CA 007805 NC |
| ZOLNER, ERIN & KEITH | SARASOTA COUNTY FLORIDA | CASE NO. 2010-CA-001928 NC |
| TATUM, LOU | GEORGIA | RESEARCH ONLY |
| BULLOCK, ANDRE | GEORGIA | RESEARCH ONLY |
| SIBLEY, PAT | GEORGIA | RESEARCH ONLY |
| BERMAN, NAOMI | PALM BEACH COUNTY FLORIDA | CASE NO. 2009CA032583 |
| | | |

## DELAWARE LENDER BANKRUPTCY CASE
*American Home Mortgage Holdings Inc.* Case No. Case No. 07-11047 (CSS)

ATTORNEY – Zuckerman Spaeder LLP, Gilbert Randolph LLP
ROLE - Chairperson of homeowner committee.
RESULT- Appointment of Official Committee of Homeowners, Protection of Homeowners rights including appointment of an Ombudsman, protection of loan files, 363(o) ownership transfer protections, and other homeowner protections in Chapter 11 plan.

## TESTIMONY TRANSCRIPTS
**TESTIMONY Dec. 9, 2009 –** *Mona Dobben v. American Home Mortgage Holdings Inc.* Case No. Case No. 07-11047 (CSS)
**TRANSCRIPT -** *Wall Street Journal*
http://online.wsj.com/public/resources/documents/amhome_transcript.pdf

**TESTIMONY** Dec 4, 2014 – Crystal A. Combs Case No. 13-16996
Greenbelt Md. Bankruptcy Case – No Transcript Available

**TESTIMONY** August 4, 2014 – Case No. 2009-CA- 009985
Deutsche Bank National Trust Company as Trustee for AHMIT 2006-1 v. Alan Breslow and Linda Shaffer
Manatee County Florida - Transcript
**The Mack Law Firm Chartered**
Jacqulyn Mack
Trial and Appellate Lawyers
2022 Placida Road
Englewood, Florida 34224-5204
(941) 475. 7966 telephone
(941) 475. 0729 facsimile

J.A. 109

Jacqulyn@MackLawFirm.org

**DEPOSITION TRANSCRIPT**
**DEPOSITION May 30, 2014 –** Case No. 09-36605-CA-21
JPMORGAN CHASE v. Joshua Murray
Miami-Dade Florida - Do not have copy of Transcript
SIMON FERRO
WARGO FRENCH
305.777.6045 (office)
E-mail: sferro@wargofrench.com
Website: www.wargofrench.com

**DEPOSITION Sept. 15, 2014** - CASE NO. 2009 CA 007805 NC – DEUTSCHE BANK v.
Erin Zolner
**The Mack Law Firm Chartered**
Jacqulyn Mack
Trial and Appellate Lawyers
2022 Placida Road
Englewood, Florida 34224-5204
(941) 475. 7966 telephone
(941) 475. 0729 facsimile
Jacqulyn@MackLawFirm.org

**ALL published commentary can be found at:**
http://paularush.com/
http://paularush.me/

**HOEPA MEETING**
    I attended the HOEPA meeting in Washington D.C. in 2007 and spoke at the hearing[7] and my written
comments are available online.[8] I met a lawyer for the Federal Reserve at the HOEPA meeting in 2007 and
was asked to submit my research to assist in a false advertising investigation by the Federal Reserve. The
investigation led to the FTC sending warning letters to cease and desist deceptive advertising.[9]

    I attended the HOEPA meeting in Washington D.C. in 2007 and spoke at the hearing[10] and my written
comments are available online.[11] I met a lawyer for the Federal Reserve at the HOEPA meeting in 2007 and
was asked to submit my research to assist in a false advertising investigation by the Federal Reserve. The
investigation led to the FTC sending warning letters to cease and desist deceptive advertising.[12]

**CONTINUED ADVOCACY FOR HOMEOWNERS**

---

[7] http://www.federalreserve.gov/events/publichearings/hoepa/2007/20070614/transcript.pdf
[8] http://www.federalreserve.gov/SECRS/2007/July/20070726/OP-1288/OP-1288_18_1.pdf
[9] http://www.ftc.gov/opa/2007/09/mortsurf.shtm
[10] http://www.federalreserve.gov/events/publichearings/hoepa/2007/20070614/transcript.pdf
[11] http://www.federalreserve.gov/SECRS/2007/July/20070726/OP-1288/OP-1288_18_1.pdf
[12] http://www.ftc.gov/opa/2007/09/mortsurf.shtm

14
J.A. 110

Beginning in June 2012 I initiated and worked on bringing a motion to form an official homeowner committee in a 51 debtor bankruptcy which included origination, servicing, securitization, and foreclosure entities associated with GMAC Mortgage LLC.

On August 24, 2012, Robert Brown Esq. filed a motion to form an Official Borrower-Homeowner Committee in the Residential Capital, LLC, Case No. 12-12020 (MG) pending in the United States Bankruptcy Court, Southern District of New York.  That motion may be viewed at: http://www.kccllc.net/documents/1212020/1212020120824000000000016.pdf

To support that motion I did extensive research into the case and wrote an amicus brief in support. That document may be viewed at:
http://www.kccllc.net/documents/1212020/1212020120926000000000009.pdf

On September 27, 2012 I attended the hearing in New York and argued for the formation of the committee.  The committee appointment was denied, however special counsel was appointed to represent homeowners in this case.

### CALPERS INVESTOR STUDY

I completed a study of CALPERS investments in mortgage backed securities. The full study is available at: http://paularush.me/

### PERSONAL CASE BACKGROUND

*Rush v. American Home Mortgage, Inc.*
Rush v. Am. Home Mortg., Inc., 2009 U.S. Dist. LEXIS 74129 (D. Md. Aug. 19, 2009)
Rush v. Am. Home Mortg., Inc., 2009 U.S. Dist. LEXIS 112530 (D. Md. Dec. 3, 2009)
Rush v. Am. Home Mortg., Inc., 2010 U.S. Dist. LEXIS 9663 (D. Md. Feb. 4, 2010)
Rush v. Am. Home Mortg., Inc., 2010 U.S. Dist. LEXIS 33630 (D. Md. Apr. 6, 2010)

I filed my own lender liability case pro se in Federal Court in 2007 , prosecuted and settled the case in 2010.   Shortly after filing the lawsuit against American Home Mortgage ("AHM"), the lender filed for bankruptcy in August of 2007.  After seeking relief from stay in the American Home bankruptcy, Sr. Judge William M. Nickerson issued two opinions upholding several counts for fraud, unjust enrichment, violations of the Maryland Consumer Protection Act, Truth in Lending Act violations,[13] and in a second opinion added Real Estate Settlement Act violations.[14]  After filing an equitable subordination motion[15][16] against Deutsche Bank, Wells Fargo Bank, and Goldman Sachs in the AHM bankruptcy venue, the case was settled in mediation and the terms were sealed.

I prosecuted  a separate state court lawsuit styled *Rush v. Trust Appraisers* in Harford County Maryland against my appraiser for fraudulent appraisal practices and that case was also settled out of court.

---

[13] http://law.justia.com/cases/federal/district-courts/maryland/mddce/1:2007cv00854/148269/45
[14] http://law.justia.com/cases/federal/district-courts/maryland/mddce/1:2007cv00854/148269/57
[15] http://dm.epiq11.com/AHM/Document/GetDocument/1429670
[16] http://dm.epiq11.com/AHM/Document/GetDocument/1199530

15

J.A. 111

After discovery that undisclosed lender paid mortgage insurance ("LPMI") was placed on the loan without disclosure in violation of The Homeowner Protection Act of 1998 (known as the "PMI ACT"), I contacted the insurer on the loan, Triad Guaranty Insurance 101 South Stratford Road Winston-Salem, NC 27104, and participated in an insurance fraud investigation against American Home Mortgage.

## MEDIA

### FEATURED IN BOOK *Life Inside the Great Mortgage Meltdown*

Author: NY TIMES Correspondent Edmund Andrews
http://www.businessinsider.com/author/edmund-andrews

I was interviewed and assisted in research for NY Times economic correspondent Edmund Andrews book *Busted -Life Inside the Great Mortgage Meltdown.*[17] Mr. Andrews wrote: *"Paula Rush was a single mother in Churchville, Maryland, not far from Baltimore, who had become a latter-day crusader in the mold of Erin Brockovich."*

### INTERVIEW WITH CBS ATLANTA

Recently I was interviewed by CBS Atlanta[18] on the loan modification problems and robo-signed document problems.

### MEDIA and ARTICLES MENTIONS

I have been interviewed and/or mentioned in articles in Dow Jones, Forbes, AP, Boston.com, Bankrupt.com, International Business Times, Newsday, The Baltimore Sun, Bankruptcy Law Blog, Wall Street Journal, Netscape Money and Business, Yahoo Financial news, and others.

Currently I'm helping with research and consultation for an article that Michelle Conlin of Thompson Reuters is writing related to the improper accounting practices in bond reporting to investors, and problems in mortgage backed securities investor reports, foreclosure liquidations, and bidding at the sale.

### DOCUMENTARY FILMS

WINTON DUPONT FILMS – Documentary Film –not yet released. I was interviewed, acted as consultant, and assisted in tracking loans in securitized trust for the film.

I have assisted various documentary filmmakers in tracking loans in securitization trust and been consulted regarding my insights into how the bad loans factored into the financial and foreclosure crisis.

---

[17] http://www.amazon.com/Busted-Inside-Great-Mortgage-Meltdown/dp/0393067947
[18] http://paularush.me/

16

J. A. 112

**STUDIO LAMBERT** – Documentary Film *THE FLAW* released in 2012

I was interviewed for a documentary film, *The Flaw*[19] and two of my audit clients, Steve Nahas and Edmund Andrews were featured in the documentary film released this year. I received a special acknowledgment in the credits.

---

[19] http://www.theflawmovie.com/

J.A. 113

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------- x

U.S. BANK NATIONAL ASSOCIATION, as
Indenture Trustee for the Benefit of the Insurers and
Noteholders of GreenPoint Mortgage Funding Trust
2006-HE1, Home Equity Loan Asset-Backed Notes,
Series 2006-HE1; SYNCORA GUARANTEE INC.,
formerly known as XL CAPITAL ASSURANCE INC.,
as Controlling Insurer, Note Controlling Party and
Class Ax Insurer; and CIFG ASSURANCE NORTH
AMERICA, INC., as Class Ac Insurer,

Plaintiffs,

- against -

GREENPOINT MORTGAGE FUNDING, INC.,

Defendant.

------------------------------------------- x

: Index No. _____    09600352
: Date purchased: _____
:
: Plaintiffs designate New York County
: as the place of trial.
:
: The basis of the venue is the residence
: of two plaintiffs. *See* C.P.L.R.
: §§ 503(a), (c).
:
: **SUMMONS**
:
: Plaintiffs reside at:
:
: U.S. Bank National Association
: c/o U.S. Bancorp
: U.S. Bancorp Center
: 800 Nicollet Mall
: Minneapolis, Minnesota 55402
:
: Syncora Guarantee Inc.
: 1221 Avenue of the Americas
: New York, New York 10020
:
: CIFG Assurance North America, Inc.
: 825 Third Avenue
: New York, New York 10022

**FILED**

FEB 0 5 2009

NEW YORK
COUNTY CLERK'S OFFICE

To the above-named Defendant:

      You are hereby summoned to answer the complaint in this action and to serve a

copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance, on the Plaintiffs' Attorneys within 20 days after the service of this summons,

exclusive of the day of service (or within 30 days after the service is complete if this summons is

not personally delivered to you within the State of New York); and in case of your failure to

J.A 115

appear or answer, judgment will be taken against you by default for the relief demanded in the

complaint.

Dated: New York, New York
      February 5, 2009

*Constance M. Boland*
Constance M. Boland

*David W. Dykhouse*
Philip R. Forlenza
David W. Dykhouse
Erik Haas
Alexander Shapiro
Benjamin S. Litman

NIXON PEABODY LLP
437 Madison Avenue
New York, New York 10022
Telephone: (212) 940-3000
Fax: (212) 940-3111

Attorneys for U.S. Bank National Association,
as Indenture Trustee

PATTERSON BELKNAP WEBB & TYLER LLP
1133 Avenue of the Americas
New York, New York 10036-6710
Telephone: (212) 336-2000
Fax: (212) 336-2222

Attorneys for Syncora Guarantee Inc. and CIFG
Assurance North America, Inc.

Defendant's addresses:

GreenPoint Mortgage Funding, Inc.
100 Wood Hollow Drive
Novato, California 94945

1100 Larkspur Landing Circle
Suite 360
Larkspur, California 94939

2

J.A. 116