NO. 16-1325

_____

## UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

_____

### ARLENE A. SMITH-SCOTT

Appellant

vs.

### GEORGE LIEBMANN
### HOWARD BANK
### U. S. BANK, NA

Appellees

_____

### BRIEF OF APPELLANT ARLENE A. SMITH-SCOTT

_____

Prepared By:

Arlene A. Smith-Scott, Esq.
Strategic Law Group, LLC
367 Main Street
Laurel, Maryland 20707
Ph:    240.280.2370
Fax:   240.280.2381
StrategicLaw1@Gmail.com

### ORAL ARGUMENT REQUESTED

i

# TABLE OF CONTENTS

<u>Pages</u>

TABLE OF CONTENTS...................................................................................i

TABLE OF AUTHORITIES ........................................................... vi

REQUEST FOR ORAL ARGUMENT ...................................................x

CERTIFICATE OF COMPLIANCE...................................................xi

STATEMENT OF JURISDICTION........................................................1

STATEMENT OF THE CASE...............................................................1

STANDARD OF REVIEW ...................................................................9

ISSUES PRESENTED FOR REVIEW ................................................10

    I.    Whether the Debtor's Chapter 11 Bankruptcy should have been converted when both secured creditors committed fraud and/or misrepresentation to the United States Bankruptcy Court:

        a.   Documents reflecting lack of standing from U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust – 2011 SBC3 submitted and relied upon the following:

           i.   1098 Mortgage Interest Statement From Lehman Brothers in 2007 (JA65)

          ii.   Deed of Appointment by Capital One Bank as Successor by Merger to Greenpoint Mortgage Funding, Inc. in 2008 (JA31)

         iii.   In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, different entity,

GreenPoint Mortgage Funding, Inc. issued the Assignment of Deed to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA40)

iv.    In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, Different Entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Leases and Rent to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA42)

v.    Backdated assignment of Deed of Trust and Security Agreement from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3(JA45)

vi.    Backdated assignment of Endorsement of Deed of Trust Note from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA47)

vii.    Backdated Assignment of Leases and Rents from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA49)

viii.    Listing of Subsidiaries by Sutherland Asset Mgmt. which includes trust at issue - Waterfall Victoria Mortgage Trust 2011 – SBC3(JA50)

ix.    SEC Filing by Sutherland Asset Mgmt. which states that Waterfall Victoria Mortgage Trust 2011 SBC3 did not hold any assets or purchase any notes in the state of Maryland(JA55)

x.    SEC Filing by Sutherland Asset Mgmt. which reflects "0.00" value of the Waterfall Mortgage Trust 2011 – SBC3 at the time of sale (JA58)

ii

xi.  SEC Filing by Sutherland Asset Mgmt. which states Waterfall Victoria Mortgage Trust 2011 – SBC3 was completed prior to the purchase by Waterfall Victoria Master Fund, LTD. (JA58)

xii.  The Loan Sale Agreement is Missing which is referenced in the GreenPoint Mortgage Funding, Inc. issuance of the Assignment of Deed of Trust to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged NoteHolder by Deed and Certification  (JA42)

xiii.  The New York State Division of Corporations reflects that the name of Waterfall Victoria Master Fund, LTD was not registered until September 15, 2011, which was after the purchase of the note on June 23, 2011. (JA61)

xiv.  The governance, Pooling and Servicing Agreement, for Waterfall Victoria Mortgage Trust 2011-SBC3 is missing.

xv.  Deed of Trust Note Without Any Endorsements from Countrywide, Lehman Brothers, Capital One Bank, NA, etc. (JA66)

xvi.  Affidavit from Witness who has investigated mortgage fraud and states that the Waterfall Victoria Mortgage Trust 2011 SBC3 No Longer Exists and there is no Taxpayor ID Number for Trust (JA75)

xvii.  Greenpoint Mortgage, Lehman Brothers and Countrywide have a history of mortgage fraud (JA115)

b.  Howard Bank f/k/a the Patapsco Bank argued that their loan had matured when Appellant has the emails from her legal counsel at that time, Marc R. Kivitz and the legal counsel for Howard Bank f/k/a the Patapsco Bank, Robert Glushakow, which reflects the intent and time line for the modifications.

xviii.  Consent Order Confirming Plan of Reorganization (JA171)

xix.   Note Modification for 511 Main Street (JA179)

xx.    Note Modification for 367 Main Street (JA185)

xxi.   Email dated 9-23-2010 (JA191)

xxii.  First email dated 11-2-2010 (JA192)

xxiii. Second email dated 11-2-2010 (JA193)

xxiv.  Third email dated 11-2-2010 (JA194)

xxv.   Email dated 12-2-2010 (JA195)

xxvi.  Email dated 2-2-2011(JA199)

II.     Whether the Trial Court erred by denying the Appellant's right of due process as defined in the Maryland Declaration of Rights as well as in the Fifth and Fourteenth Amendment of the United States Constitution by refusing to determine whether U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3 actually has standing to file claim against the Appellant.

III.    Whether the Trial Court abused its discretion by failing to hear Appellant's objection to the Chapter 7 Trustee's Motion to Sell Real Property pursuant to *Willemain v. Kivitz*, 764 F.2d 1019 (1985) which states that a Debtor has a pecuniary interest in the outcome of the claim made by U. S. Bank, NA, as Indenture Trustee, for Waterfall Victoria Mortgage Trust 2011-SBC3.

IV.     Whether the Chapter 7 Trustee actions further a fraud perpetrated by U. S. Bank, NA as Indenture Trustee for

Waterfall Victoria Mortgage Trust 2011 SBC3 when he fails to take the minimum actions as defined in Section 704 of Title 11 of the United States Code.

a. Whether the Chapter 7 Trustee breach his fiduciary duty to the debtor's estate as well as to the unsecured creditor when he fails to object to a proof of claim knowing that there are a list of discrepancies including the parent company statement which contradicts the proof of claim..

STATEMENT OF THE FACTS ..............................................................14

STATEMENT OF THE ARGUMENT ................................................17

ARGUMENT ......................................................................................19

CONCLUSION....................................................................................62

CERTIFICATE OF SERVICE ...........................................................63

TABLE OF CONTENTS FOR JOINT APPENDIX...............................64

# TABLE OF AUTHORITIES

## <u>Federal Cases</u>

*Allen v. Wright*, 468 U.S. 737 (1984) . . . . . . . . . . . . . . . . . 43

*Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Baker v. Carr*, 369 U.S. 186 (1962) . . . . . . . . . . . . . . . . . 46

*Bevilacqua v. Rodriguez*, 460 Mass. 762 (2011) . . . . . . . . . . . . 36

*Bullard v. Aluminum Co. of Am.,* 468 F.2d 11, (7th Cir. 1992). . . . . . . . 58

*Caserta v. Tobin,* 175 B.R. 773 (S.D.Fla.1994) . . . . . . . . . . . 51

*City of Los Angeles V. Lyons*, 461 U.S. 95(1983) . . . . . . . . . . . 46

*Clara Mosko v. Colgate Palmolive Company,* No. 13-1840 (4th Cir. 2014) . . 47

*Credit Mgmt. Corp. v. Mosko,* 515 F.3d 319, 324 (4th Cir.2008) . . . . . . 10

*Deutsche Bank National Trust, as Trustee for Long Beach Mortgage Loan Trust 2002-1 v. Brumbaugh,* 2012 OK 3, 270 P.3d 151 (2012) . . . . . . . . . 24, 29

*Devan v. Phoenix Am. Life Ins. Co.*, 400 F.3d 219, 224 (4th Cir. 2005) . . . . 1

*Eaton v. Federal National Mortgage Ass'n*, 462 Mass. 569 (2012) . . . . 36

*Gold v. First Tennessee Bank, NA* 2014 U.S. App. LEXIS 3279 (4th Cir. Feb. 21, 2014) . . . . . . . . . . . . . . . . . . . 56, 57

*Green v. Foley,* 856 F. 2d 660 (4th Cir. 1988) . . . . . . . . . . . 47

*Haugen Constr. Serv.,* 104 B.R. 233 (Bankr. D.N.D. 1989) . . . . . . . . 52

Ibanez v. U. S. Bank National Ass'n, 856 F.Supp.2d 273 (2012) . . . . . 36

*Immerfall*, 216 B.R. 269, (Bankr. D. Minn. 1998) . . . . . . . . 49

*Italian Colors Res. V. Am. Express Travel Related Servs. Co.,* 554 F.3d 300,

(2d Cir. 2009) . . . . . . . . . . . . . . . . 10

*JUÁREZ v. SELECT PORTFOLIO SERVICING INC NC 2005 HE8 NC 2005 HE8*,
No. 11–2431, (Decided February 12, 2013 in the U. S. 1st Circuit) . . . . 26

*Kempf v. Magida,* 37 AD3d 763, 764, 832 N.Y.S.2d 47, 49 (2nd Dept 2007) . 47

*Kittinger v Churchill Evangelistic Assn Inc., 239 AD 253, 267 NYS 719*

*(4th Dept 1933).* . . . . . . . . . . . . . . . 45

*Logan v. JKV Real Estate Servs.*, 414 F.3d 507, 9 510 (4th Cir. 2005) . . . . 1

*Loudoun Leasing Dev. Co. v. Ford Motor Credit Co.*, 128 F. 3d 203, 206

(4th Cir. 1997) . . . . . . . . . . . . . . . . 1

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) . . . . . . . 46

*Ohlendorf v. Am. Home Mortg. Servicing*, (2010 U.S. Dist. LEXIS 31098) . . 24

*Marshall v. Manville Sales Corp.*, 6 F.3d 229 (4th Cir. 1993) . . . . . . . 56

*McConnell v. Federal Election Commission*, 540 U.S. 93 (2003) . . . . . . .46

*Mulligan v. Sobiech,* 131 B.R. 917, 920 (S.D.N.Y.1991) . . . . . . . . 51

*Safety-Kleen, Inc. v. Wyche,* 274 F.3d 846, (4th Cir. 2001) . . . . . . . 1

*Sierra Club v. Morton*, 405 U. S. 727 (1972) . . . . . . . . . . 46

*Southern Indus, Inv., v. Jeremias,* 68 A.D. 2d 178 (App. Div. 2d Dept. 1978) . 57

*State v. McCallum*, 321 Md. 451(1991) . . . . . . . . . . . 58

*Tidewater Fin. Co. v. Williams,* 498 F.3d 249, 254 (4th Cir.2007) . . . . . 10

*Wall St. Associates v. Brodsky*, 257 AD2d 526, 684 N.Y.S.2d 244

(1st Dept 1999) . . . . . . . . . . . . . . . . .47

*Ward v Petri,* 157 NY3d 301 (1898) . . . . . . . . . . . . 45

*Wells Fargo Bank, N.A. v. Erobobo*, 042913 NYMISC, 2013-50675 . . . . . 35

Wells Fargo Bank, N.A. v. Marchione, 887 N.Y.S.2d 615, 620

(App. Div. 2009) . . . . . . . . . . . . . . . . . . 37

*Wells Fargo Bank Minnesota, Nat. Ass'n v Mastropaolo*, 42 AD3d 239,

(2d Dept 2007) . . . . . . . . . . . . . . . . . . 45

*Whitmore v. Arkansas*, 495 U.S. 149 (1990) . . . . . . . . . . 46

*Zak v. Chelsea Therapeutics International, Ltd,* No. 13-2370

(4th Cir. March 16, 2015) . . . . . . . . . . . 31

**<u>Bankruptcy Cases</u>**

*In Re Morgan,* No. 05-34981-SGJ-7, 2007 WL 2669341,

(Bankr.N.D.Tex. Sept.6, 2007) . . . . . . . . . . . . . 51

*In Re Toms,* 229 B.R. 646, (Bankr.E.D.Pa.1999) . . . . . . . . 51

**<u>United States Constitution</u>**

Fifth and the Fourteenth Amendment to the United States Constitution . . 12, 44

Article 24 in the Maryland Declaration of Rights . . . . . . . . . .12, 44

**<u>Statutes and Rules:</u>**

Title 28 of the United States Code Section 158 . . . . . . . . . . 1, 10

Federal Rules Bankruptcy Procedure, Rule 8013 . . . . . . . . . . 10

**<u>Other Authorities</u>**

David Andrew Schultz, ENCYCLOPEDIA OF THE UNITED STATES

CONSTITUTION, (2009) . . . . . . . . . . . . . . . 45, 46

Ward L. Thomas and Leonard J. Henzke, Jr., TRUSTS: COMMON LAW AND

IRC 501(c)(3), (2003)

Public Information Series of the Bankruptcy Judges Division,
REORGANIZATION UNDER THE BANKRUPTCY CODE-CHAPTER 11
(December 1995)

## REQUEST FOR ORAL ARGUMENT

This appeal concerns issues of state's rights and constitutional law that are as central to the operation of the federal bankruptcy system as they are complex. Debtor-Appellant, Arlene A. Smith-Scott, hereby respectfully requests oral argument in this matter because this matter is of constitutional significance. Oral Argument will allow the Debtor-Appellant to more fully address her legal argument.

Respectfully submitted,

/S/  Arlene A. Smith-Scott
Arlene A. Smith-Scott
Strategic Law Group, LLC
367 Main Street
Laurel, Maryland 20707
Ph:    240.280.2370
Fax:   240.280.2381
StrategicLaw1@Gmail.com

x

# CERTIFICATE OF COMPLIANCE

In accordance with Rules 32(a)(7)(B) and (C) of the Federal Rules of Appellate Procedure, the undersigned counsel for appellant certifies that the accompanying brief is printed in 14 point typeface, with serifs, and, including footnotes, contains no more than 14,000 words. According to the word-processing system used to prepare the brief, Microsoft Word, it contains 13,917 words.

/S/  Arlene A. Smith-Scott
Arlene A. Smith-Scott

## STATEMENT OF JURISDICTION

The Court of Appeals for the Fourth Circuit has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158(d), which allows a review of 'final decisions' by the district court when it acts in its bankruptcy appellate capacity." *Safety-Kleen, Inc. v. Wyche,* 274 F.3d 846, (4th Cir. 2001). "We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *Logan v. JKV Real Estate Servs. (In re Bogdan*), 414 F.3d 507, 9 510 (4th Cir. 2005) (citing *Devan v. Phoenix Am. Life Ins. Co. (In re Merry-Go-Round Enters*.), 400 F.3d 219, 224 (4th Cir. 2005)). "Specifically, 'we review the bankruptcy court's factual findings for clear error, while we review questions of law de novo." (quoting *Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.*), 128 F. 3d 203, 206 (4th Cir. 1997).

## STATEMENT OF THE CASE

This Appeal has arisen out of a Chapter 11 Bankruptcy which was filed in the United States Bankruptcy Court for the District of Maryland. The Howard Bank f/k/a the Patapsco Bank filed a motion to have the Chapter 11 bankruptcy converted to a Chapter 7 bankruptcy or to have the case dismissed in its entirety.

They argued the following:

(**a**) the Debtor-in-Possession failed to adequately protect the two properties that was collateralized with the appropriate Deed of Trust on the subject properties, 367 Main Street, Laurel, Maryland and 511 Main Street, Laurel, Maryland, by making timely payments;

(**b**) the Debtor-in-Possession had caused their properties to be "diminutive;" and

(**c**) they argued that the loans had become due and owing under the terms of the loan modifications for each of the properties.

U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 joined the motion to convert the Chapter 11 case to a Chapter 7 case also arguing that "their" collateral was not adequately protected. The Debtor's Schedule D (JA142) and amended Schedule D (JA144) reflected that the debt was contingent and disputed.

**TWO DISTINCT ARGUMENTS BY APPELLANT**

The first argument is that U. S. Bank, NA, as Indenture Trustee for Waterfall Victoria. Mortgage Trust, 2011 SBC3 was not the legal owner of the debt and they were not entitled to enforce on the debt. The Appellant relied upon a collection of documents that were provided by U. S. Bank, NA as well as other sources to support her argument. The documents were as follows:

a. 1098 Mortgage Interest Statement From Lehman Brothers in 2007 (JA65)

b. Deed of Appointment by Capital One Bank as Successor by Merger to Greenpoint Mortgage Funding, Inc. in 2008 (JA31)

c. In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, different entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Deed to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA40)

d. In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, Different Entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Leases and Rent to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA42)

e. Backdated assignment of Deed of Trust and Security Agreement from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3(JA45)

f. Backdated assignment of Endorsement of Deed of Trust Note from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA47)

g. Backdated Assignment of Leases and Rents from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA49)

h. Listing of Subsidiaries by Sutherland Asset Mgmt. which includes trust at issue - Waterfall Victoria Mortgage Trust 2011 – SBC3(JA50)

i. SEC Filing by Sutherland Asset Mgmt. which states that Waterfall Victoria Mortgage Trust 2011 SBC3 did not

hold any assets or purchase any notes in the state of Maryland(JA55)

j. SEC Filing by Sutherland Asset Mgmt. which reflects "0.00" value of the Waterfall Mortgage Trust 2011 – SBC3 at the time of sale (JA58)

k. SEC Filing by Sutherland Asset Mgmt. which states Waterfall Victoria Mortgage Trust 2011 – SBC3 was completed prior to the purchase by Waterfall Victoria Master Fund, LTD. (JA58)

l. The Loan Sale Agreement is Missing which is referenced in the GreenPoint Mortgage Funding, Inc. issuance of the Assignment of Deed of Trust to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged noteholder by Deed and Certification  (JA42)

m. The New York State Division of Corporations reflects that the name of Waterfall Victoria Master Fund, LTD was not registered until September 15, 2011, which was after the purchase of the note on June 23, 2011. (JA61)

n. The governance, Pooling and Servicing Agreement, for Waterfall Victoria Mortgage Trust 2011-SBC3 is missing.

o. Deed of Trust Note Without Any Endorsements from Countrywide, Lehman Brothers, Capital One Bank, NA, etc. (JA66)

p. Affidavit from Witness who has investigated mortgage fraud  and states that the Waterfall Victoria Mortgage Trust 2011 SBC3 No Longer Exists and there is no Taxpayor ID Number for Trust (JA75)

q. Greenpoint Mortgage, Lehman Brothers and Countrywide have a history of mortgage fraud (JA115)

- 4 -

The second argument is that Howard Bank f/k/a the Patapsco Bank loan had not matured.  The Note Modification Agreements from Howard Bank f/k/a the Patapsco Bank in paragraph 5 states, "The term of the loan is extended for four (4) years .   .   . with an additional one (1) year period such that the maturity dates will be extended through April 1, 2015."  The dated should have been April 1, 2016 and the Appellant should not have been denied the additional year as agreement upon in the Note Modifications for 511 Main Street (JA179) and 367 Main Street (JA185).  The following are emails that are relied upon to show intent:

        p.  Email dated 9-23-2010 (JA191)

        q.  First email dated 11-2-2010 (JA192)

        r.  Second email dated 11-2-2010 (JA193)

        s.  Third email dated 11-2-2010 (JA194)

        t.  Email dated 12-2-2010 (JA195)

        u.  Email dated 2-2-2011(JA199)

The above emails references the agreement reached between the Appellant's legal counsel, Marc R. Kivitz, and the legal counsel for the Patapsco Bank, Robert Glushakow, concerning the intent of the parties.

**CASE CONVERTED**

United States Bankruptcy Court in Maryland for Baltimore ordered that cause existed to convert the bankruptcy case from a Chapter 11 to a Chapter 7 bankruptcy, stating the following:

A. The loans with the Howard Bank f/k/a the Patapsco Bank had matured.

B. Appellant attempted to misrepresent the facts in the Disclosure Statement that she prepared from old template, which was Amended to reflect the benefits of the Chapter 11 Bankruptcy Plan from a Chapter 7. (JA200 - JA233)

C. Appellant commingled income with her business even though she supported the income with her monthly operating statements, bank statements and checks. (JA234-JA270)(JA271-JA290)(JA291-JA308)(JA309-JA326)

**INTRODUCTION OF CHAPTER 7 TRUSTEE**

At the time of conversion from a Chapter 11 to a Chapter 7 Bankruptcy, George Liebmann was selected to be the Chapter 7 Trustee. He immediately entered his appearance and filed a motion to intervene into the lawsuit that was filed in the United States District Court for Maryland in Baltimore against U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 by the Appellant stating that he was the real party of interest and had the case

dismissed with prejudice.  The complaint alleged various forms of fraud and other wrongdoing by that entity.

The Chapter 7 Trustee entered into a settlement agreement with U. S. Bank, NA to allow for the sale of real property located at 10 Stanley Drive, Catonsville, Maryland 21228 in exchange for twenty-five thousand dollars.

The Debtor objected to the Motion to Sale and stated that she had a pecuniary interest in the case and that if the Chapter 7 Trustee and the Courts considered the mounting evidence reflecting mortgage fraud and bankruptcy fraud by U. S. Bank, NA, the property should not be sold, if so, no proceeds should be turned over to U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3. (JA337)

The Court ruled, "the Debtor has no standing to object to the sale based on the facts in this case."(JA338) During the proceeding, the Court stated, "we have an attorney on the phone from Florida who represents the client that you say doesn't exist."(JA338) The mere presence of an attorney telephonically was sufficient evidence to establish standing by this Court.

The Court refused to allow any testimony from the Appellant's witness, even though she had provided an Affidavit (JA75-JA96) as well as a Resume which reflects years of experience as well as a history of being relied upon in the Nation's courts. (JA98-JA113).  The Court stated, " and the Court need not hear

- 7 -

any other testimony from you on this issue because you don't have standing to object."(JA338)

### HOWARD BANK F/K/A THE PATAPSCO BANK

Arguing that their loans had matured, the Howard Bank f/k/a the Patapsco Bank received Orders lifting the automatic stay on each of the properties held by Deeds of Trusts, 511 Main Street and 367 Main Street. The Howard Bank f/k/a the Patapsco Bank hired a management company to begin to collect the rents.

In the Circuit Court for Prince George's County, Maryland, the Appellant filed a Fourteen Count Complaint and sought injunctive relief. The Honorable Leo Green heard the Petition for Injunctive Relief and requested documentation from the City of Laurel to support the fact that the properties were mixed use. The hearing was rescheduled. The Chapter 7 Trustee entered its Motion to Intervene as Real Party of Interest and sought dismissal with prejudice.

The Chapter 7 Trustee entered into an agreement to sell 511 Main Street and 367 Main Street, which allows Howard Bank f/k/a the Patapsco Bank to veto any agreement, which means unsecured creditors in violation of the Handbook for Chapter 7 Trustees.

### DUTY TO ACT

The Appellant states that the Chapter 7 Trustee has a duty to act and that duty has been breached, hence the review to the Court of Appeals for the Fourth

Circuit.  The Appellant has also noticed that the United States Bankruptcy Court

for Maryland relies heavily upon the evidence that is presented by the Chapter 7

Trustee and more often than not, have taken their position.  In fact, based on the

Chapter 7 assertions about the Appellant's argument, the Court stated, "And the

issues that you're raising as Mr. Shively says, mostly are hypothetical.  There's no

basis for any of your arguments."  (JA338)

During the bankruptcy proceedings, this Appellant has filed pleadings that

are consistent with her two distinct arguments, yet, the Chapter 7 Trustee

proceeded to enter into agreements with entities without any investigation pursuant

to Section 704 of the United States Bankruptcy Code.  When U.S. Bank, NA filed

their Proof of Claim #6 (JA38), the Appellant filed an Opposition (JA146) which

even included the Maryland Land Records (JA170) that reflected in 2008 the Deed

of Appointment by Capital One Bank (JA31) with five filings on December 16,

2013 which reflects the backdated assignments (JA44)(JA46)(JA48) and the wrong

parties conveyance of assignment of Deed of Trust.(JA40)(JA42)

## STANDARD OF REVIEW

Appeals from bankruptcy courts are governed by 28 U.S.C. § 158, which

states that the district courts have jurisdiction to hear appeals "from final

judgments, orders, and decrees" and "with leave of the court, from other

- 9 -

interlocutory orders and decrees." 28 U.S.C. § 158(a)(1)(2). A district court "may affirm, modify or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr.P. 8013. In reviewing a bankruptcy court's judgment, the district court reviews legal conclusions de novo and findings of facts for clear error. *Tidewater Fin. Co. v. Williams,* 498 F.3d 249, 254 (4th Cir.2007).

A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City,* 470 U.S. 564, 573, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985); *accord Educ. Credit Mgmt. Corp. v. Mosko (In re Mosko),* 515 F.3d 319, 324 (4th Cir.2008).

Mixed questions of law and fact are reviewed "either *de novo* or under the clearly erroneous standard depending on whether the question is predominately legal or factual." *(citing Italian Colors Res. V. Am. Express Travel Related Servs. Co. (In re Am. Express Merchants' Litig.),* 554 F.3d 300, 316 n. 11(2d Cir. 2009).

## ISSUES PRESENTED FOR REVIEW

    I.    Whether the Debtor's Chapter 11 Bankruptcy should have been converted when both secured creditors committed fraud and/or misrepresentation:

        a.   Documents reflecting lack of standing from U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust – 2011 SBC3 submitted and relied upon the following:

- 10 -

i.    1098 Mortgage Interest Statement From Lehman Brothers in 2007 (JA65)

ii.    Deed of Appointment by Capital One Bank as Successor by Merger to Greenpoint Mortgage Funding, Inc. in 2008 (JA31)

iii.    In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, different entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Deed to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA40)

iv.    In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, Different Entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Leases and Rent to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA42)

v.    Backdated assignment of Deed of Trust and Security Agreement from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3(JA45)

vi.    Backdated assignment of Endorsement of Deed of Trust Note from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA47)

vii.    Backdated Assignment of Leases and Rents from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA49)

viii.    Listing of Subsidiaries by Sutherland Asset Mgmt. which includes trust at issue - Waterfall Victoria Mortgage Trust 2011 – SBC3(JA50)

ix.    SEC Filing by Sutherland Asset Mgmt. which states that Waterfall Victoria Mortgage Trust 2011 SBC3 did not hold any assets or purchase any notes in the state of Maryland(JA55)

x.    SEC Filing by Sutherland Asset Mgmt. which reflects "0.00" value of the Waterfall Mortgage Trust 2011 – SBC3 at the time of sale (JA58)

xi.    SEC Filing by Sutherland Asset Mgmt. which states Waterfall Victoria Mortgage Trust 2011 – SBC3 was completed prior to the purchase by Waterfall Victoria Master Fund, LTD. (JA58)

xii.    The Loan Sale Agreement is Missing which is referenced in the GreenPoint Mortgage Funding, Inc. issuance of the Assignment of Deed of Trust to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged NoteHolder by Deed and Certification  (JA42)

xiii.    The New York State Division of Corporations reflects that the name of Waterfall Victoria Master Fund, LTD was not registered until September 15, 2011, which was after the purchase of the note on June 23, 2011. (JA61)

xiv.    The governance, Pooling and Servicing Agreement, for Waterfall Victoria Mortgage Trust 2011-SBC3 is missing.

xv.    Deed of Trust Note Without Any Endorsements from Countrywide, Lehman Brothers, Capital One Bank, NA, etc. (JA66)

xvi.    Affidavit from Witness who has investigated mortgage fraud and states that the Waterfall Victoria Mortgage Trust 2011 SBC3 No Longer Exists and there is no Taxpayor ID Number for Trust (JA75)

xvii.   Greenpoint Mortgage, Lehman Brothers and Countrywide have a history of mortgage fraud (JA115)

b.   Howard Bank f/k/a the Patapsco Bank argued that their loan had matured when Appellant has the emails from her legal counsel at that time, Marc R. Kivitz and the legal counsel for Howard Bank f/k/a the Patapsco Bank, Robert Glushakow, which reflects the intent and time line for the modifications.

II.    Whether the Trial Court erred by denying the Appellant's right of due process as defined in the Maryland Declaration of Rights as well as in the Fifth and Fourteenth Amendment of the United States Constitution by refusing to determine whether U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3 actually has standing to file a claim against the Appellant.

III.    Whether the Trial Court abused its discretion by failing to hear Appellant's objection to the Chapter 7 Trustee's Motion to sell real property pursuant to Willemain v. Kivitz, which states that a Debtor has a pecuniary interest in the outcome of the claim made by U. S. Bank, NA, as Indenture Trustee, for Waterfall Victoria Mortgage Trust 2011-SBC3.

IV.    Whether the Chapter 7 Trustee's actions further a fraud perpetrated by U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 when he fails to take the minimum actions as defined in Section 704 of Title 11 of the United States Code.

a.   Whether the Chapter 7 Trustee breached his fiduciary duty to the debtor's estate as well as to the unsecured creditors when he fails to object to a proof of claim knowing that there are discrepancies which includes audited statements from their parent company that states there is a zero balance, completed before sell took place and never invested in Maryland.

## STATEMENT OF THE FACTS

The Appellant filed a Chapter 11 Bankruptcy case on September 28, 2014 (DKT#1).  This is the second filing for the Appellant.  She actually filed a Chapter 11 Bankruptcy on February 15, 2009, the case number was 09-12469.  That case was confirmed on March 17, 2011.  On March 28, 2014 the first chapter 11 case was dismissed due to the fact that the Appellant believed that she would have had an opportunity to refinance her commercial debt.

The Appellant is the owner of four real properties.  The first is her residence which is located at 1359 Fishing Creek Road, Annapolis, Maryland 21403. The second is an investment property located at 367 Main Street, Laurel, Maryland 20707. The third is an investment property located at 511 Main Street, Laurel, Maryland 20707.  And, the fourth property is 10 Stanley Drive, Catonsville, Maryland 21228. It is a twelve unit apartment building.

The U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 has alleged to be the noteholder, however, the Appellant has argued for a multitude of reasons that it is not possible.

On September 28, 2014, the Appellant filed a Motion to Use Cash Collateral.  On October 9, 2014, the Patapsco Bank filed an Opposition to Motion to Use Cash Collateral. The  court denied the use of cash collateral on October 29, 2014.

- 14 -

On October 17, 2014, Disclosure of Compensation of Attorney for Debtor and Application to Employ Chung & Press Ltd. The Appellant filed amended schedules on December 3, 2014. Order Granting Application to Employ Counsel for the Appellant was entered on December 30, 2014.

On January 5, 2015, the Patapsco Bank filed a Motion for Relief and Notice of Motion on Property located at 367-371 Main Street, Laurel, Maryland 20707. The Patapsco Bank followed their Motion for Relief and Notice of Motion on the two investment properties by filing a Motion to Compel Production of Documents and Response to Interrogatories on February 13, 2015 and on February 17, 2015, the Patapsco Bank filed a Motion to Shorten Time for Debtor to Respond to Motion to Compel Discovery. These documents were withdrawn by the Patapsco Bank. Shortly thereafter, the Patapsco Bank filed a Motion to Dismiss Case for other reasons (Motion to Convert Case to Chapter 7 or, in the Alternative, Dismiss) on February 25, 2015 and followed that Motion with the Motion for Contempt and Sanctions against Debtor for Unauthorized Use of Cash Collateral on February 25, 2015.

On February 18, 2015, the Appellant, without the Counsel of Brett Weiss, responded to the Motion to Shorten Time, Motion to Compel, and Motion for Relief from Stay. On February 19, 2015, the Appellant filed the monthly operating reports that were previously sent to Legal Counsel, Brett Weiss, discussed but not

filed.  On February 18, 2015, the Monthly Operating Reports were filed for the
Period of September 27, 2014 through October 30, 2014.  The Monthly Operating
Reports were filed for the period of January 1, 2015 through January 30, 2015 on
April 1, 2015.

The Appellant, without Counsel of Brett Weiss, filed an Opposition to the
Patapsco Bank's Motion for Contempt on March 8, 2015.   Also, on March 2,
2015, the Appellant filed an Opposition to the Patapsco's Bank Motion to Dismiss
on March 8, 2015.  On March 8, 2015, the Appellant rushed to file a Disclosure
Statement .  The Appellant used the prior confirmed disclosure statement that was
filed in the previous case as a template. On March 16, 2015, the Patapsco Bank's
counsel discussed the error and the Appellant stated that it was an error and later
amended the Disclosure Statement on April 1, 2015,  almost two weeks later.  On
March 8, 2015, the Appellant filed a Chapter 11 Plan of Reorganization.   The
Chapter 11 Plan of Reorganization was also amended on April 1, 2015.

An Emergency Motion to Withdraw as Appellant's Counsel was filed on
March 13, 2015.  The Debtor consented to the Motion after not being able to reach
Counsel.  On March 17, 2015, the Court heard the emergency motion to withdraw
that was filed by Brett Weiss.  The Appellant agreed that it was in her best interest
to allow counsel to withdraw after being unable to contact counsel for an unusually
long period of time, which counsel stated that he was ill.  On April 2, 2015,

Appellant's Counsel filed by Chung and Press reflects that from the middle of February, 2015, there was no activity on this case.

On March 25, 2015, the Appellant filed an Objection to Claim Number #6, which was filed by U. S. Bank, National Association.  On March 25, 2015, the Appellant filed an Objection to Claim Number #3, which was filed by The Patapsco Bank.

On March 27, 2015, the Appellant sent discovery requests to U. S. Bank, National Association as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011- SBC3  and  to the Patapsco Bank .

The U.S. Bank, National Association filed a line partially joining in relief sought by the Patapsco Bank on March 31, 2015.   On April 2, 2015, the Appellant objected to the participation of U. S. Bank, National Association arguing lack of standing.

On April 7, 2015, the Court entered an order converting case from Chapter 11 to Chapter 7.   On April 9, 2015, the Appellant filed the Notice of Appeal to the U. S. District Court.

## STATEMENT OF THE ARGUMENT

The Appellant argues that the Judicial System shall hold sacred the concepts of justice, fairness and equity for all of its citizens and that when faced fraud, whether it is mortgage fraud or bankruptcy fraud as in this case, all parties of the

judicial system are charged with a duty to protect the laws of the land including Chapter 7 Trustees who are officers of the court as well as fiduciaries protecting the best interest of the Debtor's estate, Debtors, secured creditors as well as unsecured creditors.   A Chapter 7 Trustee that acts in a manner that furthers the fraud becomes a conspirator in that fraud.

"We have an attorney on the phone from Florida who represents the Client that you say doesn't exist" which was held out as sufficient evidence by Judge James F. Schneider, who surmised that because Alan J. Perlman, Esq., was participating telephonically and represented U. S. Bank, NA, as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 at the hearing on November 5, 2015, that his mere presence was proof of the existence of a trust, which undermined the many laws governing Trust and Trust Formation, Uniform Commercial Code, the Statute of Frauds, the Constitution of the United States and others, which are too numerous to list.

This Appellant acknowledges filing the monthly operating reports late, in her previous bankruptcy filing late filings were always accepted, however, her actions does not compare to the actions of the unsecured creditors and her amended disclosure statement demonstrated the ability to pay all creditors more than they would have received in this Chapter 7 Bankruptcy.

# ARGUMENTS

# I

**Whether the Debtor's Chapter 11 Bankruptcy should have been converted when both secured creditors committed fraud and/or misrepresentation:**

    c.  Documents reflecting lack of standing from U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust – 2011 SBC3 submitted and relied upon the following:

        i.    1098 Mortgage Interest Statement From Lehman Brothers in 2007 (JA65)

        ii.   Deed of Appointment by Capital One Bank as Successor by Merger to Greenpoint Mortgage Funding, Inc. in 2008 (JA31)

        iii.  In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, different entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Deed to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA40)

        iv.  In 2011, after Deed of Appointment and Certifications by Capital One Bank in 2008, Different Entity, GreenPoint Mortgage Funding, Inc. issued the Assignment of Leases and Rent to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged Note-Holder by Deed and Certification  (JA42)

        v.   Backdated assignment of Deed of Trust and Security Agreement from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3(JA45)

vi.  Backdated assignment of Endorsement of Deed of Trust Note from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA47)

vii.  Backdated Assignment of Leases and Rents from Waterfall Victoria Master Fund, LTD to Waterfall Victoria Mortgage Trust 2011 SBC3 (JA49)

viii.  Listing of Subsidiaries by Sutherland Asset Mgmt. which includes trust at issue - Waterfall Victoria Mortgage Trust 2011 – SBC3(JA50)

ix.  SEC Filing by Sutherland Asset Mgmt. which states that Waterfall Victoria Mortgage Trust 2011 SBC3 did not hold any assets or purchase any notes in the state of Maryland(JA55)

x.  SEC Filing by Sutherland Asset Mgmt. which reflects "0.00" value of the Waterfall Mortgage Trust 2011 – SBC3 at the time of sale (JA58)

xi.  SEC Filing by Sutherland Asset Mgmt. which states Waterfall Victoria Mortgage Trust 2011 – SBC3 was completed prior to the purchase by Waterfall Victoria Master Fund, LTD. (JA58)

xii.  The Loan Sale Agreement is Missing which is referenced in the GreenPoint Mortgage Funding, Inc. issuance of the Assignment of Deed of Trust to Waterfall Victoria Master Fund, LTD when Capital One was the Alleged NoteHolder by Deed and Certification  (JA42)

xiii.  The New York State Division of Corporations reflects that the name of Waterfall Victoria Master Fund, LTD was not registered until September 15, 2011, which was after the purchase of the note on June 23, 2011. (JA61)

- 20 -

xiv.  The governance, Pooling and Servicing Agreement, for Waterfall Victoria Mortgage Trust 2011-SBC3 is missing.

xv.  Deed of Trust Note Without Any Endorsements from Countrywide, Lehman Brothers, Capital One Bank, NA, etc. (JA66)

xvi.  Affidavit from Witness who has investigated mortgage fraud and states that the Waterfall Victoria Mortgage Trust 2011 SBC3 No Longer Exists and there is no Taxpayor ID Number for Trust (JA75)

xvii.  Greenpoint Mortgage, Lehman Brothers and Countrywide have a history of mortgage fraud (JA115)

a.  **Howard Bank f/k/a the Patapsco Bank argued that their loan had matured when Appellant has the emails from her legal counsel at that time, Marc R. Kivitz and the legal counsel for Howard Bank f/k/a the Patapsco Bank, Robert Glushakow, which reflects the intent and time line for the modifications.**

i.  Consent Order Confirming Plan of Reorganization (JA171)

ii.  Note Modification for 511 Main Street (JA179)

iii.  Note Modification for 367 Main Street (JA185)

iv.  Email dated 9-23-2010 (JA191)

v.  First email dated 11-2-2010 (JA192)

vi.  Second email dated 11-2-2010 (JA193)

vii.  Third email dated 11-2-2010 (JA194)

     viii.   Email dated 12-2-2010 (JA195)

     ix.   Email dated 2-2-2011(JA199)

Mortgage Securitization Fraud was one of the factors of the Great Recession in 2008. In the aftermath of the housing market bubble, many lenders did not have the necessary documentation to foreclosure on delinquent homeowners, therefore, they sold their debt knowing of defects and hid the notes in various types of financial vehicles which would be difficult to trace.

The Appellant states that in her case, she has altered documents, backdated assignments, wrong party conveyance of assignments, missing trust governance, missing loan sale agreements, no endorsements from assignments, mass filings in the Maryland Land Records, name of entity was not registered until after loan sale, lack of EIN number from the internal revenue service for trust, SEC filing that states no investment in geographic location, trust completion in 2011, etc., which spells mortgage fraud and bankruptcy fraud, yet, this Court has turned a blind eye.

### a. 1098 Mortgage Interest Statement from Lehman Brother in 2007.

This Appellant received a 1098 Mortgage Statement from Lehman Brothers, monthly mortgage statements from Lehman Brothers and she paid

Lehman Brothers who allowed GreenPoint Mortgage Funding, Inc. to table fund the loan at the time of origination.

### b. The Assignment of Deed of Trust, from Greenpoint Mortgage Funding, Inc. to Waterfall Victoria Master Fund, Ltd does not contain nor have any connection to the mortgagee of record.

In the Maryland Land Records, a Deed of Appointment took place on September 29, 2008, which stated that "Capital One Bank as Successor by Merger from Greenpoint Mortgage Funding, Inc." had the authority to enter into conveyances. On March 16, 2011, Capital One Bank as Successor by Merger from Greenpoint Mortgage Funding, Inc. entered their representative's appearance. Yet, the documents relied upon by U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 to prove ownership of the debt in the Bankruptcy Court does not contain an endorsement by Capital One Bank nor Lehman Brothers.

The Assignment of the Deed of Trust states, "the undersigned ("Assignor") hereby assigns and transfers to Waterfall Victoria Master Fund, LTD,  having offices located at 1185 Avenue of the Americas, New York, New York, 10036 ("Assignee") its successors or assigns, WITHOUT RECOURSE,  the undersigned interests in and to that certain Deed of Trust in the original principal amount of $967,500.00 dated as of February 22, 2007 and recorded on March 8, 2007 in Liber 25320 Folio 280 in the Land Records for Baltimore County, Maryland.  The

foregoing assignment is being made without representation or warranty, express or implied, except as specifically set forth in Article 8 of the certain Loan Sale Agreement executed by and among the Assignor and the Assignee dated June 17, 2011("Agreement")."

The Assignor was Greenpoint Mortgage Funding, Inc.   The document was signed by Douglas Bottner, Senior Vice President of Greenpoint Mortgage Funding, Inc. with a dating of June 23, 2011.

**c.  There are only three documents that have been supplied by U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011, SBC3 which attempts to provide the necessary writing to reflect the assignments from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust, 2011, SBC3 are each "BACK-DATED" and they fail to meet the requirements under the Statute of Frauds as well as the Uniform Commercial Code for Maryland.**

Backdating is defined by "dating any document by a date earlier than the one on which the document was originally drawn up. Under most circumstances, backdating is seen as fraudulent and illegal."   Back-Dating a Deed or an Assignment of Deed renders it void because it cannot meet the requisite statute of frauds.

In the case at hand, there are three documents that U. S. Bank, NA as Indentured Trustee for Waterfall Victoria Mortgage Trust 2011, SBC3 has relied upon in United Stated States Bankruptcy Court to prove ownership of the debt.

- 24 -

1. The Assignment of Deed of Trust and Security Instrument Agreement.

2. The Assignment of Endorsements of Deed of Trust Note.

3. The Assignment of Leases and Rents.

Each of these documents have the same problems:

The Assignment of Deed of Trust and Security Agreement from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 were **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 as Dkt. 341-2, Page 7 of 9, Filed 1/31/14.  It states:

> "IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Deed of Trust and Security Agreement as of this 11th day of December, 2013 to be effective as of October 19, 2011."

The Assignment of Interests in Assignment of Leases and Rents from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 was **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 as Dkt. 341-2, Page 9 of 9, Filed 1/31/14.  It states:

> "IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Deed of Trust and Security Agreement as of this 11th day of December, 2013 to be effective as of October 19, 2011."

The Assignment of Indorsement of Deed of Trust Note from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 was **backdated** by more than **two years**. It was filed by the Creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3 states the following:

> "IN WITNESS WHEREOF, the Assignor has executed and delivered this Assignment of Indorsement of the Deed of Trust Note as of this 11th day of December, 2013 to be effective as of October 19, 2011."

In the case of *Deutsche Bank National Trust, as Trustee for Long Beach Mortgage Loan Trust 2002-1 v. Brumbaugh,* 2012 OK 3, 270 P.3d 151 (2012) the court stated the following;

> "It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit, showing the history of the note, so the defendant is duly apprised of the rights of the plaintiff  .  .  ."

*Ohlendorf v. Am. Home Mortg. Servicing*, (2010 U.S. Dist. LEXIS 31098), on March 30, 2010, the Court stated that the process of recording assignments with backdated effective dates may be improper, and thereby taint the notice of default ruled when faced with back-dated assignments:

> "On or about June 23, 2009, defendant T.D. Service Company [(a foreclosure processing service)] filed a notice of default in Placer

County, identifying Deutsche Bank as beneficiary and AHMSI as trustee. In an assignment of deed of trust dated July 15, 2009, MERS assigned the deed of trust to AHMSI. This assignment of deed of trust purports to be effective as of June 9, 2009. A second assignment of deed of trust was executed on the same date as the first, July 15, 2009, but the time mark placed on the second assignment of deed of trust by the Placer County Recorder indicates that it was recorded eleven seconds after the first. In this second assignment of deed of trust, AHMSI assigned the deed of trust to Deutsche. This assignment indicates that it was effective as of June 22, 2009. Both assignments were signed by Korell Harp. The assignment purportedly effective June 9, 2009, lists Harp as vice president of MERS and the assignment purportedly effective June 22, 2009, lists him as vice president of AHMSI. Six days later, on July 21, 2009, plaintiff recorded a notice of pendency of action with the Placer County Recorder. In a substitution of trustee recorded on July 29, 2009, Deutsche, as present beneficiary, substituted ADSI as trustee."

Banks frequently sell and buy mortgages from each other. An "assignment" is the document that is the legal record of this transfer from one entity to another. Assignments typically contain the following information:

- the name of the assignor (the current owner of the loan) and assignee (the new owner)
- the names of the borrowers
- the date of the mortgage

- the original amount of the mortgage
- the original mortgage recording information, and
- the property's legal description.

The assignment of mortgage serves as proof of the transfer of the loan from one party to another.   In the case of *JUÁREZ v. SELECT PORTFOLIO SERVICING INC NC 2005 HE8 NC 2005 HE8*, No. 11–2431, (Decided February 12, 2013 in the U. S. 1st Circuit), the court found that the district court erred in holding that a valid confirmatory assignment had taken place and that no plausible claim could be made to the contrary when the following were the facts of the case:

On August 5, 2005, Juárez purchased a house in Suffolk County, Massachusetts.  She financed the purchase by taking out two loans. After closing, the note and mortgage exchanged hands several times within the secondary mortgage market.

In order to pool and securitize loans, Asset Backed Securities established a trust in the form of a real estate mortgage investment conduit ("REMIC").  The trust was governed by a Pooling and Servicing Agreement ("PSA").  Juarez alleged that the assignment was void because it was contrary to the trust's governing document.

The Court ruled that a valid written assignment must have taken place before foreclosure proceedings began. That previous assignment need not be in recordable

form, but it should exist in written form. Since defendants have not produced that document, they could not assert without further discovery that a valid confirmatory assignment took place.

### d. Intent and Use of "Back-dated" Assignment of Deed of Trust and Security Agreement, "Back-dated" Assignment of Endorsement of Deed of Trust Note and "Back-dated" Assignment of Leases and Rents

The Appellant states that the "Back-Dated" Assignment of Deed of Trust and Security Agreement, the "Back-Dated" Assignment of Endorsement of Deed of Trust Note and the "Back-Dated" Assignment of Leases and Rent are void per the Maryland , Real Property, Statute of Frauds § 5-103, Writing required to assign, which states, "grant, or surrender interests in land, No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it, or his agent lawfully authorized by writing, or by act and operation of law."

The Appellant also relies upon Title 4, Requisites of Valid Instruments, Subtitle 1, General Rules § 4-106, which states that  Mandatory affidavits; consideration and disbursement,

"(a) No mortgage or deed of trust is valid except as between the

parties to it, unless there is contained in, endorsed on, or attached to it

an oath or affirmation of the mortgagee or the party secured by a deed

of trust that the consideration recited in the mortgage or deed of trust is true and bona fide as set forth.

(b)(1) No purchase-money mortgage or deed of trust involving land, any part of which is located in the State, is valid either as between the parties or as to any third party unless the mortgage or deed of trust contains or has endorsed on, or attached to it at a time prior to recordation, the oath or affirmation of the party secured by the mortgage or deed of trust stating that the actual sum of money advanced at the closing transaction by the secured party was paid over and disbursed by the party secured by the mortgage or deed of trust to either the borrower or the person responsible for disbursement of funds in the closing transaction or their respective agent at a time no later than the execution and delivery of the mortgage or deed of trust by the borrower."

The Appellant argues that pursuant to§ 4-109 of the Maryland Code governing, Grants which are defective, the assignments by Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 are defective because the "Back-Dating" renders the documents void and invalid.

Here, the Assignments contain a defective acknowledgment as well as an affidavit of consideration due to the fact that the assignments are back-dated.

### e. Missing Endorsements

In the Appellant's case, the note does not contain an endorsement reflecting ownership by other entities. There was no endorsement from Lehman Brothers, who held out its ownership interest of the debt; no endorsement from Capital One Bank as Successor by Merger; and no endorsement from Countrywide who sent welcome letters to the Appellant.

> "It is a fundamental precept of the law to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit, showing the history of the note, so the defendant is duly apprised of the rights of the plaintiff . . ."

In the case of *Deutsche Bank National Trust, as Trustee for Long Beach Mortgage Loan Trust 2002-1 v. Brumbaugh,* 2012 OK 3, 270 P.3d 151 (2012).

### e. SEC Filing by Sutherland Asset Management Corp.

On January 5, 2015, the company, Sutherland Asset Management Corp. filed its S/11-A filing which contained a list of all of the subsidiaries, which included

Waterfall Victoria Mortgage Trust 2011 SBC3.  The S/11-A filing contained audits and certifications that the information contained was true and accurate.  It stated the value of the trust, what was included in the trust, when it was completed and its holdings based on geography.

(i)     The S/11-A filing stated that Waterfall Victoria Mortgage Trust 2011 SBC3 has a zero balance as of September, 2014.

(ii)     The S/11-A filing stated that Waterfall Victoria Mortgage Trust 2011 SBC3 was completed in 2011. This was two years prior to the transfer from Waterfall Victoria Master Fund, Ltd to U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011 SBC3.

(iii)     The S/11-A filing stated that the Trust, when it did hold property, never had ownership interest in any properties in the entire state of Maryland.

The statements made in the S/11-A filing by Sutherland Asset Management Corp. completely contradicts the assertions made by U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3.

**RELIANCE UPON SEC FILING**

The courts have relied upon SEC filings as evidence in other cases.  For example, in *Zak v. Chelsea Therapeutics International, Ltd,* No. 13-2370 (4th Cir. March 16, 2015), the plaintiffs brought securities fraud claims against Chelsea Therapeutics based on its statements and omissions concerning the likelihood of FDA approval for its new drug, Northera.  In that case, the Court of Appeals in the Fourth Circuit, explained that on a motion to dismiss, documents outside the complaint may generally only be considered when those documents are integral to and explicitly relief upon in the complaint and the plaintiffs do not challenge their authenticity.

> **f.  Missing Loan Sale Agreement Which is Referenced in the Back-Dated Assignments from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3.**

It is significant that the "Loan Sale Agreement" is referenced in the Assignment of Deed of Trust from GreenPoint Mortgage Funding to Waterfall Victoria Master Fund, Ltd.,  however, this document has never been produced. Yet, this document plays a key role in establishing the terms, consideration, dates, etc.

The United States Securities and Exchange Commission provides a list of the type of documentation that can be found in the Mortgage Loan Sale Agreement:

"<u>Agreement</u>" means this Mortgage Loan Sale Agreement, including all Exhibits and Schedules hereto.

"<u>Assigned Rights and Obligations</u>" means all of Seller's right, title, interest, obligations and liabilities in, to and under the Loan and the Loan Documents, including, without limitation, (a) all of Seller's rights to principal, interest, fees, costs and expenses payable thereunder after the Closing Date and all of Seller's other rights and claims thereunder (including all rights in any receivership estate which exists in connection with the Loan Documents), (b) all of Seller's payment and performance obligations into and under the Loan and the Loan Documents arising after the Closing Date, and (c) the Exit Fee.

"<u>Closing</u>" means the occurrence of all acts required by this Agreement to assign and transfer the Assigned Rights and Obligations from Seller to Buyer and for Buyer to accept and assume the Assigned Rights and Obligations from Seller.

"<u>Closing Documents</u>" means all documents described herein that are required to be delivered at the Closing by Seller and Buyer, as applicable.

"<u>Collateral</u>" means the real and personal property, guaranty, pledge and/or other property securing the Note as described in the Loan Documents.

"<u>Credit Party</u>" means any borrower, guarantor, indemnitor or any other party obligated to Seller under any of the Loan Documents.

"<u>Deposit</u>" means the amount identified as the Deposit in **Schedule 1** attached hereto, together with all interest which accrues thereon following the deposit thereof into Escrow.

"<u>Effective Date</u>" means the date of this Agreement as set forth above.

"Loan" means the loan described and evidenced and/or secured by the Note and the other Loan Documents.

"Loan Sale Agreement" means that certain Loan Agreements that governs the terms and conditions of the Loan.

"Loan Documents" means the Note, the deed of trust or mortgage, security agreement, UCC financing statements, guaranty, letter of credit, pledge, loan agreement and/or other instruments creating a security interest in, and/or a lien or encumbrance upon any of the Collateral or other documents related to, etc.

"Note" means, collectively, (i) that certain Promissory Note dated and with the original principal amount and (ii) that certain Promissory Note dated and with the original principal amount, evidencing the Loan.

"Purchase Price" means the sum identified as the Purchase Price.

"Seller's Asset Manager" means the employee of Seller who is the primary asset manager of the Loan.

### g. Missing Governance of the Trust – Pooling and Servicing Agreement

A PSA is a legal document, usually filed with the Securities and Exchange Commission that defines the rights and obligations of the parties involved. A PSA defines what should have occurred with the promissory note. The Pooling and Servicing Agreement contains all of the provisions that governed the trust.

In the case at hand, there is no Pooling and Servicing Agreement that has been submitted by U. S. Bank, NA, as Indenture Trustee for Waterfall Victoria

Mortgage Trust, 2011 SBC3. The Appellant has been unable to obtain a Pooling and Servicing Agreement from the Securities and Exchange Commission because Waterfall Victoria Mortgage Trust 2011 SBC3 no longer exists, it was completed in 2011. By 2013, Sutherland Asset Management Corp. changed the type of operating business which required that several of the subsidiaries had to be closed which means that Waterfall Victoria Mortgage Trust 2011 SBC3 does not exist. By failing to provide a Pooling and Servicing Agreement, the state law governing Trust, places limits upon its authority to negotiate, accept or sale the note. It is argued that Waterfall Victoria Mortgage Trust 2011 SBC3 does not exist, which is why there is no Pooling and Servicing Agreement.

The court in *Wells Fargo Bank, N.A. v. Erobobo*, 042913 NYMISC, 2013-50675 provides an analysis of the relevancy of the Pooling and Servicing Agreement (PSA). "The assignment of the Defendant's note and mortgage, **having not been assigned from the Depositor to the Trust, is therefore void as in being in contravention of the PSA**. The evidence submitted by Defendant that the note was acquired after the closing date and that assignment was not made by the Depositor, is sufficient to raise questions as to whether the Trust owns the note and mortgage.

### h.  New York State Division of Corporation – Name Registration

The New York State Division of Corporation provides a history of each company that is registered to do business. It is available to the public for free and it provides basic information about the various business entities registered to do business in the state of New York.

The Waterfall Victoria Master Fund, LTD is listed on the New York State Division of Corporation as having the name "Waterfall Victoria Master Fund, Ltd" registered on September 15, 2011. Yet, the Assignment of Deed of Trust from GreenPoint Mortgage Funding, Inc. to Waterfall Victoria Master Fund, Ltd is dated June 23, 2011.

### i. Cases with Significantly Less Evidence has Shown Mortgage Fraud Which Invalidated Ownership of Debt

There are cases in which the courts have ruled with significantly less evidence to support mortgage fraud. In the case of *Ibanez v. U. S. Bank National Ass'n*, 856 F.Supp.2d 273 (2012) the court ruled that the foreclosure sale was invalid because the foreclosure banks were not the mortgagees of record.

Here, in our case, the purported "Assignment of the Deed of Trust" and the "Assignment of Rents and Leases" were not signed by the mortgagee of record. It was signed by Greenpoint Mortgage Funding, Inc., who no longer held the debt.

*Bevilacqua v. Rodriguez*, 460 Mass. 762 (2011) and *Eaton v. Federal National Mortgage Ass'n,* 462 Mass. 569 (2012) held that the purchaser at an invalid nonjudicial foreclosure sale did not have title to the property.

- 37 -

Here, the Assignment of Deed of Trust from Waterfall Victoria Master Fund, Ltd to Waterfall Victoria Mortgage Trust 2011 SBC3 had a value of "0.00" at the time of the purported transfer and filing in the Maryland Land Records based on the audited statements found in the S/11-A Filing by Sutherland Asset Management Corp with the SEC. And, this same document "Assignment of Deed of Trust" was back dated by almost two (2) years.

*In re Maisel*, 378 B.R. 19, 22 (Bankr. D. Mass. 2007), the courts found that there was no evidence of a proper assignment of the mortgage or the note to the foreclosing party prior to foreclosure.

In the case at hand, there is no assignment from Capital One Bank as Successor by Merger to Greenpoint Mortgage Funding, Inc. who entered its appearance into the Appellant's prior bankruptcy case and certified that they were the record owner of the debt. There was no assignment by Lehman Brothers who issued a 1098 statement in 2007. Nor was there an assignment from Countrywide Mortgage who appeared to have purchased the debt.

*Wells Fargo Bank, N.A. v. Marchione*, 887 N.Y.S.2d 615, 620 (App. Div. 2009), the court found no evidence of a proper assignment of the mortgage to the foreclosing party prior to foreclosure. In the case at hand, there is a conveyance by Greenpoint Mortgage Funding, Inc. to Waterfall Victoria Master Fund, Ltd,

- 38 -

however, there is no conveyance to Greenpoint Mortgage Funding, Inc. from any entity, including Capital One Bank.

## MORTGAGE FRAUD

The Federal Home Loan Mortgage Corporation (**FHLMC**), known as Freddie Mac, is a public government-sponsored enterprise (GSE), which states that Mortgage fraud continues to be one of the fastest growing crimes in the United States and is generally classified into one of three categories:

- Fraud for housing or property
- Fraud for profit
- Fraud for criminal enterprise

Each fraud type is unique based upon the intent of the fraud scheme and the perpetrators involved. Fraud for profit, also known as "industry insider fraud", is the most costly type of fraud. These schemes often involve a group of people who play multiple roles in the fraud. The initiators often receive a larger percentage of the profit while others may be paid several thousand dollars for their part in the misrepresentation.

*Common themes of fraud for profit schemes*

- Often involves multiple industry professionals/insiders
- Fraud is committed throughout multiple transactions
- Includes numerous misrepresentations and omissions
- The borrowers involved may be unaware of the scheme
- Participants are often well compensated for the role they played
- Property appraisals contain misrepresentations or value issues

- Participants may include straw borrowers who do not intend to repay the loan

Ben Protess, the author of "U.S. Accuses Bank of America of a 'Brazen' Mortgage Fraud, N.Y. TIMES, Oct. 24, 2012, states that, " Judges are now confronting a number of crucial questions arising from the subprime markets. First, courts must interpret and apply laws prohibiting unfair and deceptive conduct in consumer transactions."

Well-established commercial and real-property law includes (a) a party cannot foreclose on a mortgage unless it is the mortgagee (or its agent); (b) a mortgage can be enforced only by a person who can enforce the underlying debt; (c) a mortgage is but incidental to the promissory note; (d) and one cannot generally convey better title than one has.

## I.B   HOWARD BANK F/K/A THE PATAPSCO BANK

The Chapter 11 Bankruptcy was confirmed on March 21, 2011.  The disclosure stated contained the following language, where the ending date of the four years should have been March 30, 2015 instead of March 30, 2014, which equals the specified four (4) years. The language was copied over and included in the Order which stated the following on 367 Main Street:

- 40 -

> 3.6.1. The Class 6 Allowed Secured Claim and lien shall be modified to a new principal balance of Four Hundred Thirty Thousand Three Hundred Twenty-Nine Dollars and Fifty-two Cents  .  .  . beginning April 1, 2011, with a fifteen-day grace period for all payments and no pre-payment penalty or fee and with a balloon payment of the then unpaid balance in four (4) years on March 30, 2014  .  .  . the Debtor shall be provided with the right to extend the term of this modified loan for an additional one (1) year period through and including April 1, 2015 (the "Extension Right") without the payment of any extension fee.

The same problem occurred on the property located at 511 Main Street.  The disclosure stated contained the following language, where the ending date of the four years should have been March 30, 2015 instead of March 30, 2014, which equals the specified four (4) years:

> 3.7.1. The Class 7 Allowed Secured Claim and lien shall be modified to a new principal balance of Four Hundred Nineteen Thousand Seven Hundred Ten Dollars and Forty-four Cents ($419,710.44)  .  .  . beginning April 1, 2011, with a fifteen-day grace period for all payments and no pre-payment penalty or fee and with a balloon payment of the then unpaid balance in four (4) years on March 30, 2014  .  .  .  the Debtor shall be provided with the right to extend the term of this modified loan for an additional one (1) year period through and including April 1, 2015 (the "Extension Right") without the payment of any extension fee.

The Modification on 511 Main Street was signed on 16th of July, 2011, with the period of the modification commencing on March, 2011.  It was a Four Year Term with a one year extension at a rate of 4.500%.

The Modification on 367 Main Street was signed on the 16th of July, 2011, with the period of the modification commencing on March, 2011. It was a Four Year Term with a one year extension at a rate of 4.500%.

The four year term should have begun March, 2011 and ended March, 2015, which is 48 months or 4 years. And the one year term should have begun April 2015 and went through March 30, 2016.

The Appellant is in receipt of emails from her legal counsel, Marc R. Kivitz, and the legal counsel for the Howard Bank f/k/a the Patapsco Bank, Robert Glushakow, which supports her statements.

A. The Debtor relies on the email dated Thursday, September 23, 2010 from the Debtor's Attorney, Marc R. Kivitz to the Debtor concerning The Patapsco Bank. He states, "Rob Glushakow just called me to tell me that he has not had a chance yet to read my letter  .  .  . He wanted to let me know that he is not ignoring us. . . I gave him the "thumbnail" sketch of our proposal.  .  . (**Because you will probably remain in a Chapter 11 for 5 years and we would need time after your discharge to refinance even though we will continue to do that** .  .  . "

B. The Debtor received an email dated Tuesday, November 2, 2010 from the Debtor's Attorney, Marc R. Kivitz concerning The Patapsco Bank. The subject line states, "**Patapsco agrees to 4 + 1.**" It continues by stating "Rob Glushakow will be sending an email to confirm this."

- 42 -

C. On November 2, 2010, the Debtor's Attorney, Marc R. Kivitz states, "I will have to prepare an Amended Plan containing all of the agreed terms with Patapsco.  This may take an hour or so."

D. The interactions between the parties are based on a mutual understanding that an agreement has been reached.  On December 2, 2010, Robert Glushakow emailed to Marc Kivitz an email stating, "Hope all is well.  According to my diary, a Third Amended Disclosure Statement has to have been forward yesterday."

E. The actions that the parties took reflect a meeting of the minds.  On Wednesday, February 2, 2015, Marc Kivitz wrote to the Debtor, "We have received 2 Ballots from Patapsco Bank - both accepting as impaired classes."

F. On March 6, 2011, Robert S. Glushakow gave Marc R. Kivitz, his Opposing Counsel, permission to speak on his behalf at the confirmation hearing, which suggests that not only was there an agreement, but Robert S. Glushakow trusted Marc R. Kivitz to convey the meaning of the agreement, if necessary.

G. Robert S. Glushakow sent the modification documents to Marc R. Kivitz on June 30, 2011 and stated that the enclosed documents are for the modification which contains the terms that was previously agreed to and included in the confirmed Disclosure Statement.

H. The modification documents were forwarded to the Debtor, this
Debtor, by Marc R. Kivitz with the email from Robert S.
Glushakow. These documents represented as both Marc R. Kivitz
and Robert S. Glushakow would state a "4 + 1 Term" which equals
a total of five years.

The Appellant states that the emails reflect the intent of the parties and how
the error was original in the disclosure statement that was copied onto the
modification documents.

## II

**Whether the Trial Court erred by denying the Appellant's right of due
process as defined in the Maryland Declaration of Rights as well as in the
Fifth and Fourteenth Amendment of the United States Constitution by
refusing to determine whether U. S. Bank, NA as Indenture Trustee for
Waterfall Victoria Mortgage Trust 2011-SBC3 actually has standing to file a
claim against the Appellant.**

The Due Process Clause of the Fourteenth Amendment is exactly like a
similar provision in the Fifth Amendment. It states that no person shall be
"deprived of life, liberty, or property without due process of law." Usually, "due
process" refers to fair procedures. This clause restricts the federal government,
which includes the State and Federal Courts of the United States.

The Supreme Court interprets the clauses however more broadly because
these clauses provide four protections:  procedural due process (in civil and

criminal proceedings), substantive due process, a prohibition against vague laws, and as the vehicle for the incorporation of the Bill of Rights.

The Appellant argues that the U. S. Bank, NA as Indenture Trustee did not have standing to participate in the proceedings before the Bankruptcy Court and that their participation violated her due process clause given to her in the United States Constitution  as well as Maryland's Declaration of Rights in the Constitution of Maryland.

## **STANDING**

Standing or similar doctrines require the party pursuing a foreclosure to have a legally cognizable interest in the mortgage. The modern mortgage market is financed largely through securitization, a financing method that involves multiple bulk transfers of mortgages. If loans have not been successfully transferred to the party seeking to foreclose, then that party has no privity with the loan—and therefore lacks standing to foreclose.

The term "standing" has been applied to two legally distinct concepts. The first is legal capacity, or authority to sue. The second is whether a party has asserted a sufficient interest in the outcome of a dispute.

Standing and capacity to sue are related, but distinguishable legal concepts. Capacity requires an inquiry into the litigant's status, i.e., its "power to appear and bring its grievance before the court", while standing requires an inquiry into

whether the litigant has "an interest in the claim at issue in the lawsuit that the law will recognize as a sufficient predicate for determining the issue." *Wells Fargo Bank Minnesota, Nat. Ass'n v Mastropaolo*, 42 AD3d 239, (2d Dept 2007).

There is a difference between the capacity to sue which gives the right to come into court, and possession of a cause of action which gives the right to relief. *Kittinger v Churchill Evangelistic Assn Inc., 239 AD 253, 267 NYS 719 (4th Dept 1933).* Incapacity to sue is not the same as insufficiency of facts to sue upon. *Ward v Petri,* 157 NY3d 301 (1898).

## DEFINITION OF STANDING

David Andrew Schultz published a treatise called, "Encyclopedia of the United States Constitution."  In the treatise, he set off to define crucial legal concepts within the foundation of the United States Constitution as well as case law that supports the legal concepts.  Mr. Schultz considers the meaning of "Standing," He states:

> "To satisfy the constitutional requirements for standing, a plaintiff must allege a personal stake in the outcome of the litigation (*Sierra Club v. Morton*, 405 U. S. 727(1972) in the form of "some direct injury" that is "real and immediate" (*City of Los Angeles V. Lyons*, 461 U.S. 95(1983).  The injury alleged must be "distinct and palpable" and not "abstract," "conjectural," or "hypothetical" (*Allen v. Wright*, 468 U.S. 737 (1984).  Moreover, this "injury in fact" suffered by the plaintiff must be "fairly traceable to the defendant's alleged

unlawful conduct and likely to be addressed by the requested relief: *Allen v. Wright*, 468 U.S. at 751; see also *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). In sum, there are three interrelated constitutional components of standing – injury in fact, causation and redressability by the courts. . .”

“In the context of public law questions, the Supreme Court holds that “one element of the ‘Bedrock’ case-or-controversy requirement is that plaintiffs must establish that they have standing to sue,” that is, standing to invoke the power of a federal court to review the conduct of government. See *McConnell v. Federal Election Commission*, 540 U.S. 93 (2003); see also *Whitmore v. Arkansas*, 495 U.S. 149 (1990). The doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process.” Standing thus requires the Plaintiff to have “such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of issues.” (*Baker v. Carr*, 369 U.S. 186 (1962).”

Whether a party has sufficient interest in the dispute is determined by the facts alleged in the complaint. *Wall St. Associates v. Brodsky*, 257 AD2d 526, 684 N.Y.S.2d 244 (1st Dept 1999), *Kempf v. Magida*, 37 AD 3d 763, 764, 832 N.Y.S.2d 47, 49 (2nd Dept 2007).

Based on the evidence, U. S. Bank, National Association as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3, did not have standing

to participate in the hearing on April 7th, 2015 to seek a conversion, nor did they have the authority to issue a proof of claim and they did not have the authority to prevent the turnover of property held in receivership that was granted due to their fraud. Their participation violated the Appellant's constitutional rights.

In *Clara Musgrove v. Colgate Palmolive Company,* "righting this wrong and protecting the sanctity and integrity of judicial proceedings overrides the value of any purported finality of a remand order." *Green v. Foley,* 856 F. 2d 660 (4th Cir. 1988), (the policy of deterring misconduct which threatens the fairness and integrity of the fact finding must outweigh considerations of finality. Any other result would reward a litigant's wrongful acts by permitting him to retain the benefit of those acts . . . in derogation of the proper function of the federal courts."

The Appellant states that to allow an entity to participate in legal proceedings who has not adequately demonstrated their harm or injury, goes against what the founding fathers intended in the United States Constitution.

## III

**Whether the Trial Court abused its discretion by failing to hear Appellant's objection to the Chapter 7 Trustee's Motion to sell real property pursuant to Willemain v. Kivitz, which states that Appellant has a pecuniary interest in the outcome of the claim made by U. S. Bank, NA, as Indenture Trustee, for Waterfall Victoria Mortgage Trust 2011-SBC3.**

The Appellant has standing to object to the Chapter 7 Trustee's Motion to Sell Real Property located at 10 Stanley Drive, Catonsville, Maryland 21228 because of her pecuniary interest in the Outcome of the Trustee's Motion to Sell if (a) there would be a surplus if the Trust is proven to not exist based on (a) back-dated legal assignments, (b) missing endorsements, (c) missing governance, and (d) their parent company's own assertion, with certifications from accountants and other experts that states the information is true and accurate after financial audits which states that Waterfall Victoria Mortgage Trust 2011 SBC3 has a zero balance, was completed in 2011 and never invested in real property , whether through the investment in notes or actual mortgages in the state of Maryland.

The Appellant relies on Willemain v. Kivitz, 764 F. 2d 1019, which states that a debtor has a pecuniary interest in the outcome of any claims objection and so standing to object if there might be a surplus to be returned to the debtor after satisfying all debts.

The Appellant begins by reviewing bankruptcy practice: Bankruptcy Code § 501(a) provides that "a creditor . . . may file a proof of claim." Federal Rules of Bankruptcy Procedure 3001(c) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim." Bankruptcy Rule 3001(d) states that "if a security interest in property of the debtor is claimed, the proof of claim

should be accompanied by evidence that the security interest has been perfected."
See *In re Immerfall*, 216 B.R. 269, (Bankr. D. Minn. 1998) (creditor asserting a
security interest in property has burden of producing documentary proof of secured
status).

In the case at hand, there were fifteen (15) proof of claims filed in the
Appellant's bankruptcy case.  The unsecured creditors were listed as follows:

- Internal Revenue Service          $137,796.18
- Navient Solutions, Inc.           106,403.25
- U. S. Trustee                     950.00
- Wells Fargo Card Service          153.28
- Michelle Simms                    18,305.64
- Comptroller of Treasury           30,116.00
- Charles Phil Victor               20,000.00
- Law Offices of Marc R. Kivitz     13,400.00
- Prince Georges County             10,393.85
- Prince Georges County             10,989.80
- U. S. Trustee                     975.00

The total amount that would be due and owing to the unsecured creditors
would be Three Hundred and Forty-Nine Thousand, Four Hundred and Eighty
Three Dollars, ($349,483.00)

If the property was sold for Six Hundred and Twenty Five Thousand as stated by the Chapter 7 Trustee in his Motion to Dismiss this Appeal, the Appellant would be owed the difference of the sale price which was Six Hundred and Twenty-Five Thousand Dollars ($625,000.00 minus the amount to the unsecured creditors, as listed above, would equal Two Hundred and Seventy-Five Thousand Five Hundred and Seventeen Dollars, ($275,517.00), which would mean the Appellant would have a "Pecuniary Interest" and should not have been precluded from testifying nor should her witness been prevented from stating the necessary facts to support her contention.

In the case of *In Re Curry*, 409 B. R. 831 (2009) the court stated that Section 502(a) states that a claim is allowed unless a "party in interest" objects. 11 U.S.C. § 502(a), while a "party in interest" has standing to object to claims, the Code does not define "party in interest." *See Caserta v. Tobin,* 175 B.R. 773 (S.D.Fla.1994).

In the chapter 7 context, a trustee typically objects to claims. *See In re Toms,* 229 B.R. 646, (Bankr.E.D.Pa.1999). This is based on the trustee's statutory duty to examine claims, and, if necessary, object to improper claims §704(a)(5);  *see In re Morgan,* No. 05-34981-SGJ-7, 2007 WL 2669341, (Bankr.N.D.Tex. Sept.6, 2007). Because of this statutory duty, most courts prohibit other parties from objecting to claims.  Courts prohibit debtors from objecting to claims because, in most chapter 7 cases, debtors have no pecuniary interest in

doing so. S*ee, Mulligan v. Sobiech,* 131 B.R. 917, 920 (S.D.N.Y.1991)

(citing *Collier on Bankruptcy* for the proposition that debtors qualify as a "party in

interest").

Contrary to the ruling on whether the Appellant had a right to participate in

the proceedings on the Trustee's Motion to sell real property located at 10 Stanley

Drive, Catonsville, Maryland 21228, the Appellant has a pecuniary interest in the

outcome of the proceedings and should have been allowed to participate.

## IV

**Whether the Chapter 7 Trustee's actions further a fraud perpetrated by U. S.
Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011
SBC3 when he fails to take the minimum actions as defined in Section 704 of
Title 11 of the United States Code.**

> **a. Whether the Chapter 7 Trustee breached his fiduciary duty to
> the debtor's estate as well as to the unsecured creditors when
> he fails to object to a proof of claim knowing that there are a
> list of discrepancies including the parent company statement
> which contradicts the proof of claim.**

The Handbook for the Chapter 7 Trustee states that " the trustee is a

fiduciary charged with protecting the interests of all estate beneficiaries, namely,

all classes of creditors, including those holding secured, administrative, priority,

and non-priority unsecured claims, as well as the debtor's interest in exemptions

and in any possible surplus property."

The trustee is vested with fiduciary duties, including, but not limited to, the

duties of care, loyalty, and impartiality. *In re Haugen Constr. Serv.,* 104 B.R. 233

(Bankr. D.N.D. 1989) discussed the powers and duties of a chapter 7 trustee under § 704. The trustee is also an officer of the court, and, as such, owes a primary duty to the administration of justice.

As attorneys, trustees are also subject to the Rules of Professional Conduct. Rule 8.4 of the Maryland Rules of Professional Conduct states, in part, that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation" and "engage in conduct that is prejudicial to the administration of justice."

The specific statutory duties of a Chapter 7 Trustee are set forth in section 704(a). However, this Appellant is most concerned with the following:

i.  Trustee's ability to collect and reduce to money from the property of the estate and close the estate as expeditiously as is compatible with the best interests of parties in interest. 11 U.S.C. Section 704(a)(1).

ii.  Trustee's ability to investigate the financial affairs of the debtor. 11 U.S.C. Section 704(a)(4).

iii.  If a purpose would be served, examine proofs of claims and object to the allowance of any claim that is improper. 11 U.S.C. Section 704(a)(5).

Bankruptcy Code § 501(a) provides that "a creditor . . . may file a proof of claim." Federal Rules of Bankruptcy Procedure 3001(c) provides that "when a claim, or an interest in property of the debtor securing the claim, is based on a writing, the original or a duplicate shall be filed with the proof of claim."

Bankruptcy Rule 3001(d) states that "if a security interest in property of the debtor is claimed, the proof of claim should be accompanied by evidence that the security interest has been perfected." See In re Immerfall, 216 B.R. 269, 272 (Bankr. D. Minn. 1998) (creditor asserting a security interest in property has burden of producing documentary proof of secured status).

In the case at hand, the Chapter 7 Trustee failed to take any actions to discover the truth and that failure to take action furthers a fraud in the bankruptcy court:

a. The Trustee failed to object to the Proof of Claim.

b. The trustee failed to verify whether the claim was properly perfected at least 90 days prior to the filing

c. The Chapter 7 Trustee failed to disclose that the documents would not meet the minimum requirements of the statute of frauds nor the uniform commercial code.

d. The trustee failed to review the security documents to ensure that a claim is secured:

- 54 -

i.    Back-dated Assignments

ii.   Missing Endorsements

iii.  Failure to connect Last Known Entity, Capital One Bank, to U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3

iv.   S/11 A filing from Sutherland Asset Management Corp.

v.    Request the Pooling and Servicing Agreement

vi.   Inquire as to the Missing Loan Sales Agreement

vii.  Seek an explanation as to New York State, Division of Corporations, Name Registration that took place after the purported Loan Sale

viii. The Appellant further contends that the United States Bankruptcy Court erred as a matter of law because its findings of fact establish that the Chapter 7 Trustee was "willfully blind," which is a type of actionable fraud in Maryland.

ix.   The Appellant asserts that the Chapter 7 Trustee effectively admitted that he chose to be willfully blind about the origin and nature assignments due to his unwillingness to investigate. "Willful blindness occurs when a person 'has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance.'" Hoffman v. Stamper, 385 Md. 1(2005) (quoting State v. McCallum, 321 Md. 451(1991).

## DEFINITION OF FRAUD:

Bankruptcy fraud has been defined in 18 U.S.C. Section 157, Bankruptcy Fraud, which states a person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so – (3) makes a false or fraudulent representation, claim, or promise concerning or in relation to a proceeding under title 11. Fraud is

also defined as a "wrongful or criminal deception intended to result in financial or personal gain." A person or thing intended to deceive others, typically by unjustifiably claiming or being credited with accomplishments or qualities. 18 U.S.C. Section 152, states fraud could amount to false statements with the intent to deceive. 18 U.S.C. Section 1001, states a false statement or document designed to mislead the court or the United States Trustee, whether or not under oath. Bankruptcy crimes are punishable by fines and/or up to five years in prison and it can include filing false claims or making false oaths.

In the case at hand, the statements made by U.S. Bank, National Association as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011-SBC3 are contradictory and are not supported by the facts yet, those statements were relied upon by the United States Bankruptcy Court as well as the United States District Court for Maryland for Baltimore.

A furtherance of the fraud, when an individual is an officer of the court, includes those activities that includes "looking away," failing to request documents, failing to object to proof of claims, failing to ask the hard questions, furthers a fraud. Here, we have Back-Dated Assignments, Missing Endorsements, SEC filing, Missing Pooling and Servicing Agreement, Missing Loan Sales Agreement and the State of New York, Division of Corporations Listing, etc. this list reflects the fact the Appellant has met the burden of proof pursuant to *Marshall*

*v. Manville Sales Corp*., 6 F.3d 229, 232 (4th Cir. 1993) to show joinder in the fraud by the Chapter 7 Trustee.

## LACK OF GOOD FAITH

The Chapter 7 Trustee has demonstrated a lack of good faith in his administration of the Appellant's estate.  In *Gold v. First Tennessee Bank, NA* 2014 U.S. App. LEXIS 3279 (4th Cir. Feb. 21, 2014), the court considered the "good faith" defense is fact-intensive. In the case of *Southern Indus, Inv., v. Jeremias,* 68 A.D. 2d 178 (App. Div. 2d Dept. 1978), the court look to (1) an honest belief in the propriety of the activities in question, (2) intent to take unconscionable advantage of others, and (3) intent to, or knowledge of the fact that the activities in question will hinder, delay or defraud others.

The Participation of the Chapter 7 Trustee along with U.S. Bank, National Association as Indenture Trustee for Waterfall Victoria Master Trust 2011-SBC3 lacks "good faith."  They have failed to show a connection between all holders of the note, including Capital One Bank. They have failed to demonstrate that the assignments are valid.  They have failed to provide the necessary Pooling and Servicing Agreements nor the Loan Sales Agreement which is referenced in the back-dated assignments.  They have failed to provide correct and accurate endorsements.  The Chapter 7 Trustee has failed to even object to the proof of claim.  The Chapter 7 Trustee, as a fiduciary and officer of the court, he has a duty

to ensure that justice prevails and that unsecured creditors are given the maximum payout instead of turning a blind eye to the actions of an alleged secured creditor, U. S. Bank, NA as Indenture Trustee for Waterfall Victoria Mortgage Trust 2011 SBC3.

In the case of *Bullard v. Aluminum Co. of Am.,* 468 F.2d 11, (7th Cir. 1992) states that the presence of good faith turns on whether the "transaction carries the earmarks of an arms-length bargain."

## WILLFUL BLINDNESS

The Appellant further contends that the Chapter 7 Trustee was "willfully blind," which is a type of actionable fraud in Maryland. The Appellant asserts that the Chapter 7 Trustee effectively admitted that he chose to be willfully blind about the origin and nature assignments due to his unwillingness to investigate. "Willful blindness occurs when a person 'has his suspicion aroused but then deliberately omits to make further enquiries, because he wishes to remain in ignorance.'" Hoffman v. Stamper, 385 Md. 1(2005) (quoting State v. McCallum, 321 Md. 451(1991).

## RELEVANT BANKRUPTCY LAW

In the case of *In re Gresham*, 373 B.R. 914 (Bankr. W.D.Mo. 2007), the court ruled that a trustee could not avoid a mortgage that contained an incorrect property description. The court ruled that a bankruptcy trustee was charged with

constructive notice of the defective mortgage because it was properly indexed under the name of the borrower, and because a separate subordination agreement recorded in the land records also indexed under the borrower's name did contain the correct property description. Accordingly, the court ruled that a party searching the land records "with due diligence" would have "reasonably discovered" the defective mortgage.

The United States Court of Appeals for the Sixth Circuit reached a similar conclusion in *In re Bunn*, 578 F.3d 487 (6th Cir. 2009), when it ruled that a bankruptcy trustee could not avoid a mortgage recorded without a property description, because the inclusion of the street address provided constructive notice to the trustee.

Salvaging a defective mortgage in the context of a bankruptcy case can be more difficult than in state courts. Pursuant to the Bankruptcy Code, a bankruptcy trustee can avoid a mortgage lien if a bona fide purchaser for value could avoid the mortgage under state law. *11 U.S.C. § 544(a).*

In the case at hand, the defective mortgage could not be salvaged in state court because it does not meet the requirements under the statute of frauds, the uniform commercial code nor the Maryland Code governing defective deeds.  A Chapter 7 Trustee that is aware of the defects as listed in this Brief, cannot sell to a "bonafide purchaser."

## THE CHAPTER 7 TRUSTEE HAS TOOLS AT HIS DISPOSAL TO DISCOVER, REPORT AND TO DETER FRAUDULENT BEHAVIOR

The United States Attorney's Bulletin stated "Mortgage fraud, like all fraud, is a crime of opportunity." The Bulletin also discusses several avenues that can be used to fight mortgage fraud including the following:

The Fraud Enforcement and Recovery Act of 2009 (FERA), changed the definition of financial institution, mortgage lending businesses were usually not covered by the bank fraud statute; bank fraud was limited to FDIC-insured institutions, credit unions, federal home loan banks, and other such entities. FERA, however, added mortgage lending businesses within the coverage of the statute and defined a "mortgage lending business" as "an organization which finances or refinances any debt secured by an interest in real estate . . . whose activities affect interstate or foreign commerce."

It continues by stating that there are three weapons in the civil arsenal for fighting mortgage fraud. The first is 12 U.S.C. § 1833a (2009), a civil penalty statute that was passed as part of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA) in response to the 1980s savings and loan crisis. The second is the Civil False Claims Act (FCA). See 31 U.S.C. § 3729(a) (2009). The third is injunctive relief available to enjoin fraudulent activities. See 18 U.S.C. § 1345 (2002).

Included in the arsenal to fight fraud is the statute criminalizing the interstate transportation of funds obtained by fraud or of stolen property (commonly referred to as ITSP), like the other fraud statutes, is a classic statute to use in fraud cases. 18 U.S.C. § 2314 (2009).

Under 12 U.S.C. § 1833a(c)(2), a violation of FIRREA occurs when there is a violation of, or a conspiracy to violate, any of the following sections that affect a financial institution:

• 18 U.S.C. § 287 (2009): false claim upon an agency of the United States

• 18 U.S.C. § 1001(2009): false statement in any matter within the jurisdiction of the government of the United States

In our case, the Chapter 7 Trustee was given notice of the many documents that this Appellant has used as evidence, which for the most part, have been provided by U. S. Bank, National Association, as Indenture Trustee, for Waterfall Victoria Mortgage Trust, 2011 SBC3. The Appellant objected to the proof of claim and provided reasonable arguments. Yet, the Chapter 7 Trustee has failed to take any action to investigate, to inquire, to research, to determine, i.e., the adequacy of the documents submitted as evidence to support the ownership of the note on the property located at 10 Stanley Drive, Catonsville, Maryland 21228.

However, this Chapter 7 Trustee entered into a written settlement agreement which allowed the U. S. Bank, NA to evict all of the tenants and sell the property

at a below market rate for Six Hundred and Twenty-Five Thousand Dollars, giving the estate Twenty-Five Thousand Dollars, which will be used in attorneys fee for the Chapter 7 Trustee, who is paid approximately $400.00 per hour and his partner, Orbie Shively $375.00 per hour.

**CONCLUSION**

For the reasons set forth above, Arlene A. Smith-Scott, Appellant, respectfully submits that the District Court's Order of March 8, 2016 should be reversed and remanded for further discovery as to the ownership of the debt that was allegedly held by U. S. Bank, NA, as Indenture Trustee for Waterfall Victoria Mortgage Trust, 2011 SBC3. As to the Howard Bank formerly known as The Patapsco Bank the loans should be reinstated allowing for the contracted term which was agreed upon by both parties. And, the Chapter 7 should be converted to a Chapter 11 with all proceeds from any sale to be transferred to the Appellant.

Respectfully Submitted,

/s/ Arlene A. Smith-Scott
Arlene A. Smith-Scott, Esq.
367 Main Street
Laurel, Maryland 20707
Ph.: 240-280-2370
Fax: 240-280-2381
StrategicLaw1@Gmail.com

- 62 -

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2016, I electronically filed the foregoing brief with the Clerk of the Court using the CM/ECF System which will send notice of such filing to the following registered CM/ECF users:

Orbie Shively
Liebmann & Shively, P.A.
8 W. Hamilton Street
Baltimore, MD 21201

Alan J. Perlman
c/o Roetzel & Andress, LPA
350 E. Las Olas Blvd.
Ft. Lauderdale, FL  33301

Craig B. Leavers
Executive Plaza III
11350 McCormick Road,
Suite 1300 Hunt Valley,
Maryland 21031

I further certify that on May 17, 2016, one paper copies of the brief were manually filed with the Clerk of the Court by United Parcel Service overnight delivery.

/S/  Arlene A. Smith-Scott
Arlene A. Smith-Scott

# TABLE OF CONTENTS FOR JOINT APPENDIX

<u>Pages</u>

| | | |
|---|---|---|
| 1. | DISCLOSURE OF CORPORATE AFFILIATIONS | JA1  -  JA2 |
| 2. | DOCKETING STATEMENT | JA3  -  JA8 |
| 3. | NOTICE OF APPEAL | JA9  -  JA10 |
| 4. | ATTACHED ORDER | JA11 - JA12 |
| 5. | MEMORANDUM OPINION | JA14- JA23 |
| 6. | CIVIL DOCKET FOR CASE 15cv03423 RDB | JA24 -JA29 |
| 7. | DEED OF APPOINTMENT BY CAPITAL ONE BANK AS SUCCESSOR BY MERGER | JA31- JA35 |
| 8. | CERTIFICATION REGARDING DEBT INSTRUMENT | JA36 |
| 9. | ORDER GRANTING INJUNCTION TO THE APPELLANT IN THE CIRCUIT COURT | JA37 |
| 10. | PROOF OF CLAIM #6 | JA38 – JA39 |
| 11. | ASSIGNMENT OF DEED OF TRUST FROM GREENPOINT MORTGAGE TO WATERFALL VICTORIA MASTER FUND, LTD. | JA40 – JA41 |

12.    ASSIGNMENT OF ASSIGNMENT OF LEASES        JA42- JA43

       AND RENT FROM GREENPOINT MORTGAGE TO

       WATERFALL VICTORIA MASTER FUND, LTD

13.    BACK-DATED ASSIGNMENT OF DEED OF           JA44- JA45

       TRUST AND SECURITY AGREEMENT FROM

       WATERFALL VICTORIA MASTER FUND, LTD

       TO WATERFALL VICTORIA MORTGAGE TRUST,

       2011 SBC3

14.    BACK-DATED ENDORSEMENT OF DEED OF          JA46- JA47

       TRUST NOTE FROM WATERFALL VICOTORIA

       MASTER FUND, LTD AND WATERFALL

       VICTORIA MORTGAGE TRUST, 2011 SBC3

15.    BACK-DATED ASSIGNMENT OF LEASES AND        JA48- JA49

       RENTS FROM WATERFALL VICTORIA MASTER

       FUND, LTD AND WATERFALL VICTORIA

       MORTGAGE TRUST, 2011 SBC3

16.    LISTING OF SUBSIDIARIES FROM               JA 50-JA51

       SUTHERLAND ASSET MANAGEMENT CO.

17.    SEC FILING BY SUTHERLAND ASSET MGMT        JA52-JA54

       WHICH INCLUDES WATERFALL VICTORIA

MORTGAGE TRUST 2011 SBC3

18.  SEC - NO MARYLAND INVESTMENTS FOR          JA55-JA57
     WATERFALL VICTORIA MORTGAGE TRUST
     2011 SBC3

19.  SEC - PAGE THAT STATES COMPLETED TRUST     JA58- JA60
     FOR WATERFALL VICTORIA MORTGAGE
     TRUST, 2011 SBC3 IN 2011 – PRIOR TO
     TRANSFER

20.  NEW YORK STATE DIVISION OF CORPORATION     JA61- JA62
     REFLECTS NAME REGISTRATION AFTER
     TRANSFER OR SALE OF NOTE

21.  NOTICE OF APPEARANCE OF CAPITAL ONE        JA63-JA64
     BANK

22.  1098 STATEMENT FROM LEHMAN BROTHERS        JA65
     TO APPELLANT IN 2007

23.  DEED OF TRUST NOTE WITHOUT                 JA66 –JA74
     ENDORSEMENTS

24.  AFFIDAVIT OF WITNESS, PAULA RUSH           JA75 – JA96

25.  RESUME OF WITNESS, PAULA RUSH              JA98- JA113

26.     U. S. BANK, NA SUES GREENPOINT MORTGAGE     JA115-JA140

        FOR FRUAD

27.     SCHEDULE D IN BANKRUPTCY FILING            JA142 -JA143

28.     AMENDED SCHEDULE D                         JA144- JA145

29.     OPPOSITION TO PROOF OF CLAIM # 6           JA146- JA170

30.     CONSENT ORDER CONFIRMING PLAN OF           JA171 – JA178

        REORGANIZATION

31.     NOTE MODIFICATION AGREEMENT FOR            JA179 – JA184

        511 MAIN STREET

32.     NOTE MODIFICATION AGREEMENT FOR            JA185-JA190

        367 MAIN STREET

32.     EMAIL DATED SEP 23, 2010                   JA191

33.     EMAIL DATED NOV. 2, 2010                   JA192

34.     EMAIL DATED NOV. 2, 2010                   JA193

35.     EMAIL DATED NOV. 2, 2010                   JA194

36.     EMAIL DATED NOV. 5, 2010                   JA 195-JA196

37.     EMAIL DATED DEC. 2, 2010                   JA197-JA198

38.     EMAIL DATED FEB 2, 2011                    JA199

39.   FIRST AMENDED DISCLOSURE STATEMENT        JA200- JA233

40.   MONTHLY OPERATING REPORT FOR OCTOBER,    JA234-JA270
      2014

41.   MONTHLY OPERATING REPORT FOR             JA271-JA290
      NOVEMBER, 2014

42.   MONTHLY OPERATING REPORT FOR             JA291 –JA308
      DECEMBER, 2014

43.   MONTHLY OPERATING REPORT FOR             JA309-JA326
      JANUARY, 2015

43.   ORDER APPROVING SALE                     JA327 – JA329

44.   TRANSCRIPT FROM HEARING DATED            JA330 – JA340
      NOVEMBER 5, 2015

45.   MOTION TO ALTER AND/OR AMEND             JA341 – JA358